## UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                                           :
UNITED STATES OF AMERICA,                                  :
                                                           :
    v.                                                     :
                                                           :
JAMES GATTO,                                               :   Case No. 17-cr-00686 (LAK)
a/k/a "Jim,"                                               :
MERL CODE, and                                             :
CHRISTIAN DAWKINS,                                         :
                                                           :
              Defendants.                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
```

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
### TO COMPEL THE GOVERNMENT TO REVIEW EVIDENCE IN ITS POSSESSION
### FOR *BRADY* MATERIAL

**NEXSEN PRUET LLC**
William W. Wilkins
Mark C. Moore
Andrew A. Mathias
55 E. Camperdown Way, Suite 400
Greenville, South Carolina 29601
(864) 370-2211

*Attorneys for Defendant Merl Code*

**HANEY LAW GROUP PLLC**
Steven A. Haney
3000 Town Center Drive, Suite 2570
Southfield, Michigan 48075
(248) 414-1470

*Attorneys for Defendant Christian Dawkins*

**WILLKIE FARR & GALLAGHER LLP**
Michael S. Schachter
Casey E. Donnelly
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

**ANGELI LAW GROUP LLC**
David Angeli
121 SW Morrison Street, Suite 400
Portland, Oregon 97204
(503) 222-1552

*Attorneys for Defendant James Gatto*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND ......................................................................................................2

LEGAL STANDARD...................................................................................................................7

ARGUMENT ................................................................................................................................8

      I.      THE GOVERNMENT IS REQUIRED UNDER *BRADY* TO PRODUCE THE
            REQUESTED EVIDENCE TO DEFENDANTS.................................................8

CONCLUSION............................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                                          Page(s)

*Brady v. Maryland,*
    373 U.S. 83, 83 S.Ct. 1194 (1963)....................................................................................1, 7

*Kyles v. Whitley,*
    514 U.S. 419, 115 S.Ct. 1555 (1995)....................................................................................14

*St. Germain v. United States,*
    No. 03 CV 8006(CM), 2004 WL 1171403 (S.D.N.Y. May 11, 2004) ......................7-9, 13

*United States v. Agurs,*
    427 U.S. 97, 96 S.Ct. 2392 (1976)........................................................................................8

*United States v. Autuori,*
    212 F.3d 105 (2d Cir. 2000)................................................................................................11

*United States v. Binday,*
    908 F. Supp. 2d 485 (S.D.N.Y. 2012).............................................................................8-9

*United States v. Braunstein,*
    281 F.3d 982 (9th Cir. 2002) ..............................................................................................10

*United States v. Certified Env't Servs., Inc.,*
    753 F.3d 72 (2d Cir. 2014)....................................................................................................1

*United States v. Connolly,*
    16-cr-00370 (S.D.N.Y. Oct. 19, 2017), ECF No. 145 ...............................................13, 15

*United States v. D'Amico,*
    734 F. Supp. 2d 321 (S.D.N.Y. 2010)..................................................................................8

*United States v. Gil,*
    297 F.3d 93 (2d Cir. 2002)........................................................................................ 7, 9-11

*United States v. Leon,*
    468 U.S. 897, 104 S.Ct. 3405 (1984)....................................................................................8

*United States v. Mahaffy,*
    693 F.3d 113 (2d Cir. 2012)....................................................................................... 7, 9-12

*United States v. Martoma,*
    No. 12 CR. 973 PGG, 2014 WL 31704 (S.D.N.Y. Jan. 6, 2014) ......................................12

*United States v. Regent Office Supply Co.*,
    421 F.2d 1174 (2d Cir. 1970)........................................................................10

*United States v. Rivas*,
    377 F.3d 195 (2d Cir. 2004)........................................................................13

*United States v. Thomas*,
    981 F. Supp. 2d 229 (S.D.N.Y. 2013)........................................................1, 8

*United States v. Triumph Capital Group, Inc.*,
    544 F.3d 149 (2d Cir. 2008)..........................................................7-10, 13-14

*United States v. Vilar*,
    No. 05 VR.621, 2008 WL 2531195 (S.D.N.Y. June 22, 2008) ...........................9

**Statutes**
18 U.S.C. § 1343.........................................................................................11

Defendants James Gatto, Christian Dawkins, and Merl Code respectfully submit this memorandum of law in support of their motion for an order compelling the Government to review its case file for *Brady* evidence, including statements given to the Government by witnesses, non-witnesses, or their counsel, and to produce such material to Defendants.

