## UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                          :
UNITED STATES OF AMERICA,                                 :
                                                          :
    v.                                                    :
                                                          :
JAMES GATTO,                                              :    Case No. 17-cr-00686 (LAK)
a/k/a "Jim,"                                              :
MERL CODE, and                                            :
CHRISTIAN DAWKINS,                                        :
                                                          :
                 Defendants.                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO COMPEL THE GOVERNMENT TO REVIEW EVIDENCE IN ITS POSSESSION FOR *BRADY* MATERIAL

**NEXSEN PRUET LLC**
William W. Wilkins
Mark C. Moore
Andrew A. Mathias
55 E. Camperdown Way, Suite 400
Greenville, South Carolina 29601
(864) 370-2211

*Attorneys for Defendant Merl Code*


**HANEY LAW GROUP PLLC**
Steven A. Haney
3000 Town Center Drive, Suite 2570
Southfield, Michigan 48075
(248) 414-1470

*Attorneys for Defendant Christian Dawkins*


**WILLKIE FARR & GALLAGHER LLP**
Michael S. Schachter
Casey E. Donnelly
787 Seventh Avenue
New York, New York 10019
(212) 728-8000


**ANGELI LAW GROUP LLC**
David Angeli
121 SW Morrison Street, Suite 400
Portland, Oregon 97204
(503) 222-1552

*Attorneys for Defendant James Gatto*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...........................................................................................1

I.     THE WITNESS STATEMENTS ARE *BRADY* MATERIAL. ...........................................2

II.    THE GOVERNMENT HAS NOT MET ITS *BRADY* OBLIGATION. .............................5

CONCLUSION...............................................................................................................8

# TABLE OF AUTHORITIES

**Cases**                                                                                                     **Page(s)**

*Dominguez v. Rock,*
    No. 12-CV-3269 (NGG), 2016 WL 542120 (E.D.N.Y Feb. 9, 2016),
    *certificate of appealability denied* (June 16, 2016) ...........................................................7

*Pizzuti v. United States,*
    809 F. Supp. 2d 164 (S.D.N.Y. 2011) ...........................................................................7

*St. Germain v. United States,*
    No. 03 CV 8006(CM), 2004 WL 1171403 (S.D.N.Y. May 11, 2004) ...............................2

*United States v. Binday,*
    908 F. Supp. 2d 485 (S.D.N.Y. 2012) ...........................................................................5

*United States v. Coppa,*
    267 F.3d 132 (2d Cir. 2001) ...........................................................................................4

*United States v. Espinal,*
    96 F. Supp. 3d 53 (S.D.N.Y. 2015) ...............................................................................5

*United States v. Finnerty,*
    474 F. Supp. 2d 530 (S.D.N.Y. 2007) ...........................................................................3

*United States v. Gil,*
    297 F.3d 93 (2d Cir. 2012) ........................................................................................5, 6

*United States v. Gupta,*
    848 F. Supp. 2d 491 (S.D.N.Y. 2012) ...........................................................................7

*United States v. Gupta,*
    S1 11 Cr. 907 (S.D.N.Y. 2012)......................................................................................8

*United States v. Mahaffy,*
    693 F.3d 113 (2d Cir. 2012) ...........................................................................................2

*United States v. Reddy,*
    190 F. Supp. 2d 558 (S.D.N.Y. 2002) ...........................................................................6

*United States v. Regent Office Supply Co.,*
    421 F.2d 1174 (2d Cir. 1970) .........................................................................................3

*United States v. Rittweger,*
    524 F.3d 171 (2d Cir. 2008) ...........................................................................................5

*United States v. Rivas,*
    377 F.3d 195 (2d Cir. 2004) ............................................................................2

*United States v. Thomas,*
    981 F. Supp. 2d 229 (S.D.N.Y. 2013) ...............................................................6

*United States v. Triumph Capital Grp.,*
    544 F.3d 149 (2d Cir. 2008) .........................................................................2, 6

