UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x
                                      :
UNITED STATES OF AMERICA,             :
                                      :
v.                                    :
                                      :
JAMES GATTO,                          :  **Case No. 17-cr-00686 (LAK)**
a/k/a "Jim,"                          :
MERL CODE, and                        :
CHRISTIAN DAWKINS,                    :
                                      :
        Defendants.                   :
------------------------------------- x

### SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL THE GOVERNMENT TO PRODUCE EXCULPATORY AND IMPEACHING WITNESS STATEMENTS

**NEXSEN PRUET LLC**
William W. Wilkins
Mark C. Moore
Andrew A. Mathias
55 E. Camperdown Way, Suite 400
Greenville, South Carolina 29601
(864) 370-2211

*Attorneys for Defendant Merl Code*

**HANEY LAW GROUP PLLC**
Steven A. Haney
3000 Town Center Drive, Suite 2570
Southfield, Michigan 48075
(248) 414-1470

*Attorneys for Defendant Christian Dawkins*

**WILLKIE FARR & GALLAGHER LLP**
Michael S. Schachter
Casey E. Donnelly
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

**ANGELI LAW GROUP LLC**
David Angeli
121 SW Morrison Street, Suite 400
Portland, Oregon 97204
(503) 222-1552

*Attorneys for Defendant James Gatto*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

    I.     THE COURT CAN, AND SHOULD, REQUIRE THE GOVERNMENT TO PRODUCE THE REQUESTED MATERIALS. .....................................................1

    II.    DEFENDANTS SEEK A LIMITED NUMBER OF WITNESS STATEMENTS REGARDING A NARROW SET OF CRITICAL TOPICS. ..................................3

         A.     The Government Should Be Required to Disclose Exculpatory or Impeaching Statements from Brad Augustine. ............................................3

         B.     The Government Should Be Required to Disclose Exculpatory or Impeaching Statements from the Student-Athletes or Their Family Members. ..................................................................................................6

         C.     The Government Should Be Required to Disclose Exculpatory or Impeaching Statements from the Universities' Coaches. ...........................8

    III.   THE COURT SHOULD COMPEL PROMPT DISCLOSURE OF THE REQUESTED MATERIALS. ........................................................................................9

CONCLUSION................................................................................................................................11

# TABLE OF AUTHORITIES

**Case**                                                                                                   **Page(s)**

*Smith v. Cain*,
    No. 10-8145, 2011 WL 5360052 (Nov. 8, 2011)...................................................................2

*United States v. Coppa*,
    267 F.3d 132, 140 (2d Cir. 2001)..............................................................................................2

*United States v. D'Amato*,
    39 F.3d 1249 (2d Cir. 1994).......................................................................................................9

*United States v. Dolah*,
    245 F.3d 98, 105 (2d Cir. 2001)..............................................................................................10

*Dominguez v. Rock*,
    No. 12-CV-3269 (NGG), 2016 WL 542120 (E.D.N.Y. Feb. 9, 2016) ...............................10

*United States v. Durham*,
    825 F.2d 716 (2d Cir. 1987).....................................................................................................10

*United States v. Gil*,
    297 F.3d 93 (2d Cir. 2002)........................................................................................................8

*United States v. Gupta*,
    848 F. Supp. 2d 491, 495 (S.D.N.Y. 2012)................................................................................4

*United States v. Litvak*,
    808 F.3d 160 (2d Cir. 2015)......................................................................................................8

*United States v. Martoma*,
    No. 12 CR. 973 PGG, 2014 WL 31704 (S.D.N.Y. Jan. 6, 2014) .........................................4

*United States v. Price*,
    566 F.3d 900 (9th Cir. 2009) ....................................................................................................2

*United States v. Regent Office Supply Co.*,
    421 F.2d 1174 (2d Cir. 1970)....................................................................................................8

*United States v. Rodriguez*,
    496 F.3d 221 (2d Cir. 2007)......................................................................................................1

*United States v. Stein*,
    424 F. Supp. 2d 720 (S.D.N.Y. 2006)......................................................................................2

