```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/5/2018
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
UNITED STATES OF AMERICA,

           -against-                                   17-cr-0686 (LAK)

JAMES GATTO, a/k/a "Jim,"
MERL CODE, and
CHRISTIAN DAWKINS

                        Defendants.
------------------------------------------x

## MEMORANDUM OPINION
## (REDACTED)

Appearances:

        Aline R. Flodr
        Edward B. Diskant
        Noah David Solowiejczyk
        Robert Lee Boone
        Eli Jacob Mark
        Assistant United States Attorneys
        ROBERT KHUZAMI
        ACTING UNITED STATES ATTORNEY

        Michael Steven Schachter
        Casey Ellen Donnelly
        WILLKIE FARR & GALLAGHER LLP

        David Angeli
        ANGELI LAW GROUP LLC

        *Attorneys for Defendant James Gatto*

Andrew A. Mathias
William W. Wilkins
Mark C. Moore
NEXSEN PRUET, LLC

James Lawrence Bernard
Joel Cohen
STROOCK & STROOCK & LAVAN LLP

*Attorneys for Defendant Merl Code*


Jennifer L. Brown
FEDERAL DEFENDERS OF NEW YORK INC.

Steven A. Haney, Sr.
HANEY LAW GROUP PLLC

*Attorneys for Defendant Christian Dawkins*

LEWIS A. KAPLAN, *District Judge*.

This matter is before the Court on defendants' joint motion to compel the government to produce documents concerning ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓ [DI 73].

*Background*

Defendants – individuals currently or previously associated with "Company-1," a multi-national athletic attire manufacturer and designer, and an aspiring business manager for professional athletes – have been charged with conspiracy to commit wire fraud and substantive wire fraud. The charges relate to an alleged scheme to pay bribes to certain high school basketball players bound for NCAA Division I universities and/or their families in exchange for commitments by the

3

students to matriculate at specific universities and then retain defendant Dawkins' services and sign with Company-1 upon turning professional.

As part of its investigation of defendants, the FBI conducted an operation in Las Vegas in July 2017. On September 25, 2017[1] and December 19, 2017,[2] the government disclosed ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████[3] The government disclosed also that the ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████[4]

████████ *n Investigation of Defendants as Described in Criminal Complaint*

The government acknowledged in its letter on September 25, 2017 that ██████████████████ to the special agent who attested to the criminal complaint filed against defendants, but nonetheless contended that ██████████████████████████████ did not affect

---

[1] Gov't Letter of September 25, 2017.

[2] Gov't Letter of December 19, 2017.

[3] *Id.* at 1.

[4] *Id.*


the accuracy of the complaint, which "almost exclusively rel[ied] on recorded conversations that the affiant [on the complaint] . . . personally reviewed."[5] In the circumstances, it therefore is helpful as an initial matter to walk through ▮▮▮▮ involvement in the investigation as understood from the criminal complaint.[6]

The complaint alleges numerous instances in which defendants allegedly bribed, or conspired to bribe, certain student athletes. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

In the first, defendants Dawkins and Code allegedly conspired to funnel approximately $100,000 from Company-1 to the family of a high school basketball player who had not yet committed to a particular university. The $100,000 payment was to be made to the family indirectly through a third-party in four installments. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, fronted the initial $25,000 installment to the family in early July 2017.[7]

In the second, ▮▮▮▮▮▮▮▮▮▮ in several Las Vegas meetings with college and high school basketball coaches from July 27-29, 2017.[8] One such meeting took place on July 27,

---

[5] Gov't Letter of September 25, 2017 at 1.

[6] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is not mentioned in the criminal complaint.

[7] DI 1 at ¶¶ 30-34.

[8] Defs' Br. at 3.

5

2017 and involved defendant Dawkins, Brad Augustine,[9] Jordan Fair,[10] ███████[11] and ███████[12] The signer of the criminal complaint stated, based on his review of recordings of the meeting ███████████████████████, that the group made arrangements at that meeting to fund a second student athlete through Augustine's organization. To that end, ███████ gave Augustine $12,700 in cash.[13]

Finally, in June 2017, "█████████████████████████████████████████████████████████████████████████████████" to Dawkins to act as another financial backer.[14]

*Defendants' Discovery Requests*

Following the government's initial disclosures, defendants requested discovery of any

---

[9] Initially named as a defendant in this case, Brad Augustine was, according to the criminal complaint, the program director for an amateur, high school basketball team sponsored by Company-1 that participated in the "AAU," an amateur basketball league. DI 1 at ¶ 21.

[10] Jordan Fair was an assistant basketball coach at the University of Louisville. Defs' Br. at 3. Mr. Fair is referred to as "Coach-1" in the criminal complaint. DI 1 at ¶ 36

[11] ███████████████████████████████. Defs' Br. at 3. ███████████ is referred to as "CW-1" in the criminal complaint. DI 1 at ¶ 36.

