FOIA Confidential Treatment Requested



Copy __1__ of 2 Copies

# EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT is effective as of July 1, 2017 by and between Kansas Athletics, Inc. (Athletics), and Kurtis Townsend ("Assistant Coach").

WHEREAS, Athletics operates the intercollegiate Athletics programs of the University of Kansas ("KU"), subject to the direction and control of the Chancellor of the University of Kansas; and

WHEREAS, Assistant Coach wishes to serve, and Athletics desires that Assistant Coach should serve, as an assistant coach for the KU intercollegiate men's basketball program; and

NOW, THEREFORE, in consideration of the mutual representations, agreements, and promises herein contained, the parties hereto agree as follows:

## 1. Employment

Athletics hereby employs Assistant Coach to perform such duties and services on behalf of Athletics as may, from time to time, be required of him as an assistant basketball coach.

## 2. Term

This Agreement shall be for a term beginning July 1, 2017 and ending March 31, 2022, unless earlier terminated as set forth herein.

## 3. Salary and Professional Services

A. For all services to be performed by Assistant Coach in his capacity as assistant basketball coach, Athletics shall pay Assistant Coach an amount equal to $500,000 per annum, payable in twelve (12) equal monthly installments on the last day of each month; $230,000 of this amount shall be paid as his salary (the "Salary").

B. Athletics shall pay to Assistant Coach for professional services rendered (the "Professional Services") an income of not less than $270,000 per annum, payable in equal monthly installments on the last day of each month through the term of this Agreement. Duties under this section may include educational, public relations, and promotional duties as assigned by the Director.

C. The payments to Assistant Coach for Professional Services described in this Section 3 are contingent upon Assistant Coach's participation and cooperation performing said duties as described in Sections 4 (E)(ii) and 3 (B).

- D. In the event that Assistant Coach's employment is terminated pursuant to Sections 10, 11 or 12 of this Agreement, Assistant Coach shall be entitled to payment under this Section 3 up to the date of termination only.
- E. Athletics possesses the sole and exclusive ownership rights to all media rights in University of Kansas basketball, including but not limited to radio, television, internet or any other medium whatsoever whether now existing or developed in the future ("programs"). Assistant Coach acknowledges and agrees that Athletics may use his name, picture, image, likeness, and voice in connection with such programs or endorsements and in all other respects for purposes consistent with his employment.

## 4. Performance

Assistant Coach agrees to serve as an assistant basketball coach, for the term of this Agreement and to devote his full time and attention and give his best efforts and skill exclusively to the duties required of him in this position. During the term of this Agreement, Assistant Coach shall report to and be under the immediate supervision of Athletics' Head Men's Basketball Coach, who reports to the Director of Intercollegiate Athletics (the "Director") or his designee. Without limiting the generality of this Section 4, Assistant Coach's duties and responsibilities as an assistant coach shall include, but not be limited to, the following:

- A. The competent and diligent performance of all reasonable duties as may be required by the Head Coach in connection with the supervision and administration of the basketball program; and
- B. The compliance, by Assistant Coach as well as by all other persons under his supervision, including assistants and student-athletes, with the rules and regulations of the National Collegiate Athletic Association ("NCAA"), the Big 12 Conference or any successor conference (both referred to herein as the "Big 12"), Athletics' Policies and Procedures Manual, the University of Kansas Handbook for Faculty and Other Unclassified Professional Staff, and such rules and regulations concerning intercollegiate athletics, Athletics personnel, and student athletes as may from time to time be promulgated by KU and Athletics; and
- C. The competent and diligent performance of all required tasks and activities of, and adherence to all standards, rules, and regulations established by Athletics' Policies and Procedures Manual, and as such document may be amended from time to time. Coach hereby acknowledges that he has been informed that a complete copy of Athletics' Policies and Procedures Manual is available at www.kuathletics.com.
- D. Cooperating fully with any Athletics, KU, Big 12, or NCAA compliance investigation.
- E. In addition to the duties and responsibilities outlined above, Assistant Coach does promise and agree as follows:

2

FOIA Confidential Treatment Requested

      i. to represent KU and Athletics positively in public and private forums and to refrain from engaging in conduct that reflects adversely on or disparages KU and Athletics.

     ii. to participate in fundraising, promotional, or educational activities on behalf of Athletics, and to avoid any business or professional activities or pursuits that will conflict with the performance of his duties under this Agreement.

    iii. to provide Head Coach with written notice prior to engaging in discussions or negotiations for prospective employment with any other institution of higher learning or with any professional athletic team.