## PRELIMINARY STATEMENT

It is well-established in this Circuit that *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194 (1963), imposed a "constitutional duty" upon the Government "to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment." *United States v. Certified Env't Servs., Inc.*, 753 F.3d 72, 91 (2d Cir. 2014). The Government's *Brady* obligations "safeguard[] the fundamental principal that a trial is a search for truth," while also enforcing the "unique interest" that a Government prosecutor has with respect to a criminal prosecution, that is, "not to win a case, but [to] ensure that justice be done." *United States v. Thomas*, 981 F. Supp. 2d 229, 232 (S.D.N.Y. 2013) (*citing Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 679 (1935)).

To facilitate the Government's constitutionally-mandated *Brady* disclosures, Defendants provided to the Government descriptions of evidence—in particular, statements by witnesses, non-witnesses, or their counsel—that would be materially favorable to the defense. This list included, for example, statements tending to show that Defendants had no intention of injuring the University of Louisville ("Louisville") or the University of Miami ("Miami" and together with Louisville, the "Universities"); that individuals affiliated with the Universities were aware of, or welcomed, payments to student-athletes at their schools; and that the Universities violated the NCAA's recruiting rules on a regular basis.

The Government, however, has refused to produce any of the requested witness statements, or to confirm that such statements do not exist. Instead, the Government claims that

the evidence sought by Defendants is "material to which [Defendants] are entitled, if at all, solely pursuant to Title 18, United States Code Section 3500…or *Giglio v. United States*, 405 U.S. 105 (1972) and its progeny[.]"

   The Government is incorrect.  The witness statements sought by Defendants implicate the essential questions that the jury will have to decide at trial, namely whether or not Defendants conspired in a scheme to defraud the Universities.  This evidence therefore constitutes exactly the type of *Brady* information that must be disclosed in advance of the Government's Section 3500 pre-trial production.  Accordingly, and in light of the Government's refusals, this Court should order the Government to review its case file, and in particular, the statements given to the Government by witnesses, non-witnesses, or their counsel, for material responsive to Defendants' *Brady* requests.  If such material exists, this Court should order the Government to disclose it; if it doesn't, the Government must confirm to Defendants that no such evidence exists.

## FACTUAL BACKGROUND

   On January 8, 2018, Defendants sent the Government a request for *Brady* material.  (Ex. 1 (Defs' Jan. 8, 2018 Ltr.) at 1-3).  Among other requests, Defendants specifically sought "any written or recorded statement," or the "substance of any oral statement provided to the Government," including statements made by an attorney for any individual or entity, that would be "material" to preparing Defendants' defense ("Witness Statements").  Because the defense recognized that the Government might not fully appreciate the various defenses that Defendants may offer at trial, and might therefore understandably overlook evidence responsive to *Brady*, Defendants provided the Government with examples of evidence material to their defense.

For example, because the Indictment alleges that the Universities were defrauded by Defendants' alleged scheme to send funds to families of three high school basketball players, Defendants asked for Witness Statements that "tend[ed] to show that faculty, staff, athletic directors, academic directors, or any other employees or representatives" of the Universities "were aware . . . of payments made to high school student-athletes or to the families of such student-athletes" or "wanted such payments to be made," since such evidence would directly counter the Government's theory of fraud and deception. (Ex. 1 at Request (1)(b)-(c); *see also id.* at Request 1(e) (seeking Witness Statements that "tend to show any Defendant's awareness or understanding that any faculty, staff, athletic directors, academic directors, or any other employee or representative of any university wanted payments to be made to high school student-athletes or to the families of such student-athletes in order to secure their commitment to attend the Universities")).