**Other Authorities**

Alafair S. Burke, *Revisiting Prosecutorial Disclosure*, 84 Ind. L.J. 481 (2009)............................1

Alafair S. Burke, *Improving Prosecutorial Decision Making: Some Lessons of Cognitive Science*,
    47 Wm. & Mary L. Rev. 1587 (2006) ...............................................................1

United States Attorney's Manual § 9-5.001(D)(1) .........................................................5

## PRELIMINARY STATEMENT

Because it can be difficult for the Government to anticipate its adversary's defenses and understand what evidence may be exculpatory,[1] Defendants endeavored to provide written guidance to the Government regarding categories of information which may have been disclosed by witnesses that Defendants would consider exculpatory and material to the defense (the "Witness Statements"). Defendants asked the Government to produce any such Witness Statements or, at a minimum, disclose whether such Witness Statements even exist, so that the defense could bring to the Court's attention areas of disagreement with respect to the Government's disclosure obligations. Rather than disclose whether such Witness Statements exist, the Government in its Opposition instead relies on the refrain that it "is aware of its obligations under *Brady* [and] takes its responsibility to comply with that obligation seriously." (Opp. 52, 53, 59, 60, 61, 65).

But the Government's Opposition suggests that the Government may misunderstand its disclosure obligations. The Government argues that the Witness Statements are "discoverable, if at all, as impeachment material pursuant to *Giglio v. United States* . . . or pursuant to 18 U.S.C. § 3500" and can thus be produced "substantially closer to trial." (Opp. 53). In making this assertion, the Government contends that the Witness Statements are not *Brady* material because they are—according to the Government's theory of the case—either

---

[1] *See generally* Alafair S. Burke, *Revisiting Prosecutorial Disclosure*, 84 Ind. L.J. 481, 494-497 (2009); Alafair S. Burke, *Improving Prosecutorial Decision Making: Some Lessons of Cognitive Science*, 47 Wm. & Mary L. Rev. 1587, 1610-1612 (2006) ("the prosecutor's application of *Brady* is biased [] because . . . the theory she has developed . . . might trigger cognitive biases, such as confirmation bias and selective information processing . . . [for example,] because of selective information processing, the prosecutor will accept at face value the evidence she views as inculpatory, without subjecting it to the scrutiny that a defense attorney would encourage jurors to apply . . . compared to a neutral decision maker, the prosecutor will overestimate the strength of the government's case against the defendant and underestimate the potential exculpatory value of the evidence whose disclosure is at issue").

1

*inculpatory* or "would *not necessarily* be exculpatory." (Opp. at 62-63 (emphasis added)). The law, however, makes clear that the determination of whether material falls under *Brady* must be done in light of the *defense's* theory of the case, not the Government's. The law also makes clear that evidence that may be susceptible to both an inculpatory and exculpatory interpretation falls within *Brady's* ambit.

Because the Witness Statements would constitute *Brady* material—not *Giglio* or 3500 material—Defendants respectfully request that the Court order the Government to review its case file and promptly disclose to Defendants any Witness Statements regarding the subjects identified in the instant motion and any other exculpatory evidence.

## I.  THE WITNESS STATEMENTS ARE *BRADY* MATERIAL.

The Government contends that the evidence in the Witness Statements identified by Defendants is not *Brady* material because it is either inculpatory or "would *not necessarily* be exculpatory." (Opp. 62-63 (emphasis added)). However, in assessing whether evidence constitutes *Brady* material, "it is not the Government's job to decide whether defense counsel" could effectively use the evidence. *St. Germain v. United States*, No. 03 CV 8006(CM), 2004 WL 1171403, at *13 (S.D.N.Y. May 11, 2004). Moreover, the "fact that the government is able to argue [that evidence is] consistent with the prosecution's theory of the case fails to lessen [its] exculpatory force" if that evidence also "harmonize[s] with the theory of the defense case." *United States v. Mahaffy,* 693 F.3d 113, 130 (2d Cir. 2012) (quoting *United States v. Triumph Capital Grp.,* 544 F.3d 149, 164 (2d Cir. 2008)). Indeed, it is well-settled that *Brady* evidence includes statements which could "be viewed as having both an inculpatory" but also "an exculpatory effect" in light "of [the defendant's theory of] defense." *United States v. Rivas*, 377 F.3d 195, 199 (2d Cir. 2004). As the briefing makes clear, the Witness Statements contain evidence which, at a minimum, may be viewed as having both an inculpatory but also an