*United States v. Triumph Capital Grp., Inc.*,
    544 F.3d 149, 157 (2d Cir. 2008) ................................................................................ 4

*Wheat v. United States*,
    486 U.S. 153, 108 S. Ct. 1692 (1988) ......................................................................... 2

**Statues, Rules and Regulations**

18 U.S.C. ¶ 1343 ................................................................................................................ 7

S.D.N.Y. Loc. Civ. R. 1.3(a) ............................................................................................. 3

S.D.N.Y. Loc. Crim. R. 1.1(b) .......................................................................................... 3

**Other Authorities**

Ass'n of the Bar of the City of N.Y. Comm. on Prof'l Ethics, Formal Op. 2016-3: Prosecutor's Ethical Obligations to Disclose Information Favorable to the Defense (Aug. 29, 2016) ................ 3

MODEL RULES OF PROF'L CONDUCT r. 3.8(d) (AM. BAR ASS'N 2016) .............................. 3

NEW YORK RULES OF PROF'L CONDUCT r. 3.8(b) ............................................................ 3

Defendants James Gatto, Merl Code and Christian Dawkins respectfully submit this supplemental memorandum of law clarifying their Motion to Compel the Government to Review Evidence in its Possession for *Brady* Material (Dkt. 81).

## PRELIMINARY STATEMENT

To facilitate the Government's *Brady* disclosures, Defendants provided the Government with descriptions of evidence that would be materially favorable to the defense. However, Defendants now recognize that in their attempt to be comprehensive, they inadvertently made it more difficult for this Court to issue a meaningful disclosure order. Accordingly, and in light of the concerns expressed by the Court during the March 22, 2018 oral argument, Defendants have reconsidered their request for relief. Defendants respectfully ask the Court, in the interests of justice, to compel the Government to promptly disclose the actual statements made to the Government by certain witnesses regarding a narrow set of critical topics, as described in Section II and listed in the Conclusion below (the "Requested Materials").

## I. THE COURT CAN, AND SHOULD, REQUIRE THE GOVERNMENT TO PRODUCE THE REQUESTED MATERIALS.

The Government's *Brady* obligations are based on a "recogni[tion]" that "the evidence on which the prosecution relies to prove the defendant's guilt is not necessarily truthful, accurate, or complete." *United States v. Rodriguez*, 496 F.3d 221, 225 (2d Cir. 2007). *Brady* does not require the Government to turn over its entire file, but "when the prosecution's investigations have made it aware of evidence or information that might be favorable to the defense in controverting the Government's proofs," disclosure of that evidence is necessary. *Id.*

Defendants understand that it may be difficult for a court to order pretrial disclosure pursuant to *Brady* because "the scope of a defendant's constitutional right [under *Brady*] is ultimately defined retrospectively, by reference to the likely effect that the suppression

1

of particular evidence had on the outcome of the trial." *United States v. Coppa*, 267 F.3d 132, 140 (2d Cir. 2001). This Court alluded to *Coppa* during the March 22 oral argument when it explained that "the Second Circuit has said that I'm in no position to make determinations as to *Brady* before trial" and permitted Defendants to revise this motion to address the Court's concerns regarding "overbreadth" and the "pretrial determination problem." (Dkt. 130 (Tr., at 47:18-20; 49:7-10, 51:6-12)). Even under *Coppa*, however, a district court retains discretion to "order pretrial disclosures as a matter of sound case management."[1] 267 F.3d at 146; *see also United States v. Stein*, 424 F. Supp. 2d 720, 726-727 (S.D.N.Y. 2006) (court may order pretrial disclosure pursuant to its "wide latitude to carry out successfully its mandate to effectuate . . . the speedy and orderly administration of justice") (internal citations omitted).