[12] *Id.*; *see also* DI 137 (S1) at ¶ 37.

[13] DI 1 at ¶ 36(a)-(c).

Defendants state also that "[r]ecordings that the Government has provided Defendants of the July 27 Meeting . . . indicate that █████████████████████████████████████████████████" Defs' Br. at 4.

Both the original and superseding indictments refer to the July 27 meeting in Las Vegas, but neither mentions █████████████████████████.

[14] DI 1 at ¶ 38.

6

and all documents and communications:

1. "[C]oncerning the role in the investigation of ███████ ███████████, including, but not limited to the dates that each were assigned, any responsibilities held, and what decisions, if any, concerning the investigation were made by, or in consultation with, ███████████ ██████;"

2. ███████████████████████████████████████████████████
███████████████████████████████████████████████████
███

3. ███████████████████████████████████████████████████
███████████████████████████████████

4. ███████████████████████████████████████████████████
███████████████████████████████████████████████

5. ███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████

6. ███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████

7. ███████████████████████████████████████████████████
███████████████████████████████████████████[15]

*The Government's Response*

The government responded that although it "[took] seriously [its] disclosure obligations, including those arising under Rule 16, *Brady* and its progeny, and *Giglio* and its progeny, and [intended] to comply fully with those obligations,"[16] it believed that it had no further

---

[15] Defs' Letter of January 8, 2018 at 4-5.

[16] Gov't Letter of January 31, 2018 at 1.

7

disclosure obligations regarding ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ at that time.[17] Nonetheless, and without conceding its obligation to do so, the government provided some additional information in response to defendants' first request, regarding the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

The government conveyed that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇"[18]

The government disclosed also that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇[19]▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇[20]▇

---

[17] *Id.* at 5.

[18] *Id.* at 6.

[19] *Id.* at 5-6.

[20] *Id.*

Finally, the government represented that it was not "███████████████████ ███████████████████████████████████████████."[21] No additional disclosures were made in respect of defendants' remaining requests. Rather, the government maintained that any material encompassed in defendants' second through seventh requests would be discoverable only as *Giglio* or 3500 material should ███████ testify at trial.

*Defendants' Motion*

Disagreeing with the government's assessment of its discovery request, defendants asked the Court to compel additional disclosure or, in the alternative, conduct an *in camera* review, of the requested materials on two independent bases: *Brady v. Maryland*[22] and Federal Rule of Criminal Procedure 16.

In an order dated June 28, 2018, this Court directed the government to produce the following documents for *in camera* inspection:

1. Documents which are or reflect the substance of communications ███████ █████████████ to any affiant on any application made in connection with this case, including any wiretap or search warrant application, prior to the filing of such application with respect to any facts concerning the subject of any assertion made by the affiant in such application, and

2. Documents sufficient to show the nature and basis of the ███████ █████████████████████████.

The government made the requisite production, which the Court has reviewed *in camera*. The Court

---

21
   *Id.* at 5.

22
   373 U.S. 83 (1963).

now considers whether any further disclosure to defendants is warranted.

*Discussion*

*Legal Standard*

Both *Brady v. Maryland* and Rule 16 speak to the government's disclosure obligations in advance of trial.

Under *Brady*, "the [g]overnment has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment."[23] "Favorable evidence includes not only evidence that tends to exculpate the accused, but also evidence that is useful to impeach the credibility of a government witness."[24] Before a defendant can prevail on a claim that the government violated its obligations under *Brady*, however, the defendant must show that the defendant was prejudiced by the government's failure to disclose.[25] Accordingly, "[a]lthough the government's obligations under *Brady* may be thought of as a constitutional duty arising before or during the trial of a defendant, the scope of the government's constitutional duty – and, concomitantly, the scope of a defendant's constitutional right – is ultimately defined retrospectively, by reference to the likely effect that the suppression of particular evidence had on the outcome of the trial."[26]

---

[23] *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001) (citing *Brady*, 373 U.S. at 87).

[24] *Id.* (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972)).

[25] *United States v. Stein*, 424 F. Supp. 2d 720, 725-27 (S.D.N.Y. 2006).

[26] *Coppa*, 267 F.3d at 140 (citations omitted).