## 5. NCAA Violations

A. Assistant Coach agrees that if he is found by KU, Athletics, the Big 12, or the NCAA to be involved in a significant or repetitive violation or intentional violation or a pattern of conduct which may constitute or lead to Level I or Level II violations of NCAA regulations, whether while employed at KU or during prior employment at another NCAA member institution, he may be suspended without pay and/or terminated for cause, as set forth in Section 10 below. Additionally, if Assistant Coach knew or should have known of significant or repetitive violations or intentional violations of NCAA regulations and he fails to promptly report it to the Director and the Senior Associate Athletics Director/Compliance, he agrees that he may be suspended without pay and or terminated for cause, as set forth in Section 10 below. Should the NCAA impose any game suspension restrictions upon Assistant Coach, Assistant Coach agrees that he shall be suspended without pay for the duration of the imposed suspension.

B. If KU, Athletics, the Big 12 or the NCAA determine that Assistant Coach has violated NCAA or Big 12 regulations, or willfully knowingly permitted any other person under his direction or control to commit an NCAA or Big 12 violation or if Assistant Coach failed to report promptly or provide complete and accurate information to the Director, in addition to any remedies provided by this Agreement or at law, Assistant Coach agrees that he shall be subject to disciplinary or corrective action as set forth in the provisions of the NCAA or Big 12 enforcement procedures, as now existing or as amended from time to time. Such action by the NCAA or Big 12 shall not preclude or, in any manner, affect Athletics right to take such other corrective or disciplinary action as it deems necessary or proper, including termination for cause.

C. Assistant Coach further agrees that he shall report promptly to the Director any violations known to Assistant Coach of governing athletic rules, including NCAA and/or Big 12 rules, or Athletics or KU rules, regulations or policies by assistant coaches, student-athletes or other persons under the direct control or supervision of Assistant Coach

DOJ-KU-002344

FOIA Confidential Treatment Requested

    D.    If Assistant Coach is fined by the Big 12 or the NCAA for any violations, such penalty shall be the sole responsibility of Assistant Coach.

## 6. Athletically Related Income

Assistant Coach agrees that he shall provide to Athletics a detailed accounting in writing each year of all athletically related income and benefits from sources outside the institution, including a detailed accounting of revenues and expenses related to any camps or clinics operated by or in which he has assisted.

## 7. Other Miscellaneous Benefits

So long as Assistant Coach continues as an assistant coach of the intercollegiate men's basketball program, Athletics agrees to provide, or pay, as the case may be, the following additional benefits:

    A.    Assistant Coach shall receive the use of one (1) automobile or an automobile stipend. If an automobile is provided, Assistant Coach's use of the automobile shall be subject to the procedures outlined in the Athletics' Policies and Procedures Manual.

    B.    Athletics shall provide Assistant Coach with tickets to men's basketball games pursuant to its policy on complimentary tickets. In addition, Assistant Coach shall be entitled to receive up to four (4) tickets for all Kansas home football games.

    C.    Assistant Coach shall be eligible to participate in all medical, dental, retirement and any other fringe benefit programs available to full-time benefits eligible employees of Athletics.

    D.    Assistant Coach shall be provided a membership at a Lawrence country club. Athletics agrees to pay the monthly membership fee and all expenses that are business related and which have received prior approval pursuant to Athletics' Policy and Procedures Manual.