Likewise, the Indictment alleges that the three student-athletes and the Universities' coaches would have had to "falsely certify" to the Universities that "they were unaware of any [NCAA] rules violations." (Ind. ¶¶ 3, 20). Accordingly, Defendants sought Witness Statements concerning the "certifications, declarations, or affidavits pertaining to NCAA rules, bylaws, or regulations that were signed by coaches, assistant coaches, or members of the athletic department at the Universities," as well as by the student-athletes. (Ex. 1 at Request 1(f)-(g)). This would include Witness Statements suggesting that the students-athletes' certifications were truthful because those students had no knowledge of the payments allegedly made by Defendants to their parents. Defendants also asked for Witness Statements that would assist them at trial in proving that the "misrepresentations" allegedly made by the coaches and the three students were not "material" to any relevant decision maker at the University.

Specifically, Defendants noted that they were seeking Witness Statements concerning the "Universities' respective processes of awarding and/or revoking athletic scholarships for their men's basketball teams," as well as Witness Statements concerning "the reaction, or anticipated reaction, of the faculty, staff, athletic directors, academic directors, or any other employees or representatives of the Universities regarding violations of the rules of the NCAA." (Ex. 1 at Request 1(d),(h)).

Defendants also sought Witness Statements that could help them defeat the Government's contentions with respect to "contemplated harm." The Indictment states that the alleged scheme could have harmed the Universities because the NCAA could have imposed penalties upon them or determined that one of the students who had received a scholarship was "ineligible to compete" in NCAA-sponsored basketball competitions. (Ind. ¶¶ 36, 37). Accordingly, Defendants sought Witness Statements regarding "any NCAA sanctions or penalties imposed on the Universities for any reason, including, but not limited to sanctions related to athletic scholarships, athlete eligibility, return of tournament earnings, or fines, whether self-imposed or imposed by the NCAA," as well as "any consideration given, deliberations about, or determinations made by the NCAA or the Universities with respect to the Indictment's allegations," which would include Witness Statements regarding the "eligibility and/or amateur status" of the three students, the consideration of "whether or not to permit those players to practice and compete on NCAA-affiliated teams," the "possibility of sanctions (including self-imposed sanctions) and the potential for cooperation or attempted cooperation by the Universities in any NCAA investigation." (Ex. 1 at Request 1(i), (j)).

Finally, the defense sought Witness Statements that contain evidence probative of their lack of intent. (*Id.* at Request 1(k) (seeking Witness Statements "concern[ing] knowledge

by any Adidas employee, contractor, consultant, or representative of benefits provided or offered to amateur athletes or their families and friends"), Request 1(l) (seeking Witness Statements which "tend to show that any or all of the Defendants lacked knowledge or information regarding (i) the payments alleged by the Government to have been funneled to student-athletes, (ii) the source of such payments, or (iii) the circumstances surrounding such payments")).[1]

Defendants are not engaged in a fishing expedition:  they know that at least some of the requested Witness Statements exist in the Government's files. ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████ ██████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████ (Ex. 2 at 2). ██████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████ (Id.). ████████████

---

[1] Defendants also requested Witness Statements that obviously fall under *Brady*, including any Statement in which the "declarant states that he or she is not aware of any wrongdoing by any or all of the Defendant(s)" or their alleged co-conspirators; or which is "in any way inconsistent with the allegations in the Indictment;" or which tends to show that the "declarant is untrustworthy or has been untruthful;" or which the Government knows is false.  (Ex. 1 at Request 1(a), (m), (n), (o)).



(*Id.*).

In addition, it appears that

(*Id.*).

(Ex. 2 at 1).

(Ex. 3 at 2).  The FBI Form FD-302 reports that the case

agents almost certainly produced after meeting with these individuals would constitute Witness

Statements responsive to Defendants' *Brady* requests.