2

exculpatory effect and the fact that the Government and Defendants read the same evidence in two different ways does not excuse the Government from its *Brady* obligations.

For example, the Government claims that Witness Statements indicating that employees of the Universities, including coaches, were aware of payments made to the families of certain student-athletes is not *Brady* material because such information "would either implicate the[] coaches in the charged crime or demonstrate that they failed to bring to the attention of the relevant decision-makers eligibility issues concerning these student-athletes." (Opp. 62). However, as Defendants' opening brief made clear, such evidence could also be read as exculpatory insofar as it demonstrates that Defendants were not intending to defraud the Universities. (*Brady* Br. 10-11). Evidence that coaches were aware of payments would be relevant to the jury's assessment of whether Defendants set out to injure the Universities or rather, from Defendants' perspectives, the Universities received "exactly what [they] expected," and the alleged fraud scheme therefore did not have a purpose to injure—a necessary element of wire fraud. *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1180-81 (2d Cir. 1970) (the "purpose" of a wire fraud scheme "must be to injure," so where the victim received "exactly what [it] expected," there is no scheme to defraud); *see also United States v. Finnerty*, 474 F. Supp. 2d 530, 537 (S.D.N.Y. 2007) (where purported fraud victim is "getting exactly what they expect, then the conduct is neither deceptive nor fraudulent").

Similarly, with respect to statements regarding the student-athletes' knowledge of payments to family members, the Government argues that such information "would *not necessarily* be exculpatory" because Defendants "would be guilty of the charged wire fraud conspiracy . . . if they believed that an object of the conspiracy was to cause the student athletes and/or their family members to falsely represent to the Universities that they were amateur

athletes eligible to compete in NCAA athletics." (Opp. 63 (emphasis added)). However, because the students' certifications are alleged to have been made "to the best of their knowledge," *see* Ind. ¶ 20, any evidence that the students did not, in fact, have knowledge, would show that the certifications were not "false." (*See Brady* Br. 11-12). Such evidence would, of course, make it less likely that Defendants believed an object of their alleged conspiracy was to commit fraud by means of false representations. That is all that *Brady* requires. *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001) (*Brady* material includes evidence that "tends to exculpate the accused").

Likewise, Defendants have asked for Witness Statements in which the witness informed the Government that he or she had no knowledge of any wrongdoing by Defendants or their purported co-conspirators. (*See Brady* Br. 5, n.1). In response, the Government argues that a statement from a witness who "doesn't know the defendants" in which the witness states that he or she has no knowledge of wrongdoing is not *Brady* material, but rather "is just irrelevant." (Opp. 65). But, that is not necessarily true. If the witness is someone who *should have known* of the purported misconduct, assuming the Government's theory of the case is true, and that person disclaims knowledge, that witness's statements fall under *Brady*. For example, if the family member who is alleged to have accepted $25,000 from Defendants in furtherance of the scheme disclaims any knowledge of wrongdoing on the part of Mr. Gatto, Mr. Code, or any other adidas employee, his statements would clearly constitute *Brady* evidence.