In addition, the Supreme Court has recognized that "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession." *Wheat v. United States*, 486 U.S. 153, 160, 108 S. Ct. 1692, 1698 (1988). The Government's duty to disclose exculpatory evidence is not limited to its *Brady* obligations;

---

[1] Since *Coppa* was decided, the Supreme Court has indicated that "the test for when *Brady* material must be turned over" is not the same as the "test for when there has been a *Brady* violation." Tr. of Oral Arg., *Smith v. Cain*, No. 10-8145, 2011 WL 5360052, at *48 (U.S. Nov. 8, 2011) (Justice Kennedy: "[W]ith all respect, I think [the State of Louisiana] misspoke when [the State]…[was] asked…what is the test for when *Brady* material must be turned over. And [the State] said whether or not there is a…reasonable probability that the result would have been different. That's the test for when there has been a *Brady* violation. *You don't determine your Brady obligation by the test of a Brady violation.* [The State is] transposing two very different things.") (emphasis added). Defendants believe that Justice Kennedy is correct. *See United States v. Price*, 566 F.3d 900, 913 n.14 (9th Cir. 2009) ("the proper test for pretrial disclosure of exculpatory evidence" is not a "materiality" standard but rather "whether the evidence is favorable to the defense, i.e., whether it is evidence that helps bolster the defense case or impeach the prosecutor's witnesses"). While Defendants wish to preserve this issue for appeal, they recognize that this Court is not bound by Justice Kennedy's comments, nor by the Ninth Circuit, and thus, focus here on explaining why disclosure of the Requested Materials is necessary for effective case management, consistent with *Coppa*.

professional conduct rules require the Government to disclose favorable evidence "as soon as reasonably practicable" regardless of whether the evidence is "material" in the *Brady* sense. *See* New York City Bar Ass'n Comm. on Prof'l Ethics, Formal Op. 2016-3 (Aug. 29, 2016); NEW YORK RULES OF PROF'L CONDUCT r. 3.8(b) (requiring prosecutors to timely disclose favorable evidence or information that tends to negate guilt or mitigates the offense) *and* MODEL RULES OF PROF'L CONDUCT r. 3.8(d) (AM. BAR ASS'N 2016) (same). Disclosure is mandated "not only [to] facilitat[e] a potential trial defense, but also [to] assist[] the defense prior to trial—e.g., . . . [by] enabling the defense lawyer to conduct a more effective investigation and better prepare for trial[.]" New York City Bar Ass'n Comm. on Comm. on Prof'l Ethics, Formal Op. 2016-3 (Aug. 29, 2016); S.D.N.Y. Loc. Crim. R. 1.1(b), S.D.N.Y. Loc. Civ. R. 1.3(a) (adherence to the New York State Rules of Professional Conduct is a prerequisite for admission to the Southern District). Accordingly, ethical considerations, as well as the practical concerns described below, weigh in favor of prompt disclosure of the Requested Materials.

## II. DEFENDANTS SEEK A LIMITED NUMBER OF WITNESS STATEMENTS REGARDING A NARROW SET OF CRITICAL TOPICS.

### A. The Government Should Be Required to Disclose Exculpatory or Impeaching Statements from Brad Augustine.

On December 19, 2017, the Government sent Defendants a four-sentence summary of information that Brad Augustine, who was initially named as a defendant in this case, disclosed during interviews. (Dkt. 82-2 at 2). The Government's summary did not contain any direct quotes from Mr. Augustine but instead, broadly interpreted his story. The Government should be compelled to disclose the actual statements provided by Mr. Augustine,

3

in his own words, as reflected in the Government's FBI 302 reports or in notes taken by the Government during its interviews.[2]

Mr. Augustine appears to have offered the Government much more than a denial of his involvement in the alleged conspiracy. The Government has alleged that he was the conduit connecting Defendants and the ▮▮▮▮▮—two of the three families allegedly involved in the criminal scheme. (Compl. ¶ 21). For example, the Complaint asserts that Defendants only began discussing a potential payment to the ▮▮▮ family after they learned from Mr. Augustine that Miami's ▮▮▮▮▮ "request[ed]" that a payment be made to "secur[e] ▮▮▮▮▮ commitment to play at [Miami]." (*Id.* at ¶¶ 43, 44(a)).