10

Rule 16(a)(1)(E)(i) provides that "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph . . . papers, documents, data . . . or copies or portions of any of these items, if the item is within the government's possession, custody, or control and . . . the item is material to preparing the defense."[27] The Second Circuit has said:

> "Evidence is material if it 'could be used to counter the government's case or to bolster a defense.' *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993). 'An appellate court, in assessing the materiality of withheld information, considers not only the logical relationship between the information and the issues in the case, but also the importance of the information in light of the evidence as a whole.' *Id.* To justify a new trial, there 'must be some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor.' *Id.* (internal quotation marks omitted)."[28]

Additionally, this Court has stated, in *United States v. Stein*, that:

> "The 'materiality standard [of Rule 16] normally is not a heavy burden; rather, evidence is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.'[29] 'Evidence that the government does not intend to use in its case in chief is material if it could be used to counter the government's case or to bolster a defense.'[30] 'There must be some indication that the pretrial disclosure of the disputed evidence would . . . enable[ ] the defendant significantly to alter the quantum of proof in his favor.'"[31][32]

---

[27] Fed. R. Crim. P. 16(a)(1)(E)(i).

[28] *United States v. Ulbricht*, 858 F.3d 71, 109 (2d Cir. 2017).

[29] *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (internal quotations marks and citations omitted).

[30] *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993).

[31] *United States v. Maniktala*, 934 F.2d 25, 28 (2d Cir. 1991) (quoting *United States v. Ross*, 511 F.2d 757, 762-63 (5th Cir.) (citations omitted), *cert. denied*, 423 U.S. 836 (1975)).

[32] *United States v. Stein*, 488 F. Supp. 2d 350, 356-57 (S.D.N.Y. 2007).

With regard to discovery concerning ███████████████████ ████████, courts generally focus on whether the ██████ credibility will be in issue at trial,[33] which on occasion has been said to be the case even in the absence of testimony by ████████.[34] "[I]t is well established that where 'there is a question as to the relevance or materiality of a given group of documents,' the government may submit the documents to the court for the judge's independent *in camera* review."[35]

---

33 ████████████████████████████████████████████████████████████████

34 ████████████████████████████████████████████████████████████████

35 ████████████████████████████████████████████████████████████████

*Analysis*

Defendants argue that the materials they request would bear directly on the credibility of the government's evidence and the reliability of the investigation regardless of whether [redacted] testifies at trial. They rely on the nature of [redacted]. They argue also that the requested documents might undermine the thoroughness of the Las Vegas operation and the reliability of the evidence that the agents obtained during that operation.

Brady v. Maryland

Defendants' arguments in respect of *Brady v. Maryland* are unavailing. The government has represented that "[redacted] did not affect the accuracy or the integrity of any parts of the investigation [redacted]] were involved in, which almost exclusively were recorded."[36] Moreover, the government has stated that it has complied, and will continue to comply, with its obligations under *Brady* and that it has "informed defense counsel that should either agent testify at trial, the Government will make a more fulsome production of *Giglio* material closer to trial."[37] The Court has no reason to doubt these representations. Nor have defendants shown that they would be prejudiced by the government's non-disclosure.

---

[36] Gov't Br. at 66.

[37] *Id.*

The two district court cases defendants cite are inapposite and, in any event, unpersuasive on the facts of this matter. In ▮▮▮▮▮[38] the trial court granted the defendant a new trial on the ground that the government had failed to disclose that ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮ had given significant uncorroborated testimony against the defendant during trial that established the defendant's connection to a vehicle in which drugs and a firearm had been found, provided expertise on record keeping practices among narcotics dealers, and conveyed that nearly $5,000 in cash had been recovered ▮▮▮▮▮ defendant's bedroom.[39] Finding that the ▮▮▮▮▮ "often uncorroborated testimony [had been] critical to ▮▮▮▮▮ conviction," the court concluded that there was a "reasonable probability that the outcome of [the defendant's] trial would have been different had the information concerning [▮▮▮▮▮] credibility and character been disclosed or had the evidence offered solely through [▮▮▮▮▮] been excluded."[40]

There are at least three important differences between ▮▮▮▮▮ and this case. First, the credibility of the ▮▮▮▮▮ was critical to the government's case against the defendant because ▮▮▮▮▮ had given significant uncorroborated testimony at trial. The government here, in contrast, has not yet indicated ▮▮▮▮▮ will testify at trial. Second, the posture in ▮▮▮▮▮–

---

38 ▮▮▮▮▮

39 Id. at 324-25.

40 Id. at 324.

that is, a post-trial motion – permitted the court there to consider whether the defendant had been prejudiced by the government's non-disclosure. This Court is in no position to render such a judgment at this time. And, finally, the government here disclosed the existence of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, whereas the government concealed the existence ▮▮▮▮▮▮▮▮▮▮. Accordingly, ▮▮▮▮ does not warrant further disclosure by the government at this time.