    E.    Assistant Coach shall receive the following amounts in any year in which the men's basketball team meets the applicable criteria:

| | |
|---|---|
| Big Twelve Regular Season Championship | 1 month additional salary |
| Team Reaches Regional Finals | 1 month additional salary |
| Team Reaches Final Four of NCAA Tournament | 1 month additional salary |
| Team wins NCAA Championship | 2 months additional salary |

The salary amount shall be calculated upon the Salary set forth in Section 3 (A) above and the monthly incentive bonuses set forth above shall be cumulative with each other. For example, if the men's basketball team, wins the Big 12 regular season championship, reaches the Final Four and then wins the NCAA championship, Assistant Coach would receive 5

DOJ-KU-002345

months additional salary. Additional incentive payments shall be at the sole discretion of the Athletics Director.

## 8. Taxability of Benefits

Assistant Coach acknowledges and agrees that some benefits described in Section 7 above may constitute taxable income, and Assistant Coach agrees he will be responsible for payment of all appropriate taxes on such income. Assistant Coach also understands and agrees that Athletics will withhold taxes based on the value of those benefits Athletics provides to Assistant Coach, as described, but not limited to, the items in Section 7 above.

## 9. Termination Without Cause

   A. Athletics shall have the right to terminate this Agreement without cause at any time upon written notice to Assistant Coach, including any change in the head coach position. In the event Athletics terminates this Agreement without cause, Assistant Coach shall be placed on administrative leave per Athletics' policies, and Athletics shall only be liable to Assistant Coach for the payment of his annual Salary, Professional Services, health insurance, and retirement benefits in effect at the date of termination, ("liquidated damages") for a period of twelve (12) months (the "payout period") after the termination without cause; no other sums or damages of any kind whatsoever (including other miscellaneous benefits set forth in Section (7)) shall be paid by Athletics to Assistant Coach.

   B. The obligation of Athletics to make the payments set forth herein shall be reduced and extinguished by and to the extent of any compensation Assistant Coach earns and actually receives from the date of termination without cause (the "offset"). Assistant Coach acknowledges a good faith duty and obligation to seek other employment and to collect sums due him in connection with such employment.

   C. In the event that Assistant Coach obtains such other employment after being terminated by Athletics without cause, it shall be the obligation of Assistant Coach to notify Athletics and provide all documentation requested by Athletics to determine the amount of compensation received by Assistant Coach and the amount of offset Athletics is due. Athletics shall have the right to review and has the sole discretion to approve any such compensation offers to determine if such compensation is commensurate and reasonable prior to its approval of any offset payments. Should Athletics determine that such compensation is not commensurate, Athletics shall be entitled to "gross up" the salary as though Assistant Coach had received a salary commensurate with others similarly situated. For example, if Assistant Coach accepts an assistant coaching position for $50,000 per year, and a salary commensurate (calculated by determining the average salary of assistant coaches) with the other similarly situated coaches on the men's basketball staff, exclusive of the head coach, is

FOIA Confidential Treatment Requested

$150,000, then Athletics would obligated to pay Assistant Coach an additional $350,000 per year through the payout period—the difference between his Athletics Salary and Professional Services and the commensurate salary for the new position.

D. The parties agree that such liquidated damages are in lieu of all other compensation and benefits owed to Assistant Coach, including annual and sick leave, otherwise owed to Assistant Coach under any and all other provisions of this Agreement; and further constitute reasonable compensation for losses that Assistant Coach will incur and are not a penalty.

## 10. Termination for Cause

A. Athletics may, for cause, terminate Assistant Coach's employment at any time upon written notice to Assistant Coach.

B. If such termination is for cause, Athletics shall be obligated to pay Assistant Coach his Salary and Professional Services up to the date of termination only. All obligations of Athletics to make further payments and/or to provide any other consideration, under this Agreement or otherwise, except to the extent already vested, shall cease immediately. Athletics shall not be liable to Assistant Coach for the loss of any amounts, collateral business opportunities, or any other benefits, perquisites or income resulting from activities such as, but not limited to camps or clinics, or from any other sources as a result of Athletics termination for cause under this Agreement. Assistant Coach shall not be entitled to receive any benefits or payments that become due after the date of termination. Assistant Coach shall be eligible to purchase continued health insurance pursuant to COBRA for the period of time specified by COBRA at the time of termination.