On January 31, 2018, the Government responded to Defendants' *Brady* letter and

summarily refused to produce any of the requested Witness Statements, or to confirm that such

Statements did not exist.  (Ex. 4 (Jan. 31, 2018 Ltr. from Gov't)).  Instead, the Government,

while broadly asserting its intention to comply with its *Brady* and Rule 16 obligations, stated that

"a substantial amount of the materials sought in the Requests are plainly material to which

[Defendants] are entitled, if at all, solely pursuant to Title 18, United States Code Section

3500...or *Giglio v. United States*, 405 U.S. 105 (1972) and its progeny[.]"  (*Id.* at 1-2).

- 6 -

**LEGAL STANDARD**

In *Brady*, the Supreme Court explicitly held that the "suppression by the prosecution" of evidence—in particular, witness statements—that are materially "favorable to an accused" and "request[ed]" by the defense, constitutes a constitutional violation. 373 U.S. at 84-86, 83 S.Ct. at 1195-97. "[M]ateriality" in the *Brady* sense is "not the same thing as materiality in the evidentiary sense." *St. Germain v. United States*, No. 03 CV 8006(CM), 2004 WL 1171403, at *10 (S.D.N.Y. May 11, 2004). Instead, evidence is considered "material" and "favorable to the defense" for *Brady* purposes when it would "harmonize with a defendant's theor[y]" of the case. *United States v. Mahaffy*, 693 F.3d 113, 133 (2d Cir. 2012); *United States v. Gil*, 297 F.3d 93, 105 (2d Cir. 2002) (reversing conviction where the Government waited to disclose in its 3500 materials *Brady* evidence that "had the potential to subvert" the background assumption on which the Government's theory of the offense was predicated). Where evidence "could lead to admissible evidence," including to witnesses that the defense might wish to "interview and possibly subpoena" at trial, it constitutes material *Brady* information. *Mahaffy*, 693 F.3d at 131.

Moreover, in addition to exculpatory evidence, *Brady* mandates disclosure of any "material that would be an effective tool in disciplining witnesses during cross-examination," *see id.*, including to "refresh [the] recollection" of a testifying witness. *St. Germain*, 2004 WL 1171403 at *8. In assessing whether evidence constitutes *Brady* material, "it is not the Government's job to decide whether defense counsel" could "effect[ively]" use the evidence; regardless of the Government's view of the evidence's "potential utility" during cross examination, disclosure is necessary. *Id.* at *13. Furthermore, the Second Circuit has held that information provided to the Government by an attorney for a witness constitutes *Brady* material where that information is exculpatory or impeaching. *United States v. Triumph Capital Grp.*,

*Inc.*, 544 F.3d 149, 161 (2d Cir. 2008). The Government has a pre-trial obligation "to disclose *Brady* material in sufficient time for the defense to make effective use of it at trial." *United States v. D'Amico*, 734 F. Supp. 2d 321, 367 (S.D.N.Y. 2010). "[T]imeliness" with "respect to *Brady* disclosure means immediate disclosure upon discovery." *United States v. Binday*, 908 F. Supp. 2d 485, 498 (S.D.N.Y. 2012). The Government's failure to timely disclose materially favorable information is particularly egregious where the Government knows that the defense would consider the information to be significant. *Thomas*, 981 F. Supp. 2d at 240 ("[T]he more specifically the defense requests certain evidence, thus putting the prosecutor on notice of its value, the more reasonable it is for the defense to assume from the nondisclosure that the evidence does not exist, and to make pretrial and trial decisions on the basis of this assumption.") (quoting *United States v. Bagley*, 473 U.S. 667, 682-83, 105 S.Ct. 3375, 3384 (1985)). For this reason, "the prudent prosecutor will resolve doubtful questions in favor of disclosure," *United States v. Agurs,* 427 U.S. 97, 108, 96 S.Ct. 2392, 2399-400 (1976), in an effort to ensure that "criminal defendants are acquitted or convicted on the basis of all the evidence which exposes the truth." *United States v. Leon*, 468 U.S. 897, 900-01, 104 S.Ct. 3405, 3409 (1984) (citation and internal quotation marks omitted).