Because the Witness Statements are at the very least susceptible to both exculpatory and inculpatory interpretations and because Defendants have made plain why they believe the material is exculpatory, the Government's contention that the Witness Statements merely constitute *Gilgio*/3500 material is unavailing. Moreover, where information—including

witness statements—can be classified as both *Brady* material and *Giglio*/3500 material, it is

*Brady* that controls. *See United States v. Rittweger*, 524 F.3d 171, 181 n.4 (2d Cir. 2008)

("Complying with the Jencks Act, of course, does not shield the government from its

independent obligation to timely produce exculpatory material under *Brady*—a constitutional

requirement that trumps the statutory power of 18 U.S.C. § 3500."); *United States v. Gil*, 297

F.3d 93, 106 (2d Cir. 2002) (labeling *Brady* evidence as 3500 material and producing it as part of

a large 3500 production on the eve of trial constitutes suppression); *United States v. Espinal*, 96

F. Supp. 3d 53, 66 (S.D.N.Y. 2015) ("A witness statement—or parts thereof—may fall within

the ambit of both *Brady* and *Giglio*, and thus the government may be required to be produce it in

advance of the trial testimony despite the Jencks Act").

        The Witness Statements constitute *Brady* material, and the Government must

promptly disclose exculpatory evidence contained therein. *See United States v. Binday*, 908 F.

Supp. 2d 485, 498 (S.D.N.Y. 2012) ("timeliness" with "respect to *Brady* disclosure means

immediate disclosure upon discovery");[2] *see also* United States Attorney's Manual § 9-

5.001(D)(1) (exculpatory information must be "disclosed reasonably promptly after it is

discovered").

## II.    THE GOVERNMENT HAS NOT MET ITS *BRADY* OBLIGATION.

        The Government asserts that it has "provided disclosures that meet or exceed

what is required by *Brady*," *see* Opp. 65, because it has produced "voluminous Rule 16 material"

and authored certain disclosure letters dated December 19, 2017 and February 7, 2018.  (Opp.

---

[2] The Government claims that Defendants "distort" Chief Judge McMahon's opinion in *Binday*.
(Opp. 59 n.34).  Not so.  While Judge McMahon did distinguish between *Brady* and Jenks Act
material, she did not mince words when she stated: "timeliness with respect to *Brady* disclosure
means immediate disclosure upon discovery." *Binday*, 908 F. Supp. 2d at 498.

54-55). As an initial matter, the fact that the Government has produced certain material that is "relevan[t] to the instant motions—and the requests made therein," *see* Opp. 54, does not do away with the Government's obligation to produce "*all* material evidence favorable to a criminal defendant." *Triumph Capital Grp., Inc.*, 544 F.3d at 161 (emphasis added); *see also Gil*, 297 F.3d at 95–96 (reversing conviction where the Government failed to disclose one exculpatory memorandum, notwithstanding that the Government had produced a large amount of other *Brady* material). Voluminous Rule 16 discovery does not obviate the Government's *Brady* obligations, particularly where Defendants have specifically identified the categories of information that they believe to be material to the preparation of their defense in order to put the Government "on notice of its value." (*Brady* Br. Ex. 1); *United States v. Thomas*, 981 F. Supp. 2d 229, 240 (S.D.N.Y. 2013) ("[T]he more specifically the defense requests certain evidence, thus putting the prosecutor on notice of its value, the more reasonable it is for the defense to assume from the nondisclosure that the evidence does not exist, and to make pretrial and trial decisions on the basis of this assumption.") (quoting *United States v. Bagley*, 473 U.S. 667, 682-83, 105 S.Ct. 3375, 3384 (1985)).[3]

Furthermore, the incomplete disclosure letters provided by the Government are plainly insufficient to meet its *Brady* obligation. The December 19 and February 7 letters contain AUSA Diskant's bare-bones re-telling of certain information provided by multiple witnesses during Government interviews. (*See Brady* Br. 12-13). A letter authored by the

---

[3] The Government's reliance on *United States v. Reddy*, 190 F. Supp. 2d 558 (S.D.N.Y. 2002) is misplaced. (Opp. 58). In *Reddy*, the court denied defendants' request for *Brady* material because the defense had "not indicated how the opinions, conclusions, and analysis of the investigators meet the materiality standard . . . in other words, how such materials could help the [d]efendants' to counter the Government's case [or] bolster their defense." *Reddy*, 190 F. Supp. 2d at 573. Here, however, Defendants have articulated how the requested Witness Statements would bolster their defense.