The Government's disclosure, however, makes clear that ▮▮▮▮▮
▮▮▮▮▮
▮▮▮▮▮
▮▮▮▮▮
▮▮▮▮▮
▮▮▮▮▮

---

[2] Even if the Government's FBI 302 reports or notes do not contain the exact words used by a witness, the Court should require production of the portions of these documents that reflect exculpatory or impeaching statements made by the witness. *See United States v. Martoma*, No. 12 CR. 973 PGG, 2014 WL 31704, at *1, *4 (S.D.N.Y. Jan. 6, 2014) (Government satisfied obligations under *Brady* because it disclosed FBI 302 reports and agent notes reflecting the substance of witness statements); *United States v. Gupta*, 848 F. Supp. 2d 491, 495 (S.D.N.Y. 2012) (given that "[t]here is no transcript that serves as a complete and accurate record of what was said at [the Government's witness] interviews," notes and summaries prepared by the Government participants should be disclosed, especially where participants "may have chosen to emphasize [different] parts of the witness interviews in their memoranda"); *see also United States v. Triumph Capital Grp., Inc.*, 544 F.3d 149, 157 (2d Cir. 2008) (finding a *Brady* violation where the Government failed to disclose notes taken by an FBI agent during an attorney proffer, notwithstanding that the Government had produced the FBI report memorializing the proffer).

Likewise, the Government stated that ███████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
███████████████████████████████████ (*Id.*).

Defendants are entitled to know exactly what ██████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████ (*Id.*). In addition, given that the participation of the Miami coaches and the families of the student-athletes is an essential part of the Government's theory of fraud, Defendants are entitled to know exactly what █████████████████████████
████████████████████████████████████ These statements could be dispositive at trial, since █████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████████ the Government will not be able to prove that any false statement was or would have been made to the University in furtherance of the conspiracy—one of the elements that the Government must establish at trial. (*Cf.* Ind. ¶ 33 (alleging that the coaches and ████████ would have submitted a false certification to Miami regarding compliance with NCAA rules)).

Defendants also believe, based on the fact that the Government has dismissed all charges against Mr. Augustine, *see* No. 17 MJ 07129 UA, Dkt. 53, that Mr. Augustine's story is more favorable to the defense than the Government's disclosure suggests. It seems unlikely that

5

the Government would have dropped all charges based solely on Mr. Augustine's statements about the ▇▇▇▇ since he is also alleged to have orchestrated "the plan to funnel money to the family of ▇▇▇▇" (Compl. ¶¶ 36(a)-(c)). According to the Complaint, it was Mr. Augustine who "suggested that the 'easiest way'" to get money to the ▇▇▇▇ family "would be to send money" to the amateur basketball team that Mr. Augustine coached, or, alternatively, to provide Mr. Augustine with "cash." (*Id.*). In fact, the Government has Mr. Augustine *caught on camera*, in the presence of one of Louisville's basketball coaches, accepting "an envelope containing $12,700 in cash" from the undercover agent, allegedly in order to pay the ▇▇▇▇ family. (*Id.* at ¶ 36(c)). ▇▇▇▇ ▇▇▇▇ but the fact that the charges against him have been dropped suggests that he may have an innocent explanation. ▇▇▇▇ ▇▇▇▇ ▇▇▇▇ that evidence is critically important. Accordingly, Defendants seek ▇▇▇▇ ▇▇▇▇

**B.   The Government Should Be Required to Disclose Exculpatory or Impeaching Statements from the Student-Athletes or Their Family Members.**

The Government has disclosed that it interviewed ▇▇▇▇ ▇▇▇▇ ▇▇▇▇ ▇▇▇▇ *Id.*). The Government has also ▇▇▇▇ ▇▇▇▇ ▇▇▇▇

6

███████████████████████████████████████████
████████████ Dkt. 82-2 at 1). ████████████████ (Dkt. 82-3 at 2).

Like its disclosures concerning Mr. Augustine, the Government did not disclose the actual words spoken by these individuals, but rather broadly paraphrased their stories, without any of the supporting details that these witnesses almost certainly provided. The Government should be compelled to disclose the actual statements, as reflected in the Government's FBI 302 reports or in notes taken by the Government during interviews, made by any of the student-athletes described in the Indictment, or their family members, regarding their lack of knowledge of improper benefits or their lack of involvement in the charged conspiracy.