In ▮▮▮▮▮▮▮▮▮▮,[41] the court considered a mid-trial request that the government disclose its file on alleged narcotics trafficking by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The court, purportedly under *Brady*, granted limited disclosure of documents on one of the ▮▮▮▮▮ because the government had "made [▮▮▮▮▮▮▮] credibility an issue by relying heavily, during opening arguments, upon his conduct to the Government's case."[42]

▮▮▮▮▮ is not persuasive here for several reasons. First, as the Second Circuit made clear in *Coppa*, filed eight years after ▮▮▮▮▮, a defendant arguing that the government has violated *Brady* must show that the defendant was prejudiced by the government's failure to disclose *Brady* material, a showing that can be made only after trial.[43] Second, the court in ▮▮▮▮▮ felt it appropriate to compel limited disclosure after the government's opening statement asserted that the evidence

---

41 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

42 *Id.* at 1085.

43 Although *Coppa* left to judicial discretion whether to compel pretrial disclosure on the basis of sound case management, 267 F.3d at 146; *see also Stein*, 424 F. Supp. 2d at 726-27, no such argument has been made with respect to the materials requested here.

would show that the ▆▆▆▆▆▆▆▆▆▆▆, had purchased drugs from defendants on several occasions and obtained one defendant's phone number following which the government obtained a court order to intercept communications to and from that phone.[44] As the court said, "[t]he clear import of the Government's opening statement, made to this Court and the jury after [▆▆▆▆▆] arrest, was that [▆▆▆▆▆] was a reliable, credible witness who would be providing significant testimony at trial."[45] Moreover, "[t]he opening statement . . . outlined the pivotal role ▆▆▆▆▆] played in providing the foundation for the wiretap applications and penetrating [defendants' drug] organization."[46] This case, at least at this stage, stands on very different footing. It is not yet known whether ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ will testify at trial and the government has given no indication that it otherwise plans to rely on the credibility of ▆▆▆▆▆. The Court therefore concludes that the circumstances do not warrant compelling further disclosure at this time on the basis of *Brady*.

*Fed. R. Crim. P. 16*

The Court next considers whether the requested information in the "possession, custody, or control" of the government is "material to preparing the defense."

With respect to ▆▆▆▆▆ the government has represented that all of the ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆, including those during his time in Las Vegas, were recorded and the recordings

---

[44] ▆▆▆▆▆▆▆▆▆▆▆

[45] *Id.*

[46] *Id.*

produced to defendants. There is no indication that any of the affiants on any of the government's applications in this case relied on unrecorded statements made by █████during his time in Las Vegas or otherwise. And defendants have not articulated any theory upon which the recordings themselves might be challenged on the basis of █████████████████.

Defendants suggest that████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████ ██████[47] But these theories are entirely speculative and, at least in some cases, of questionable relevance. As the government argues, "the [July 27] meeting . . . was recorded, and the defendants have a copy of the recording, which speaks for itself and which can be offered into evidence through any agent who participated in the creation of the recording, or any participant in the meeting."[48] Moreover, to the extent defendants want to question the meaning or reliability of statements recorded during the July 27 meeting on the theory that the speaker was under the influence of alcohol, they can do so on the basis of the recordings themselves, which, according to defendants, "suggest[] a strong possibility" that alcohol was present during the meeting.[49] Finally,

---

[47] Defs' Br. at 11-12.

[48] Gov't Br. at 68; *see also id.* ("That the ██████████occurred in Las Vegas around the time of this recorded meeting does not render the recording of the events of the meeting less reliable.").

[49] Defs' Br. at 12.

the Court's *in camera* review of the documents related to the nature of ▮▮▮▮▮, which the government has indicated arose "▮▮▮▮▮" to the ▮▮▮▮▮,[50] lend no credence to these theories.

The other circumstances with respect to ▮▮▮▮▮ stand on somewhat different footing because the government has acknowledged that applications relevant to this case may have relied in part on discussions with ▮▮▮▮▮. Accordingly, the Court required the government to produce for *in camera* review the documents described above. It did so on the theory that any statements by ▮▮▮▮▮ upon which the government relied in making an application to gather evidence might be subject to challenge if the alleged misconduct spoke to ▮▮▮▮▮ character for truthfulness.

Upon review of the documents, the Court is satisfied that the documents defendants seek are not material to the defense, at least in the present posture of this case, and that there consequently is no basis at this time under Rule 16 for further disclosure. The Court's full analysis as to the materiality of the documents is set forth in a supplemental opinion filed under seal on terms that do not permit access by anyone other than counsel for the government. For purposes of this opinion, it suffices to say that the Court is not persuaded that there is sufficient indication that the requested discovery would "enable[] the defendant[s] significantly to alter the quantum of proof in [their] favor."[51]

---

[50] Gov't Letter of December 19, 2017 at 1.

[51] *Ulbricht*, 858 F.3d at 109 (internal quotation marks and citations omitted).

*Conclusion*

For the foregoing reasons, defendants' motion [DI 73] is denied without prejudice to renewal in the event ██████████████████████ will testify at trial.

SO ORDERED.

Dated: September 5, 2018

_____
Lewis A. Kaplan
United States District Judge