C. For purposes of this agreement, "cause" shall include misconduct, which is not limited to:

   i. the refusal or failure (other than the failure resulting from his incapacity due to physical or mental illness), fraud, or dishonesty of Assistant Coach in any material respect to comply with the directives of the Director or his designee or to perform the duties set forth in Section 4 above; or

   ii. serious criminal conduct, as determined by Athletics, by Assistant Coach including but not limited to any felony or any criminal conviction involving dishonesty, fraud, misappropriation, or embezzlement; or

    iii.    discreditable conduct that is inconsistent with the professional standards expected of an assistant coach of a collegiate sports team or that is seriously prejudicial to the best interests of KU or Athletics; or engaging in abusive or demeaning language or conduct to any student, including student-athletes, or employees, including employees of KU or Athletics; or be involved in conduct or activities that violate KU or Athletics' mission; or

    iv.    violations by Assistant Coach of NCAA rules and regulations, as set forth in Section 5 above: or

    v.    fraud or dishonesty in preparing, falsifying, submitting, or altering documents or records of or for the NCAA, the Big 12, Athletics, or KU; or

    vi.    commission of or participation in by Assistant Coach of any act, situation, or occurrence, or any conduct, which in Athletics or KU's judgment brings Assistant Coach and/or KU into public disrepute, embarrassment, contempt, or ridicule or any public or private comments that disparage KU or Athletics, its personnel, programs, policies and/or departments, or that cause damage to KU's reputation.

## 11.   Termination for Disability

If Assistant Coach's mental or physical incapacity precludes him from performing his duties herein and such condition shall continue for a period of more than 30 days, Athletics shall have the right, upon written notice to Assistant Coach or his legal representative, to terminate Assistant Coach's employment. Upon notification of the mental or physical incapacity, Athletics shall have the right to place Assistant Coach on administrative leave, said leave to be administered pursuant to Athletics' administrative leave policy.

## 12.   Termination by Assistant Coach

In the event Assistant Coach should terminate this Agreement, for whatever reason, Athletics shall be obligated in that event to pay Assistant Coach his Salary and Professional Services pursuant to this Agreement up to the date of termination only. Assistant Coach shall not be entitled to receive any other benefits or payments that become due after the date of termination except as expressly provided elsewhere in this Agreement. Termination by Assistant Coach may be initiated by providing the Director or Head Basketball Coach written notice of termination or resignation or by Assistant Coach accepting a position with an organization other than Kansas Athletics, Inc. or the University of Kansas.

FOIA Confidential Treatment Requested

### 13. Miscellaneous Provisions

This Agreement shall be governed by and construed in accordance with the laws of the State of Kansas. Any action brought under this Agreement shall be brought only in the District Court of Douglas County, Kansas, or the United States District Court for the District of Kansas, and each party waives the right to seek a change of venue to any courts other than those courts.

If any provision of this Agreement shall be determined to be void, invalid, unenforceable, or illegal for any reason, this Agreement shall be ineffective only to the extent of such prohibition and the validity and enforceability of all remaining provisions shall not be affected thereby.

In order to be enforceable, any amendments, modifications, or extensions to this Agreement must be in writing and signed by all parties hereto.

Waiver by any party of a breach of any provision of this Agreement shall not operate as or be construed as a waiver of any subsequent breach hereof.

This Agreement embodies the complete agreement concerning the employment of Assistant Coach by Athletics and shall, upon the effective date hereof, supersede any other oral and written agreements between the parties. The parties agree that neither of them has made any representations with respect to the subject matter of this Agreement or any representations, including the execution and delivery hereof, except as are specifically set forth herein and each of the parties hereto acknowledges that each has relied solely on his and its own judgment in entering into this Agreement with full opportunity to see advice of competent counsel.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the day and year first above written.

KANSAS ATHLETICS, INCORPORATED

By: _____
Sheahon Zenger
Title: Director of Kansas Athletics

Approved: _____
Bill Self, Head Basketball Coach

By: _____

Kurtis Townsend, Assistant Men's Basketball Coach

DOJ-KU-002349