## ARGUMENT

### I.     THE GOVERNMENT IS REQUIRED UNDER *BRADY* TO PRODUCE THE REQUESTED EVIDENCE TO DEFENDANTS.

More than ten years ago, Judge Colleen McMahon was "reluctantly" forced to set aside a criminal conviction because the U.S. Attorney's Office for the Southern District had "violated its *Brady* obligations" by waiting to produce *Brady* evidence to the defense under "the guise of Jencks Act material," instead of producing it in a timely fashion. *See St. Germain*, 2004 WL 1171403 at *1. Judge McMahon was unsparing in her criticism of the Government's

- 8 -

disclosure strategy, explaining that it had unfortunately become "common practice[] in the United States Attorney's Office" to "cut[] the finest possible lines in determining the materiality and cross-availability of arguably exculpatory evidence for *Brady* purposes" and to avoid "disclosing evidence [until] the last possible moment prior to trial." *Id.*

   The Second Circuit has confirmed that when the Government possesses statements from witnesses, or attorneys for witnesses, that relate to a "central question at trial" and which may "undercut the government's argument[s]" or "undermine[] the testimony" of witnesses likely to be called by the Government, *Brady* mandates the disclosure of such statements to the defense. *Mahaffy*, 693 F.3d at 131, 138 (reversing defendants' securities fraud conspiracy convictions where the Government failed to disclose statements from witnesses that contradicted the Government's misappropriation theory); *Triumph Capital Grp., Inc.*, 544 F.3d at 162. However, despite clear precedent mandating disclosure, the Government claims that its obligation to produce the Witness Statements sought by Defendants is limited "solely…to Title 18, United States Code Section 3500," "if at all." (Ex. 4 at 1-2). The Government is incorrect. The Witness Statements constitute *Brady* evidence that requires "immediate disclosure upon discovery." *Binday*, 908 F. Supp. 2d at 498.

   As an initial matter, and contrary to the Government's assertion, the law is "well settled that Section 3500's bar on early disclosure of witness statements must give way to the constitutional disclosure obligations set forth in *Brady* and its progeny." *See United States v. Vilar*, No. 05 VR.621, 2008 WL 2531195, at *1, *4 (S.D.N.Y. June 22, 2008) (ordering early disclosure of Section 3500 materials "to the extent that such material constitutes *Brady* exculpatory or impeachment material"); *see also Gil*, 297 F.3d at 106 (labeling *Brady* evidence

as 3500 material and producing it as part of a large 3500 production on the eve of trial constitutes suppression).

The Witness Statements sought by Defendants constitute the type of *Brady* information that must be disclosed in advance of the Government's Section 3500 pre-trial production. The Witness Statements are material to the "central questions" that will be presented at trial, because Defendants' requests relate directly to the elements of the offense, including but not limited to, intent, materiality, and contemplated harm, *see supra* at 3-5, that the Government will be required to prove to the jury beyond a reasonable doubt. *Mahaffy*, 693 F.3d at 123; *Triumph Capital Grp., Inc.*, 544 F.3d at 162, 165 (FBI agent's notes of witness proffer session constituted *Brady* material because they were "directly relevant to the intent element" of the offense).

For example, if the Government possesses Witness Statements that "tend to show" that employees of the Universities "were aware of payments made to high school student-athletes or to the families of such student-athletes" or "wanted such payments to be made," those Witness Statements would constitute *Brady* material because they would help the defense establish the absence of any scheme to defraud. *See United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1180-81 (2d Cir. 1970) (the "purpose" of a wire fraud scheme "must be to injure," so where the victim received "exactly what [it] expected," there is no scheme to defraud); *United States v. Braunstein*, 281 F.3d 982, 984 (9th Cir. 2002) (where employees of an alleged corporate victim support the defendant's conduct, this fact "negate[s]" any claim that the corporation is the victim of a fraud scheme). As the Second Circuit noted in *Gil*, evidence falls under *Brady* when it "supports the idea that certain [officials of the victim company] were not adverse to doing business" through an arrangement that was "irregular" and "contrary to the

- 10 -

[established] process." 297 F.3d at 102, 104 (evidence was also "material" under *Brady* because it demonstrated that "employees" of the victim company "were failing to do what they were paid to do and [that] such nonfeasance was tolerated by senior [company] officials").