prosecutor describing a witness's statements is no substitute for the FBI's 302 reports or notes prepared by the case agents who were actually present for such interviews. Those materials likely include additional information—including the exact language used by the witness—which is exculpatory █████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

      Where exculpatory, the defense is entitled to the exact words used by the witness as recorded by the agent in his or her memorandum, and should not have to rely on an AUSA's reported gist of the statement. *See United States v. Gupta*, 848 F. Supp. 2d 491, 495 (S.D.N.Y. 2012) (*Brady* does not allow the Government to assume that one participant's summary of an interview is sufficient, because the two participants "may have chosen to emphasize other parts of the witness interviews in [their] memoranda."); *Pizzuti v. United States*, 809 F. Supp. 2d 164, 197 (S.D.N.Y. 2011) (ordering the Government to produce 302s related to certain witnesses). The Government appears to take the position that Defendants are entitled to the exact words of a witness, as captured by the agent's notes of the meeting, only where that witness is testifying at trial and therefore his prior statements must be disclosed as 3500 material. (Opp. 57). That is not the law. "Although the Second Circuit has never expressly stated that the Government must disclose exculpatory and impeachment materials pertaining to nontestifying witnesses, that conclusion flows inescapably from prior cases . . . A contrary conclusion would permit the prosecution to avoid disclosure of exculpatory or impeachment material simply by not calling the relevant witness to testify." *Dominguez v. Rock*, No. 12-CV-3269 (NGG), 2016 WL 542120, at *11-12 (E.D.N.Y. Feb. 9, 2016), *certificate of appealability denied* (June 16, 2016).

While the Government claims that it is acting in accordance with established "practice in this District," *see* Opp. 58, the Justice Department has repeatedly provided witness statements—in the form of FBI 302s and Government notes—to the defense where the witness's interview included exculpatory information. *See, e.g.* Ltr. by USA, *United States v. Gupta*, S1 11 Cr. 907 (S.D.N.Y. Mar. 1, 2016), ECF No. 36 ("The USAO has direct knowledge of the statements made at relevant interviews, and to the extent that any of those statements constitute *Brady* [material] or otherwise fall within the USAO's broader approach to disclosure, the USAO has agreed to provide those statements to the defendants, in the form of relevant excerpts of FBI-302 reports or handwritten notes taken by the USAO.").

The Government should be ordered to produce the FBI's 302 reports and other memorandum and notes of exculpatory statements, not just the AUSA's brief summary of those statements.

## CONCLUSION

This Court should issue an order directing the Government to review its case file, including statements given to the Government by witnesses, non-witnesses, or their counsel, for evidence falling within the categories of information described in the instant motion, as well as any other *Brady* material in its possession. To the extent the Government is in possession of material that "harmonizes" with Defendants' theory of the case, this Court should order the Government to promptly disclose it. To the extent that it does not, the Government must confirm to Defendants that no such evidence exists.

8

Dated: New York, New York
March 19, 2018

**NEXSEN PRUET LLC**

By: /s/ William W. Willkins
William W. Wilkins
Mark C. Moore
Andrew A. Mathias
55 E. Camperdown Way, Suite 400
Greenville, South Carolina 29601
(864) 370-2211
*Attorneys for Defendant Merl Code*

**HANEY LAW GROUP PLLC**

By: /s/ Steven A. Haney
Steven A. Haney
3000 Town Center Drive, Suite 2570
Southfield, Michigan 48075
(248) 414-1470
*Attorneys for Defendant Christian Dawkins*

**WILLKIE FARR & GALLAGHER LLP**

By: /s/ Michael S. Schachter
Michael S. Schachter
Casey E. Donnelly
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

**ANGELI LAW GROUP LLC**
David Angeli
121 SW Morrison Street, Suite 400
Portland, Oregon 97204
(503) 222-1552
*Attorneys for Defendant James Gatto*