This is critical defense evidence because the participation of the student-athletes and/or their family members is essential to the Government's theory of fraud. If Defendants can demonstrate that the student-athletes described in the Indictment never asked for or received any "impermissible benefit" prohibited by NCAA rules, the jury will view with skepticism the Government's allegation that the Universities were defrauded into "agree[ing] to provide athletic scholarships to student-athletes who . . . were ineligible to compete" due to an NCAA violation. (Ind. ¶ 36). Likewise, if the student-athletes and their families were not "co-conspirators" and did not make false representations to the Universities regarding compliance with NCAA rules, that evidence will be meaningful to a jury that must decide whether Defendants conspired in a scheme to defraud the Universities out of athletic scholarships "by means of false or fraudulent pretenses, representations, and promises." (Ind. ¶ 3; 18 U.S.C. ¶ 1343). Indeed, if the student-athletes and their families never participated in the alleged scheme, that would help rebut the allegation that the object of the charged conspiracy was to "obtain money or property" for the conspirators in the form of athletic scholarships for the students. *See* Dkt. 106, Order, dated Feb.

28, 2018, at 18 (the Indictment "adequately charges a conspiracy to use the wires in furtherance of a scheme by which student-athletes or their families—alleged co-conspirators all—would obtain athletic scholarships, thereby depriving the victims of money or other property").

### C. The Government Should Be Required to Disclose Exculpatory or Impeaching Statements from the Universities' Coaches.

Defendants also seek statements by any current or former Miami or Louisville coach regarding (i) his participation in, and/or knowledge of, any plan to make payments to ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄ and/or their families, or his *lack* of such participation or knowledge; (ii) his belief that the Universities considered NCAA rule violations to be an intrinsic aspect of maintaining a competitive men's basketball team; and (iii) his confirmation that he was not seeking "self-enrichment" when he asked Defendants to send funds to the families of the recruits.

Evidence that the Universities' coaches were aware of payments would help the defense establish the absence of any scheme to defraud. *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1180-81 (2d Cir. 1970) (the "purpose" of a wire fraud scheme "must be to injure," so where the victim received "exactly what [it] expected," there is no scheme to defraud). Likewise, evidence that the coaches believed that the Universities implicitly (or explicitly) accepted NCAA rule violations as a cost of doing business would undercut the allegation that the purpose of the alleged conspiracy was to deceive and harm the Universities. *United States v. Litvak*, 808 F.3d 160, 189-90 (2d Cir. 2015) (evidence that workplace supervisors "regularly approved of conduct identical to that with which [defendant] was charged" is admissible to introduce "reasonable doubt as to [defendant's] intent to defraud"); *United States v. Gil*, 297 F.3d 93, 102-104 (2d Cir. 2002) (evidence should have been disclosed

8

because it demonstrated that victim company "was not being run on a regular or businesslike basis" and that "senior" company officials "tolerated" rule breaking by employees).

Conversely, evidence that the coaches had no knowledge or involvement in the alleged scheme would prevent the Government from establishing that the coaches planned to submit "false" certifications regarding compliance with NCAA rules. (*Cf.* Ind. ¶¶ 29, 33) (wire fraud conspiracy was to be accomplished "by means of false and fraudulent" certifications submitted by the coaches to the Universities)).

Finally, evidence that the coaches were not seeking to enrich themselves when they allegedly asked Defendants to send funds to the three families will allow Defendants to argue to the jury, consistent with the Second Circuit's holding in *United States v. D'Amato*, that a defendant "cannot be found to intend to harm" an organization when he engages in "misleading conduct" that is "otherwise lawful" so long as he is "follow[ing] the instruction[] of an appropriate corporate agent who appears to be unconflicted and acting in good faith" rather than for "self-enrichment," *even if* it turns out that the agent's instructions could cause injury to the organization. 39 F.3d 1249, 1258, 1260 (2d Cir. 1994).