Likewise, if the Government possesses Witness Statements from employees (or former employees) of the Universities suggesting they believed that NCAA rule violations were "the price of doing business" in the hyper-competitive world of college basketball, those Witness Statements are *Brady* material because such testimony "harmonizes with the defendants' theory," *see Mahaffy*, 693 F.3d at 130, that the "Universities, on a regular basis, assume[d] the risk associated with [NCAA] recruiting violations" as a "business decision." (*See* Dkt. 42 (Tr. of Nov. 15, 2017 Conference) at 14:11-17 (defense counsel's description of defects in Government's case)); *see also Gil*, 297 F.3d at 102-03 (evidence constitutes "exculpatory or impeaching *Brady* material" where it could be employed by the defense to show that victim company "was not being run on a regular or businesslike basis").

By way of another example, it is settled law in this Circuit that the wire fraud statute's prohibition of fraudulent schemes executed "by means of false or fraudulent pretenses, representations and promises," *see* 18 U.S.C. § 1343, requires the Government to prove either (i) that the defendant made "affirmative misrepresentations;" or (ii) that the defendant "omi[tted] material information that [he] ha[d] a duty to disclose." *United States v. Autuori*, 212 F.3d 105, 118 (2d Cir. 2000) Because the Indictment contends that ██████████████████ ████████ would have had to "falsely certify" to the Universities that "they were unaware of any [NCAA] rules violations," *see* Ind. ¶¶ 3, 20, any Witness Statements suggesting that, in fact, the students-athletes' certifications were truthful because those students had no knowledge of the

- 11 -

payments allegedly made by Defendants to their parents would fall under *Brady*.[2]  *Mahaffy*, 693

F.3d at 127, 130 (where law required Government to prove "confidentiality" of information

transmitted to tippee, it was *Brady* violation to withhold statements by relevant individuals

asserting that "information was not confidential" since these statements "squarely contradicted"

the Government's allegations).

   To be sure, the Government has summarized for the defense, in its letters dated

December 19 and February 7, certain exculpatory statements provided by witnesses during

Government interviews.  Those letters, however, do not satisfy *Brady*'s requirements.  For

example, while Defendants appreciate the Government's disclosure that ███████████

███████████████████████████████████████

███████████████████████████████████████

███████████████ as would be reflected in a FBI Form FD-302

memorandum.  *See United States v. Martoma*, No. 12 CR. 973 PGG, 2014 WL 31704, at \*1, \*4

(S.D.N.Y. Jan. 6, 2014) (holding that the Government satisfied *Brady* specifically because it had

provided FBI Form FD-302 reports and notes reflecting the substance of witness statements).

Clearly, the Government must have Form FD-302s and other notes memorializing its multiple

meetings with ███████████ and other individuals.

   Indeed, it is hard to imagine that anything that ███████████ has said—or that

the ███████████ have said—to the Government wouldn't constitute *Brady*

evidence, especially given that a witness statement that is "inculpatory as well as exculpatory"

---

[2] Defendants offer these examples because they have already publically announced their
intention to present these particular arguments to the jury.  For strategic reasons, Defendants do
not explain in this brief how each of the requested Witnesses Statements relate to their potential
defenses, but Defendants will provide such detail to the Court in an *ex parte* communication, if
the Court believes that would be helpful.

must be disclosed under *Brady* if its "exculpatory character harmoniz[es] with the theory of the defense case." *Triumph Capital Grp., Inc.*, 544 F.3d at 164; *see also United States v. Rivas*, 377 F.3d 195, 199-200 (2d Cir. 2004) (conviction reversed based on Government's failure to disclose as *Brady* material a witness statement that had "both an inculpatory and an exculpatory effect"). Since the statements that ███████████████████████████████ ████████████████████████████████ the defense is entitled to the entirety of these individuals' statements, regardless of the nature of the rest of their statements. *Rivas*, 377 F.3d at 199-200. And although Defendants cannot "know what is undisclosed" in the Government's file, *see St. Germain*, 2004 WL 1171403, at *10, this same principle should apply whenever an individual—or his attorney—met with the Government and expressed a view that undermines the Government's theory of the case. *See* Decision and Order on Defs' Pretrial Motions at 27, *United States v. Connolly*, 16-cr-00370 (S.D.N.Y. Oct. 19, 2017), ECF No. 145 (warning the Government not to "assign an unduly narrow definition to words like 'relevant' or 'exculpatory'" and explaining that the failure to "turn over material of which defendants are unaware that relates to [their] obvious defenses" will have consequences).