### III. THE COURT SHOULD COMPEL PROMPT DISCLOSURE OF THE REQUESTED MATERIALS.

Defendants suspect that the Government has no intention of calling Mr. Augustine, the student-athletes, their family members, or any of the Universities' coaches as trial witnesses. Accordingly, Defendants believe there is a strong possibility that they will need to ask the Court to compel the Government to immunize certain individuals. In order for the defense to prevail on a motion for "court-ordered" immunity, Defendants will need to demonstrate that the witness's "testimony will be material, exculpatory…not cumulative and…not obtainable from any other source"—a showing that the defense may be hard pressed to

9

satisfy without the Requested Materials. *United States v. Dolah*, 245 F.3d 98, 105 (2d Cir. 2001). An order compelling prompt disclosure of the Requested Materials would ensure that Defendants are not prejudiced in their ability to bring these motions.

Moreover, given that the Government is unlikely to call the aforementioned witnesses at trial, Defendants expect that the Requested Materials will not be included in the Government's Section 3500/*Jencks* Act production. Unless the Court orders disclosure, Defendants may *never* receive this exculpatory and potentially dispositive evidence. *Dominguez v. Rock*, No. 12-CV-3269 (NGG), 2016 WL 542120, at *11-12 (E.D.N.Y. Feb. 9, 2016) (Government may not "avoid disclosure of exculpatory or impeachment material simply by not calling the relevant witness to testify").

Even if the Government intends to produce the Requested Materials as part of its 3500/*Jencks* disclosures, it would not make this disclosure until shortly before trial. An order requiring the Government to promptly disclose the Requested Materials, on the other hand, would give the parties time to fully brief any motions for "court-ordered" immunity. In addition, the Court has asked the parties to submit proposed jury instructions on August 15, 2018, six weeks prior to trial. (Dkt. 108). The Requested Materials will assist Defendants in developing the specific defenses they intend to present at trial—defenses which Your Honor presumably expects to see reflected in Defendants' proposed jury instructions on August 15. *United States v. Durham*, 825 F.2d 716, 718 (2d Cir. 1987) (recognizing "a criminal defendant's right to a charge which reflects the defense theory"). If the Government's FBI 302 reports or other documentation of exculpatory witness statements are not disclosed until shortly before trial, drafting precise jury instructions will be more challenging. For these reasons, an order compelling prompt disclosure of the Requested Materials is warranted in the interests of justice.

## CONCLUSION

This Court should issue an order directing the Government to promptly produce to Defendants witness statements, as reflected in the Government's FBI 302 reports or in notes taken by the Government during interviews, from:

(1) Brad Augustine, regarding (i) his claim ███████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ████████████

(2) ████████████████████████████ or their family members, regarding (i) their lack of knowledge of improper benefits; and (ii) their lack of involvement in the charged conspiracy.

(3) Any basketball coach currently or formerly employed by the Universities, regarding (i) his participation in, and/or knowledge of, any plan to make payments to ████ ████████████████████████ and/or their families, or his lack of such participation or knowledge; (ii) his belief that the Universities considered NCAA rule violations to be an intrinsic aspect of maintaining a competitive men's basketball team; and (iii) his confirmation that he was not seeking "self-enrichment" when he asked Defendants to send funds to the families of the recruits.

11

Dated: New York, New York
April 5, 2018

| **NEXSEN PRUET LLC** | **WILLKIE FARR & GALLAGHER LLP** |
|---|---|

By: /s/ William W. Willkins
William W. Wilkins
Mark C. Moore
Andrew A. Mathias
55 E. Camperdown Way, Suite 400
Greenville, South Carolina 29601
(864) 370-2211
*Attorneys for Defendant Merl Code*

**HANEY LAW GROUP PLLC**

By: /s/ Steven A. Haney
Steven A. Haney
3000 Town Center Drive, Suite 2570
Southfield, Michigan 48075
(248) 414-1470
*Attorneys for Defendant Christian Dawkins*

By: /s/ Michael S. Schachter
Michael S. Schachter
Casey E. Donnelly
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

**ANGELI LAW GROUP LLC**
David Angeli
121 SW Morrison Street, Suite 400
Portland, Oregon 97204
(503) 222-1552
*Attorneys for Defendant James Gatto*