As a final example, Defendants have sought evidence relevant to the Government's allegations that Defendants must have "contemplated harm" to the Universities because the NCAA imposes penalties on institutions for violations of NCAA rules. (Ind. ¶¶ 36, 37). However, numerous news articles have indicated that the NCAA is waiting—at the request of the Government—until after Defendants' trial to make a determination regarding penalties to the Universities. (Ex. 5 (Jeff Greer, *Louisville AD Vince Tyra Thinks the NCAA's Recruiting Investigation Won't Begin for at Least a Year*, LOUISVILLE COURIER-J. (Dec. 20, 2017),

https://www.courier-journal.com/story/sports/college/louisville/2017/12/20/louisville-basketball-recruiting-fbi-ncaa-inquiry-timeframe/968628001/)).

There is reason to believe that the NCAA will ultimately not impose any sanctions, given the amount of discretion exercised by its Committee on Infractions. (*Cf.* Ex. 6 (Marc Tracy, *N.C.A.A.: North Carolina Will Not Be Punished For Academic Scandal*, N.Y. TIMES (Oct. 13, 2017), https://www.nytimes.com/2017/10/13/sports/unc-north-carolina-ncaa.html (no penalties imposed on the University of North Carolina even though the NCAA "did not dispute that [UNC] was guilty of running one of the worst academic fraud schemes in college sports history, involving fake classes that enabled dozens of athletes to gain and maintain their eligibility"))). The Government's request that the NCAA hold off on any penalty determinations may have been prompted by its awareness that sanctions will not necessarily be imposed. Defendants are entitled under *Brady* to information from the Government regarding its discussions with the NCAA and the Universities on this subject, given that this is the type of evidence that could cause a reasonable juror to view the Government's contemplated harm allegations "in such a different light." *Triumph Capital Grp., Inc.*, 544 F.3d at 161 (*citing Youngblood v. West Virginia*, 547 U.S. 867, 870, 126 S. Ct. 2188 (2006)).

As the Supreme Court has recognized, when it comes to *Brady*, the Government should err in favor of disclosure. *Kyles v. Whitley*, 514 U.S. 419, 439-40, 115 S.Ct. 1555, 1568-69 (1995). This "is as it should be," since disclosure ensures that it is at "the criminal trial," and not during the "prosecutor's private deliberations," that the "full facts" are debated. *Id.* at 429, 439-40, 115 S.Ct at 1563, 1568. The fact of the matter is that "evidence the Government appears to consider irrelevant may well be very relevant," and the Government's "attestations" that it "is aware of its obligations under *Brady* [and] takes its responsibility to comply with that obligation

- 14 -

seriously" may not be enough to ensure that Defendants are not placed at an unfair disadvantage at trial. *See Connolly,* ECF No. 145 at 26.

        Accordingly, this Court should issue an order compelling the Government to review its case file for *Brady* evidence, including statements given to the Government by witnesses, non-witnesses, or their counsel, and to produce such materials to Defendants.  If such material exists, this Court should order the Government to promptly disclose it; if it doesn't, the Government must confirm to Defendants that no such evidence exists.

## CONCLUSION

        This Court should order the Government to review its case file, including statements given to the Government by witnesses, non-witnesses, or their counsel, for *Brady* material, including but not limited to evidence or information:

    a.   in which the declarant states that he or she is not aware of any wrongdoing by any or all of the Defendant(s), or by any other individual or entity referenced in the Indictment or whom the Office contends was part of Defendants' alleged conspiracy;

    b.   which tends to show that faculty, staff, athletic directors, academic directors, or any other employees or representatives of the University of Louisville and/or the University of Miami (together, the "Universities") were aware or otherwise had knowledge of payments made to high school student-athletes or to the families of such student-athletes in order to secure their commitment to attend the Universities;

    c.   which tends to show that faculty, staff, athletic directors, academic directors, or any other employees or representatives of the Universities wanted payments to be made to high school student-athletes or to the families of such student-athletes in order to secure their commitment to attend the Universities;

    d.   which concerns the reaction, or anticipated reaction, of the faculty, staff, athletic directors, academic directors, or any other employees or representatives of the Universities regarding violations of the rules of the NCAA;

    e.   which tends to show any Defendant's awareness or understanding that any faculty, staff, athletic directors, academic directors, or any other employee or representative of any university wanted payments to be made to high school

- 15 -

student-athletes or to the families of such student-athletes in order to secure their commitment to attend the Universities;

f.   which tends to show that certifications, declarations, or affidavits pertaining to NCAA rules, bylaws, or regulations that were signed by coaches, assistant coaches, or members of the athletic department at the Universities were true or immaterial;

g.   which tends to show that certifications, declarations, or affidavits pertaining to NCAA rules, bylaws, or regulations that were, or would have been, signed by student-athletes at the Universities were true or immaterial;

h.   which tends to show that the students-athletes had no knowledge of the payments allegedly made by Defendants;

i.   which concerns the purpose of the payments allegedly made by Defendants;

j.   which concerns the Universities' respective processes of awarding and/or revoking athletic scholarships for their men's basketball teams;

k.   which concerns any NCAA sanctions or penalties imposed on the Universities for any reason, including, but not limited to sanctions related to athletic scholarships, athlete eligibility, return of tournament earnings, or fines, whether self-imposed or imposed by the NCAA;

l.   which concerns any consideration given, deliberations about, or determinations made by the NCAA or the Universities with respect to the Indictment's allegations, including considerations regarding the eligibility and/or amateur status of ███████████████████████████████████ the consideration of whether or not to permit those players to practice and compete on NCAA-affiliated teams, the possibility of sanctions (including self-imposed sanctions) and the potential for cooperation or attempted cooperation by the Universities in any NCAA investigation;

m.   which concerns knowledge by any Adidas employee, contractor, consultant, or representative of benefits provided or offered to amateur athletes or their families and friends, including but not limited to cash, transportation, travel expenses, merchandise, or any other form of financial support;

n.   which tend to show that any or all of the Defendants lacked knowledge or information regarding (i) the payments alleged by the Government to have been funneled to student-athletes, (ii) the source of such payments, or (iii) the circumstances surrounding such payments;

o.   which are in any way inconsistent with the allegations in the Indictment;

p.   which the Government knows, or through reasonable diligence should have reason to know, are false. This request includes, in addition to identification of

the individual who made the false statement, any information regarding when the false statement was made by the individual or their representative and how the false statement was made;

q.  which tends to show that the declarant is untrustworthy or has been untruthful;

r.  which reflects a request by the Government to the NCAA and/or the Universities to delay investigations by those entities into the conduct alleged in the Indictment, or which concern the potential outcome of those investigations.

Dated:   New York, New York
         February 9, 2018

**NEXSEN PRUET LLC**

By: /s/ William W. Willkins
William W. Wilkins
Mark C. Moore
Andrew A. Mathias
55 E. Camperdown Way, Suite 400
Greenville, South Carolina 29601
(864) 370-2211
*Attorneys for Defendant Merl Code*

**HANEY LAW GROUP PLLC**

By: /s/ Steven A. Haney
Steven A. Haney
3000 Town Center Drive, Suite 2570
Southfield, Michigan 48075
(248) 414-1470
*Attorneys for Defendant Christian Dawkins*

**WILLKIE FARR & GALLAGHER LLP**

By: /s/ Michael S. Schachter
Michael S. Schachter
Casey E. Donnelly
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

**ANGELI LAW GROUP LLC**
David Angeli
121 SW Morrison Street, Suite 400
Portland, Oregon 97204
(503) 222-1552
*Attorneys for Defendant James Gatto*