Iamdgat1

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                        17 Cr. 686 (LAK)

5    JAMES GATTO, a/k/a "Jim,"
     MERL CODE,
6    CHRISTIAN DAWKINS,

7              Defendants.

8    ------------------------------x

9                                       October 22, 2018
                                        9:32 a.m.
10
     Before:
11                   HON. LEWIS A. KAPLAN,

12                                      District Judge
                                          and a Jury
13

14                      APPEARANCES

15   ROBERT S. KHUZAMI
          Acting United States Attorney for the
16        Southern District of New York
     BY:  EDWARD B. DISKANT
17        NOAH D. SOLOWIEJCZYK
          ALINE R. FLODR
18        ELI J. MARK
          Assistant United States Attorneys
19
     WILLKIE FARR & GALLAGHER LLP
20        Attorneys for Defendant Gatto
     BY:  MICHAEL S. SCHACHTER
21        CASEY E. DONNELLY

22

23

24

25

Iamdgat1

APPEARANCES (Cont'd)

NEXSEN PRUET LLC
        Attorneys for Defendant Code
BY:  MARK C. MOORE
            -and-
MERL F. CODE

HANEY LAW GROUP PLLC
        Attorneys for Defendant Dawkins
BY:  STEVEN A. HANEY


Also present:  SONYA JACOBS, Paralegal
               SYLVIA LEE, Paralegal
               ANTHONY CASOLA, FBI

Iamdgat1

```
 1              (Trial resumed; jury not present)
 2              THE COURT:  Good morning, everybody.
 3              ALL COUNSEL:  Good morning, your Honor.
 4              THE COURT:  Do you have anything for me before I tell
 5     you what I have for you?
 6              MR. DISKANT:  Just one thing, your Honor.  The parties
 7     are working right now on a proposed redacted version of the
 8     indictment to send back.
 9              In connection with that, I think the parties are in
10     agreement that we are going to strike reference to the
11     University of Miami from the indictment just based on the way
12     the case came in.  So we similarly ask that to the extent the
13     University of Miami is included in the charge, that the Court
14     omit it as well.  I am looking now, I'm not sure it is, but I
15     just wanted to raise that.
16              THE COURT:  Everybody agree?
17              MR. MOORE:  Yes, sir, your Honor.  We agree.  And I
18     think, after having some time to look at the government's
19     proposed redactions, I think the defense agrees to all the
20     government's proposed redactions, including the additional
21     redaction -- complete redaction of "Miami."
22              THE COURT:  Mr. Haney.
23              MR. HANEY:  Your Honor, I'm still reviewing, but I
24     would concur with Mr. Moore at this point with what he just
25     said.
```

Iamdgat1

1          THE COURT:  Well, but I need to know.

2          MR. HANEY:  Yes, your Honor.  I would agree.  Thank

3     you.

4          THE COURT:  Thank you.

5          Mr. Schachter.

6          MR. SCHACHTER:  Yes, your Honor.

7          THE COURT:  OK.  We have two notes from the panel.

8     And Andy tells me we are missing six jurors at the moment, so.

9     Juror No. 8, Ms. Suchman-Zeolla, writes as follows:

10          "If you recall during jury selection, I mentioned that

11    my son is currently applying to high schools for next year and

12    that we had a number of tours scheduled in the second half of

13    October.  I was able to make arrangements to get my son to all

14    of his tours except for one on October 23rd that is to take

15    place from 9 to 10:30.

16          "Please consider that applying to public high school

17    in New York City is unusual.  There is no zoned school for your

18    neighborhood, at least in Manhattan where we live.  You need to

19    research many schools and rank them on a list.  The schools in

20    turn rank the students, and the Department of Education then

21    makes matches.  It is extremely competitive, and in order to

22    make wise decisions for and with your child, touring the

23    schools is highly important.

24          "Please also consider that spots on tours are limited

25    and not easy to secure.  They fill up within minutes and you

Iamdgat1

1   are not allowed to make changes.  I spent a lot of time and

2   effort securing our spots on these tours at the beginning of

3   the school year and scheduled them before and after the first

4   half of October to accommodate potential jury duty service of

5   two weeks average.

6          I feel uncomfortable asking you to work around my

7   schedule.  This probably doesn't seem as important as the scope

8   and nature of this trial, but if there is any way to start

9   later in the day on October 23, I would greatly appreciate it.

10  This is a very important phase of my son's educational

11  experience.

12         "Thanks for your consideration."

13         We will mark that Court Exhibit G.

14         Then I have a letter this morning from Mr. Peterson,

15  Alternate No. 1:

16         "Dear Judge Kaplan:

17         "On Friday I became aware of the NBA plan to allow

18  selected 18 year-old elite prospects to play in the NBA

19  developmental (NBA G) league for what would have been the

20  player's freshman year.  Players could receive a salary of up

21  to $125,000 and are free to sign sponsorship agreements.

22         "I read about the plan in the Friday edition of The

23  New York Times.  Since the article was about the NBA

24  developmental league, the subject did not strike me as being

25  prejudicial to my role as a juror.  There was no mention of our

Iamdgat1

case, the defendants, the schools, or Adidas in the article.

"However, a primary purpose of the NBA plan is to reduce the problematic involvement of sneaker companies and agents with the players prior to entering college, which is clearly at issue in the case.

"Having not yet received your instructions on the law, I cannot say whether knowing of the NBA plan will influence my decisions in this case.  That being said, I do feel that the NBA plan is a better response to the underlying conditions that led to this case than whatever will be achieved by finding the defendants guilty or not guilty.

"If an objective of justice is to direct people's behaviors to that which is right, then I feel justice in this case is well served by the NBA plan.  Should it still be an option, my opinion is that best resolution to the case would be for the government and the defendants to strike a deal wherein the defendants promise to cease undisclosed activities that would put an athlete's amateur status at risk, without admitting guilt to the fraud charges.

"I fully understand that I'm just a juror (and an alternate at that), and that my opinions carry no weight with the court.  But I do feel it necessary to convey that I encountered the article, and how it has altered my perspective of the case.

"I have not discussed or in any way communicated with

Iamdgat1

1    my fellow jurors about the article or the NBA plan."

2              That will be marked Court Exhibit H.

3              The third point I want to draw to your attention to

4    before we get into this is that I've been thinking about what,

5    if anything, ought be done about the fact that the jurors were

6    told at the beginning, when we thought this case would last

7    considerably longer, that we would not sit Fridays and that we

8    would be dark next Monday, Tuesday, Wednesday.  For all I know,

9    we're going to have a verdict today and this will all be

10   academic, but I need to think about what we do if we don't have

11   a verdict by Thursday, particularly because if any change is to

12   be made in the scheduled, the jurors need to know it and we

13   need to know it fast.

14             So, counsel, put on your thinking caps.  What do you

15   folks want to do about these notes and about the schedule?

16             MR. DISKANT:  Your Honor, from the government, we have

17   no objection to starting a little bit late tomorrow to

18   accommodate Juror No. 8.  It seems like a very legitimate

19   excuse that she raised at the outset, and it seems like she

20   could probably be here by 11 or 11:30 such that the jury could

21   still get a relatively full day in.

22             With respect to Alternate No. 1, it seems like at this

23   point he could no longer be fair and impartial for any number

24   of reasons, given his stated views on issues that are outside

25   of the record, and so we would ask the Court to excuse him,

Iamdgat1

1    particularly given that there are five other alternates.

2              And with respect to scheduling, perhaps the Court

3    might inquire of the jury at this point whether they would be

4    open to sitting on Friday, if in fact we get to Friday, since

5    it does sound like the Court's schedule would not permit us to

6    sit the front half of next week.  And if the jury yes,

7    terrific, we've gotten an extra day this week, and if the jury

8    says no, then we'll pick up when they are next available.

9              THE COURT:  Mr. Schachter?

10             MR. SCHACHTER:  May we confer?

11             MR. MOORE:  Can we confer for just one moment, your

12   Honor?

13             (Pause)

14             Your Honor, let's take those in reverse.

15             With respect to scheduling, does your Honor's schedule

16   permit you to be here on Friday if they want to work on Friday?

17             THE COURT:  The short answer is I could cancel prepaid

18   tickets and try to rebook a flight over the weekend.

19             MR. DISKANT:  I apologize, your Honor.  I didn't

20   realize the Court was not available on Friday.

21             THE COURT:  No.  No.  No.  Look, I will do it.  I will

22   do it if need be if the jury is available.

23             MR. MOORE:  Because I'm hoping that it's going to be

24   academic and we are not going to need to be here.

25             THE COURT:  I, too.

Iamdgat1

1          I will certainly do it.  I will be here if I need to

2     be.

3          MR. MOORE:  The only concern that I have is if you

4     tell them now that you might be available on Friday or Monday,

5     then they may think, OK, well, we should just take a very

6     leisurely pace, etc.

7          I would prefer not to say anything to them now about

8     Friday or Monday and cross that bridge only if and when we get

9     to it.  That would be my preference, and I think I speak for

10    defense counsel on that, that we just not deal with the

11    scheduling issue and hope that we won't have to and perhaps

12    revisit that issue on Wednesday if it appears that we may have

13    to revisit the issue.

14         With respect to the jurors, we have no objection to

15    starting late tomorrow to accommodate Juror No. 7.

16         With respect to the first alternate, however, your

17    Honor has read into the record his note.  One could assume from

18    that note that he can no longer be fair and impartial, but he

19    has not said that.  So, I would request that before your Honor

20    excuse him, that your Honor would voir dire him on the issue as

21    to whether he could set aside what he read, set aside the views

22    he expressed, and be fair and impartial, if he expressed to

23    serve.  It doesn't look like he's going to be, but that is what

24    we would --

25         THE COURT:  As of 9:39, we are still short five

Iamdgat1

1    jurors.

2            MR. MOORE:  OK.  You know, my original thought when I

3    heard that No. 7 was having an issue is that we should just

4    excuse her, but now I don't think that is the case.  I think we

5    should accommodate her schedule.

6            THE COURT:  Does anybody have any reaction to my

7    saying to the jurors that they should be prepared this week to

8    stay late?

9            MR. MOORE:  I think that's a really good idea, Judge.

10           MR. DISKANT:  Fine with the government.

11           THE COURT:  OK.  All right.  Let's bring Mr. Peterson

12   to the robing room with the reporter and we'll see.  And let me

13   have his note.

14           (In the robing room)

15           THE COURT:  Come on in, Mr. Peterson.  Have a seat.

16           JUROR:  Hello, everybody.

17           THE COURT:  Thank you for your letter.  You did the

18   right thing.  I appreciate it.

19           If you wind up on the jury, can you put all of this

20   aside and decide this case according to my instructions based

21   on the evidence in this case, or is it something you don't

22   think you can do?

23           JUROR:  Well, since I haven't received the

24   instructions, I don't know for sure.  I know that this did kind

25   of change my outlook on the entire situation.  I do feel I

Iamdgat1

1    would be able to judge it just on it myself.  But on the -- you

2    know, kind of on the border of -- you know, I feel like what

3    the NBA is doing fundamentally changes the environment,

4    fundamentally changes the incentives.

5         THE COURT:  I'm not sure -- I don't really know, but

6    I'm not sure it is clear that they are doing it as opposed to

7    thinking about it.

8         JUROR:  The article seemed to indicate -- they

9    announced it, you know, it is their plan.

10        THE COURT:  You may be right.  I am frank to say, I

11   didn't read the article.

12        What is your best judgment, can you be fair and

13   impartial and decide the case according to my instructions,

14   whatever they are?

15        (Pause)

16        JUROR:  I want to say -- yes.  I mean, you know, I --

17   I have been a consultant for much of my life and I have to

18   incorporate many different thoughts.

19        THE COURT:  Counsel, any other questions you would

20   like me to put to Mr. Peterson?

21        MR. HANEY:  No, your Honor.

22        MR. MOORE:  No, your Honor.

23        THE COURT:  OK.  Thank you, Mr. Peterson.  You can go

24   back in the jury room.

25        JUROR:  OK.

Iamdgat1

1            (Juror not present)

2            THE COURT:  Anything further to be said on him?

3            MR. DISKANT:  Your Honor, I think, from the

4    government's perspective, he gave extreme equivocation on this

5    issue.  It is clear that he is a very thoughtful person, and I

6    do not doubt that he is trying his best.  But his letter lays

7    out his very fervent views on how this case should be resolved

8    in a manner that would be fundamentally inconsistent with

9    following the Court's instructions.  He spent a great deal of

10   time on this.  He was not able to unequivocally and clearly

11   state that he was going to be a fair and impartial juror and

12   that he would following your instructions.  Particularly given

13   that there are five other alternates and given the contents of

14   the letter, we think he should be excused for cause.

15           MR. MOORE:  Your Honor, I think that he answered your

16   question twice.  I agree with Mr. Diskant that he is

17   thoughtful, and so he thought about his answers when he was

18   answering your Honor's questions.  And he said on both

19   occasions that he could put aside his views and be fair and

20   impartial.  He said, at the end, that he had been a consultant

21   for a long time, he had to deal with various conflicting views,

22   and he understands that his role as a juror is to follow your

23   Honor's instructions.

24           I respectfully request that your Honor deny the motion

25   to strike him for cause.

Iamdgat1

1          THE COURT:  Denied, Mr. Diskant.  I mean, I paid close

2    attention to him and to the letter, and I accept what he said.

3          MR. DISKANT:  Your Honor, may I make one follow-up

4    request for the Court's consideration?

5          I believe what he said both in the letter and the

6    first time your Honor put the question to him was that he

7    hadn't yet been instructed.  And so should we get to a

8    situation in which this juror does need to be seated, we would

9    ask that the Court reinquire, having been instructed, of the

10   juror whether he is able to follow your instructions.

11         MR. MOORE:  I have no objection to that, your Honor.

12         MR. HANEY:  Fair.

13         THE COURT:  I think that is a good suggestion, a fair

14   suggestion.

15         OK.  That's that.

16         OK.  I think we in waiting mode.

17         THE CLERK:  We are missing three as of the moment.

18         (Discussion off the record)

19         (Continued on next page)

20

21

22

23

24

25

Iamdgat1

```
1              (In open court)
2              THE COURT:  OK.  We have a jury.
3              THE CLERK:  Jury entering.
4              (Jury present)
5              THE CLERK:  The Court is about to charge the jury.
6    All spectators must either remain seated throughout the
7    duration of the charge or leave at this time.
8              THE COURT:  OK.  Good morning, everyone.
9              The jurors are all present.  Defendants are all
10   present.
11             A couple of housekeeping things before I start giving
12   you my instructions.
13             Can I have that other note?  Here it is.  Never mind.
14             Ms. Suchman-Zeolla, am I pronouncing that right?  OK.
15   We'll start late tomorrow to let you make that school
16   interview.
17             How early do you think you can get here?
18             JUROR:  11:15.
19             THE COURT:  OK.  So, members of the jury, if we don't
20   have a result today, we'll start tomorrow at 11:15.
21             Now, we are also dealing with the schedule going
22   forward, and in order to give you the maximum opportunity to
23   resolve the matter before we have indicated we'll have a break,
24   the plan will be to ask you to stay late, if you need the time,
25   tomorrow, Wednesday and Thursday.  You will be provided with
```

Iamdgat1                         Charge

1    lunch and dinner once you start deliberating, and by "late" I

2    mean approximately 8 or 8:30.  We also have the ability to set

3    up car services to get you home or at least close to home, and

4    we will do that in light of the late hours.

5                So, if that's a serious problem for anybody, I need to

6    know it today.  It all may be academic.  I'm not by indicating

7    that suggesting anything about how long you should or shouldn't

8    deliberate, that's totally up to you, but I'm just looking at

9    the calendar and we've consulted with counsel.

10               OK.  We are all set.

11               Be aware, it is hard for me to sit still for two hours

12   and read constantly so I periodically may stand up and speak to

13   you standing up.  It doesn't mean anything except I'm restless.

14               (Continued on next page)

15

16

17

18

19

20

21

22

23

24

25

CHARGE

THE COURT:  OK.  You folks are about to perform your final function as jurors.  My instructions to you are in four parts.  First, I am going to describe the law to be applied to the facts as you find the facts to have been established by the proof; second, I will instruct you about the trial process; third, I will speak to you concerning your evaluation of evidence; and, finally, I'll speak to you about the conduct of your deliberations.

You are welcome to take notes.  I alert you also, however, that you will all have typewritten copies of these instructions in the jury room.

The defendants, James Gatto, Merl Code, and Christian Dawkins, are formally charged in what's called an indictment. An indictment is merely an accusation.  It's not evidence. It's not proof of anybody's guilt.  It doesn't create any presumption.  It doesn't permit any inference that the defendants are guilty.

Each count in the indictment charges a different crime.  You must consider each count separately and return a separate verdict of guilty or not guilty for each defendant on each count in which the defendant is charged.  Whether you find a defendant guilty or not guilty as to one offense should not affect your verdict as to the other offenses.  Similarly, whether you find one defendant guilty or not guilty to one of

Iamdgat1                          Charge

1    the charges should not affect your verdict as to the other

2    defendants charged with the same offense.

3            There are three counts in this indictment.  Count One

4    charges all three defendants with participating in a conspiracy

5    to commit mail fraud.  Count Two charges all the defendants

6    with wire fraud in connection with an alleged scheme to defraud

7    the University of Louisville.  Count Three charges James Gatto

8    with wire fraud in connection with an alleged scheme to defraud

9    the University of Kansas.

10           My law clerk, Rachel, hands me a note saying I said

11   "mail fraud" instead of "wire fraud."  I do it again.  Anytime

12   I say mail fraud, it is a mistake.  It is wire fraud.  The two

13   statutes are substantially identical except one involves

14   telephones and wires, one involves mail, and we probably try

15   more mail frauds than wire frauds.  What can I say?  It is a

16   habit.

17           With any criminal charge, there are certain basic

18   facts that the government must prove beyond a reasonable doubt

19   before a defendant may be found guilty.  Those basic, necessary

20   facts are called the essential elements of the charge.

21           The defendants have pleaded not guilty to the charges

22   in the indictment.  The burden is on the prosecution to prove

23   guilt beyond a reasonable doubt.  That burden never shifts to

24   the defendants.

25           The law presumes each of the defendants to be innocent

of the charges against him.  I therefore instruct you that each

defendant is presumed innocent throughout your deliberations

until such time, if ever, that you as a jury are satisfied that

the government has proved that defendant guilty beyond a

reasonable doubt.  If the government does not sustain its

burden on one or more counts, you must find the defendant not

guilty on that count or counts.

I have said that the government must prove the

defendant guilty beyond a reasonable doubt -- each defendant,

of course.  A reasonable doubt is a doubt based on reason and

common sense.  It is a doubt that a reasonable person would

have after carefully weighing all the evidence, or lack of

evidence.  It is a doubt that would cause a reasonable person

to hesitate to act in a matter of importance in his or her own

personal life.  Proof beyond a reasonable doubt, therefore, is

proof of such a convincing character that a reasonable person

would not hesitate to rely and act upon it in the most

important of his or her own affairs.

If, after fair and impartial consideration of all the

evidence, you have a reasonable doubt about a defendant's guilt

with respect to a charge in the indictment, it is your duty to

acquit the defendant on that charge.  On the other hand, if

after fair and impartial consideration of all the evidence or

lack of evidence, you are satisfied of a defendant's guilt on a

particular charge beyond a reasonable doubt, you should vote to

1    convict on that charge.

2              Let me turn to the indictment.

3              As I have told you, Count One of the indictment

4    charges the defendants with the crime of conspiracy.  The other

5    two counts charge what we call substantive crimes.

6              As I explained to you a couple of weeks ago now, a

7    conspiracy is a little different from a substantive count.  A

8    conspiracy charge, generally speaking, alleges that two or more

9    persons agreed together to accomplish some unlawful objective.

10   The focus of a conspiracy count, therefore, is on whether there

11   was an unlawful agreement.  A substantive count, on the other

12   hand, charges a defendant with the actual commission, or with

13   causing someone else to engage in certain actions necessary for

14   the actual commission, of an offense.  A substantive offense

15   therefore can be committed by a single person.  It need not

16   involve any agreement with anyone else.

17             A conspiracy to commit a crime is an entirely separate

18   and different offense from a substantive crime, the commission

19   of which may be an objective of a conspiracy.  And since the

20   essence of the crime of conspiracy is an agreement or an

21   understanding to commit a crime, it doesn't matter if the

22   crime, the commission of which was the objective of the

23   conspiracy, ever was actually committed.  In other words, if a

24   conspiracy exists and certain other requirements are met, the

25   conspiracy is punishable as a crime even if its purpose is not

Iamdgat1                         Charge

established or accomplished.  Consequently, in a conspiracy

charge, there is no need to prove that the crime or crimes that

were the objective or objectives of the conspiracy actually

were committed.

          By contrast, conviction on a substantive count

requires proof that the crime charged actually was committed or

attempted, but it does not require proof of an agreement.

          With respect to the substantive counts, you should be

aware also that there are three alternative theories on the

basis of which you may find a defendant guilty.  While I am

going to explain these three theories in more detail, I want to

take a very brief moment to outline them briefly.

          The government's first theory is that one or more of

the defendants committed a substantive crime charged in the

indictment.  The second theory is that one or more of the

defendants, with criminal intent, willfully caused someone else

to engage in certain actions that resulted in the commission of

a substantive crime charged in the indictment.  I am going to

refer to both of those two theories that I just outlined for

you as involving a claim that a defendant is guilty of a crime

as a principal.

          The third theory is that someone other than a

defendant charged in the indictment with a particular

substantive crime committed that crime and the defendant you

are considering aided and abetted the commission of that crime.

Iamdgat1                        Charge

I will refer to that theory as a claim that the defendant is
guilty of a crime as an aider and abettor.

Now, for the sake of convenience, in organizing my
instructions to you, I'm going to instruct you first with
respect to the two counts that charge substantive crimes,
Counts Two and Three.  I'll instruct you initially on the first
two theories of liability, namely, that the defendants are
guilty as principals of the substantive crimes charged in the
indictment (as the counts apply to each defendant) either
because they themselves committed the substantive crimes or
because they, with criminal intent, caused someone else to
commit the substantive crimes.  I then will instruct you on the
third theory of liability -- that is, the alternative theory
that the defendants are guilty as aiders and abettors.
Finally, I will instruct you on the conspiracy count.

Now, as I instructed you at the beginning of this
trial, certain of the conduct at issue here allegedly violated
rules of the NCAA, including rules on amateurism.  So, you have
heard testimony and were shown exhibits regarding NCAA rules,
and you in fact have the whole NCAA Division I manual in
evidence.

Now, the purpose of this trial is not to determine
whether the NCAA amateurism and recruiting rules are good or
bad.  During your deliberations, you must apply my instructions
on the law to the facts that you find the government has proved

Iamdgat1                    Charge

beyond a reasonable doubt.  Any views or opinions you might

have about the wisdom or the fairness of any NCAA rules have no

bearing on this case whatsoever and should not be considered by

you in any respect during your deliberations.  You should

disregard also any arguments made by the lawyers about the

wisdom or fairness of those rules.

          In addition, I instruct you that a violation of an

NCAA rule, by itself, is not a violation of the law.  This

case, however, is not about whether violations of NCAA rules

occurred.  There is no dispute that NCAA rules were violated.

Rather, this case essentially is about whether the universities

that are alleged to have been victims or intended victims of

the crimes that are charged in the indictment were fraudulently

misled about whether violations of NCAA rules had occurred.  I

will give you more detailed instructions on this point in a

moment, which you will follow in all respects.

          Now, let me make one final point before I begin my

specific instructions on the counts charged in the indictment.

Each of the alleged victims and intended victims of the crimes

charged in the indictment is a university.  Universities, of

course, are not human beings.  They can think or act only

through their agents -- that is to say, their officers, their

employees, and their other authorized representatives.  So, the

knowledge, the intentions, the statements, and the actions of a

university officer, employee, or other representative -- and

Iamdgat1                           Charge

1    that includes basketball coaches -- are considered to be those

2    of the university to the extent, but only to the extent, that

3    the officer, employee, or other representative is, first of

4    all, acting within the scope of the authority of that officer,

5    agent, or representative and, second of all, without any

6    purpose to profit personally or otherwise benefit him or

7    herself in a manner that is not fully aligned with the

8    interests of the university.

9            Now, we come to Counts Two and Three, the two

10   substantive wire fraud counts.

11           Count Two charges that from at least in or about

12   May 2017, up to and including in or about September 2017,

13   Messrs. Gatto, Code, and Dawkins each participated in a scheme

14   to defraud the University of Louisville of athletic scholarship

15   funds and of the right to control the use of its assets,

16   including the ability to decide how to allocate a limited

17   number of athletic scholarships, by making, or causing to be

18   made, material misrepresentations, using interstate wires, in

19   connection with obtaining a scholarship from the University of

20   Louisville for Brian Bowen, Jr. to play basketball for the

21   University of Louisville.

22           Count Three charges that from at least in or about

23   October 2016, up to and including in or about November 2017,

24   Mr. Gatto participated in a scheme to defraud the University of

25   Kansas of athletic scholarship funds and of the right to

Iamdgat1                         Charge

1    control the use of its assets, including the ability to decide

2    how to allocate a limited number of athletic scholarships, by

3    making, or causing to be made, material false representations,

4    using interstate wires, in connection with obtaining a

5    scholarship from the University of Kansas for Billy Preston to

6    play basketball for that school.

7         For each of these two counts the government must prove

8    the following three elements:

9         First, it must prove that there was a device, scheme,

10   or artifice to defraud the relevant university of money or

11   property by false or fraudulent pretenses, representations or

12   promises.  It must prove, second, that the defendant you are

13   considering knowingly and willfully participated in the device,

14   scheme, or artifice to defraud, with knowledge of its

15   fraudulent nature, and with specific intent to defraud.  It

16   must prove, third, that is in the execution of that device,

17   scheme, or artifice, the defendant you are considering used, or

18   caused to be used, interstate wires.

19        The first element the government must prove beyond a

20   reasonable doubt is the existence of a device, scheme, or

21   artifice to defraud the victim of money or property by false or

22   fraudulent pretenses, representations or promises.  In Count

23   Two, the alleged victim is the University of Louisville.  In

24   Count Three, the alleged victim is the University of Kansas.

25   The instructions on the elements that the government must prove

Iamdgat1                    Charge

beyond a reasonable doubt to establish wire fraud are the same

on both counts.  The only difference is the victim.

Now, let me define some of the terms specific to wire

fraud that I have used.

"Fraud" is a general term.  It is a term that includes

all of the possible means by which a person seeks to gain some

unfair advantage over the victim by intentional

misrepresentation or false pretenses.

A "device, scheme, or artifice to defraud" is any

plan, device, or course of action to deprive another of money

or property by means of false or fraudulent pretenses,

representations, or promises.  It is, in other words, a plan to

deprive another of money or property by trick, deceit,

deception, swindle, or overreaching.

A representation is false if it is true at the time

when it was made.  A statement also may be false if it is

ambiguous or incomplete in a manner that makes what is said, or

represented, misleading or deceptive.  A representation or

statement is fraudulent if it was made falsely and with the

intent to deceive.

Now, the government in this case says that the

fraudulent scheme, charged in each of Count Two and Count

Three, was carried out by two different means.  The first

means, that the government argues, is that the student-athletes

who received athletic scholarships from the University of

Iamdgat1                      Charge

1    Louisville or the University of Kansas, as the case may be,

2    made false representations in the form of certifications to

3    those universities.  The second means is that the parents of

4    the student-athletes who got athletic scholarships from the

5    universities in question made false representations, also in

6    the form of certifications to the universities.  Now, the

7    instructions here are a little bit different depending on your

8    consideration of whether a false statement was made by a

9    student-athlete or by a parent of a student-athlete.

10              As to the student-athletes, there is no contention in

11   this case that the student-athletes knew that any

12   certifications they signed and submitted to the universities

13   were false at the time that they were signed and submitted.  In

14   other words, there is no contention that the student-athletes

15   themselves were trying to deceive the universities because they

16   didn't know that they were making any false statements.

17   Instead, the government alleges that the alleged false

18   certifications submitted by the student-athletes served as the

19   means for a scheme to defraud because of the defendants' roles

20   in causing those false statement to be made.  I therefore

21   instruct you that, to the extent the existence of an alleged

22   scheme to defraud is based on an allegedly false certification,

23   signed and submitted by a student-athlete, the government must

24   prove beyond a reasonable doubt that the defendant you are

25   considering, with the specific intent to defraud the university

in question, willfully caused the making of the false

certification by the student-athlete.  I will explain the

concepts of "intent to defraud" and "willful causation" to you

in a few minutes.

My instructions are the same for any allegedly false

certification submitted by a parent if you find beyond a

reasonable doubt that the parent did not know that the

certification was false at the time that the parent signed and

submitted it.  To the extent the existence of a scheme to

defraud is based on such a false certification, the government

must prove beyond a reasonable doubt that the defendant you are

considering, with the specific intent to defraud the university

in question, willfully caused the parent of the student-athlete

to make the false certification.

Now, a different instruction applies, however, if the

existence of a scheme to defraud is based on an allegedly false

certification signed by a parent who knew that the

certification was false when the parent signed and submitted

it.  In that case, you may find that a scheme to defraud

existed on the basis of that certification -- provided that the

government has proved beyond a reasonable doubt each of the

other requirements on which I instruct you in respect of the

first element of wire fraud; that is to say, if the government

proves beyond a reasonable doubt either, first, that the

defendant you are considering, with the specific intent to

Iamdgat1                        Charge

defraud the university in question, willfully caused the parent

to make the false certification or, secondly, that the parent

who signed and submitted the certification knew that the

certification was false when the parent signed and submitted

it.

    But the existence of a false statement is not the end

of your inquiry.  For any false or fraudulent representation to

be a basis for a scheme to defraud, the government must prove

beyond a reasonable doubt also that the false or fraudulent

representation relates to a material fact or matter.  A

material fact is one that would reasonably be expected to

influence, or that is capable of influencing, the decision of

the decision-making person or entity to which it was directed.

    Now, in this case, the "decision-making entity" to

which false or fraudulent representations allegedly were

directed is the University of Louisville in Count Two and the

University of Kansas in Count Three.  I previously instructed

you that universities can think and act only through their

authorized agents who are acting without any purpose to profit

personally or otherwise to benefit him- or herself in a manner

that is not fully aligned with the interests of the university.

You should apply that instruction here.

    This mean that, for purposes of Count Two, if you find

beyond a reasonable doubt that a false or fraudulent

representation was made, you must determine whether that

Iamdgat1                          Charge

1   representation was one that was capable of influencing the

2   appropriately authorized and unconflicted officers or employees

3   of the University of Louisville in deciding whether to provide

4   a scholarship to Brian Bowen, Jr.  For purposes of Count Three,

5   if you find beyond a reasonable doubt that a false or

6   fraudulent representation was made, you must determine whether

7   that representation was one that was capable of influencing the

8   appropriately authorized and unconflicted officers or employees

9   of the University of Kansas in deciding whether to provide a

10  scholarship to Billy Preston.  The same principle applies to

11  statements that are misleadingly or deceptively ambiguous or

12  incomplete.

13        Now, it is not necessary for the government to prove

14  that any particular person actually relied upon, or actually

15  suffered damages as a consequence of, any false or fraudulent

16  representation.  Nor do you need to find that the defendant you

17  are considering profited from the fraud.  Here again my

18  instructions differ somewhat depending on whether the

19  individual who made a false representation (to the extent you

20  find that any such false representation actually was made) knew

21  that the representation was false at the time they made it.  If

22  you find beyond a reasonable doubt that a false representation

23  was made by an individual who did not know that the

24  representation was false, you must find that the defendant you

25  are considering willfully caused the false representation to be

made as part of a fraudulent scheme in the expectation that it

would be relied upon by the university in question.  If you

find beyond a reasonable doubt that a false representation was

made by an individual who did not know that the representation

was false, you must find that the individual made that false

representation as part of a fraudulent scheme in the

expectation that it would be relied upon by the university in

question.  In either case, you must concentrate on whether

there was such a scheme, not on the consequences of the scheme.

I instruct you further that in determining whether a

scheme to defraud existed, it is irrelevant whether you believe

that the university in question might have discovered the fraud

if it had looked more closely or probed more extensively.  A

victim's negligence or gullibility in failing to discover a

fraudulent scheme is not a defense to wire fraud.  On the other

hand, a finding that a university intentionally turned a blind

eye to certain kinds of representations when making decisions

about scholarships may be relevant to the materiality of the

representations.

Finally, the government, in order to satisfy this

first element of substantive wire fraud, must prove beyond a

reasonable doubt that the alleged scheme contemplated depriving

the victim -- that is to say, the University of Louisville in

Count Two and the University of Kansas in Count Three -- of

money or property.  It is no doubt obvious that property

includes tangible property interests, such as physical

possession of an object or of money.  But a victim can be

deprived of money or property also when it is deprived of the

ability to make an informed economic decision about what to do

with its money or property -- in other words, when it is

deprived of the right to control the use of its assets.  I

instruct you that a victim's loss of the right to control the

use of its assets constitutes deprivation of money or property

if, and only if, the scheme could have caused or did cause

tangible economic harm to the victim.

A scheme to defraud does not have to be shown by

direct evidence.  It can be established by all the facts and

circumstances in a case.

Now we move on to the second element of substantive

wire fraud.  It is a lot shorter.

The second element that the government must prove

beyond a reasonable doubt to establish substantive wire fraud

is that the defendant you are considering knowingly and

willfully participated in the scheme, device, or artifice to

defraud, with knowledge of its fraudulent nature and with

specific intent to defraud.

To act "knowingly" means to act intentionally and

voluntarily, and not because of ignorance, mistake, accident or

carelessness.

To act "willfully" means to act with knowledge that

Iamdgat1                    Charge

one's conduct is unlawful and with the intent to do something
the law forbids, that is to say, with the bad purpose to
disobey or disregard the law.  "Unlawfully" simply means
contrary to law.  In order to know of an unlawful purpose, a
defendant does not have to know that he was breaking any
particular law or any particular rules.  He needs to have been
aware only of the generally unlawful nature of his actions.

        To prove that the defendant you are considering acted
with specific intent to defraud, the government must prove that
he acted with intent to deceive for the purpose of depriving
the relevant University of something of value.  As I mentioned
earlier, that may include the right to control money or
property if the loss of the right to control money or property
could have resulted or did result in tangible economic harm to
the university.  The government doesn't have to prove that the
university actually was harmed, only that the defendant you are
considering contemplated some actual harm or injury to the
university in question.  In addition, the government need not
prove that the intent to defraud was the only intent of the
defendant you are considering.  A defendant may have the
required intent to defraud even if the defendant was motivated
by other lawful purposes as well.

        To participate in a scheme means to engage in it by
taking some affirmative step to help it succeed.  Merely
associating with people who are participating in a scheme --

Iamdgat1                        Charge

even if the defendant you are considering knew what they were

doing -- is not participation.

It is not necessary for the government to establish

that the government -- excuse me -- that the defendant you are

considering originated the scheme to defraud.  It is sufficient

if you find that a scheme to defraud existed, even if someone

else originated it, and that the defendant, while aware of the

scheme's existence, knowingly and willfully participated in it

with intent to defraud.  Nor is it required that the defendant

you are considering participated in or had knowledge of all of

the operations of the scheme.  The responsibility of the

defendant is not governed by the extent of his participation.

For example, it is not necessary that the defendant have

participated in the alleged scheme from the beginning.  A

person who comes in at a later point with knowledge of the

scheme's general operation, although not necessarily all of its

details, and who intentionally acts in a way to further the

unlawful goals, becomes a participant in the scheme and is

legally responsible for all that may have been done in the past

in furtherance of the criminal objective and all that is done

subsequently.

Even if the defendant you are considering participated

in the scheme to a degree less than others, he nevertheless is

equally guilty as long as the defendant knowingly and willfully

participated in the scheme to defraud with knowledge of its

Iamdgat1                    Charge

general scope and purpose and with specific intent to defraud.

          Now, because an essential element of the crime charged, both in Count Two and Count Three, is intent to defraud, it follows that good faith on the part of a defendant that you are considering is a complete defense to the charge of wire fraud.  An honest belief in the truth of the representations made or caused to be made by a defendant is a complete defense, however inaccurate the statements may turn out to be.  Similarly, it is a complete defense if a defendant held an honest belief that the universities were not being deprived of the ability to make an informed economic decision in such a way as to expose them to a risk of tangible economic harm.  Likewise, if you determine that a defendant held an honest belief that he could facilitate a payment to a family of a student-athlete without affecting the eligibility of that student-athlete to play in basketball games sponsored by the NCAA, you may find that such defendant lacked intent to defraud.

          A defendant has no burden to establish a defense of good faith; it remains the government's burden to prove fraudulent intent and the consequent lack of good faith beyond a reasonable doubt.  However, in considering whether or not a defendant acted in good faith, you are instructed that an honest belief on the part of the defendant, if such a belief existed, that ultimately everything would work out to the

1    benefit of the universities does not necessarily mean that the

2    defendant acted in good faith.  If the defendant you are

3    considering knowingly and willfully participated in the scheme

4    with the intent to deceive the university in question for the

5    purpose of depriving it of money or property (including the

6    right to control money or property if such loss of the right to

7    control could have resulted in tangible economic harm), even if

8    only for a period of time, then no amount of honest belief on

9    the part of the defendant that the university ultimately would

10   be benefited will excuse false representations that a defendant

11   willfully caused to be made.

12           Now, as to certain of the universities, one or more of

13   the defendants contends that they lacked intent to defraud

14   because they acted in good faith at the request of one or more

15   university basketball coaches.  An individual who does not work

16   for a university and who engages in (otherwise legal) conduct

17   to mislead the university lacks an intent to defraud the

18   university if three things are true:  First, he or she was

19   acting at the request of an agent of the alleged victim

20   university; second, the agent had apparent authority to make

21   that request; and, third, the agent appeared to be unconflicted

22   and acting in good faith for the benefit of the victim

23   university and not to serve his or her own interests in a

24   manner that was not fully aligned with the interests of the

25   university.  I am now going to discuss each of these concepts

Iamdgat1                         Charge

in more detail.

As to the first point, it is for you to determine whether the defendant that you are considering reasonably understood that one or more university coaches had requested that the defendant facilitate a payment to a student-athlete or his family.

As to the second point, an agent of a university generally has apparent authority to make a request of an outside party on behalf of that university if actions taken by other authorized representatives of the university caused the outside party reasonably to believe that the agent who made the request had the authority to make that request on behalf of the university.  Again, because the burden to prove each defendant's guilt lies with the government, assuming you find that a defendant reasonably believed that a coach or another agent requested that defendant to make or cause the making of a payment to a student-athlete or his family, you then must determine whether the government has proved beyond a reasonable doubt that the defendant knew or should have known that the university had not authorized the coach to ask the defendant to make that payment or payments of that kind.

As to the third point, to the extent that you find that a defendant reasonably understood a university coach to have requested that the defendant make or cause the making of a payment to a student-athlete or his family, you must determine

Iamdgat1                         Charge

also whether the government has proved beyond a reasonable
doubt that the defendant did not honestly believe that the
coach was unconflicted and acting in good faith.  The question
of what a defendant believed about a university coach's
interests and intent is a question of fact for you to decide.
However, it might be helpful if I elaborate briefly on what it
means for an agent of a university to be unconflicted.

          An agent of a university is unconflicted if his or her
actions are fully aligned with the interests of the university.
Anytime an agent takes an action, the agent might
simultaneously be acting for the benefit of the university for
whom the agent works and have an additional interest in
profiting personally or otherwise benefiting him or herself.
The agent's personal interests might be financial, they might
being nonfinancial in nature.  To be unconflicted, the agent's
personal interests, to the extent the agent has any personal
interests, must be completely aligned with the interests of the
university.  The agent may not sacrifice the interests of the
university in favor of his or her personal interests to any
extent.

          (Continued on next page)

IAM8GAT2                    Charge

1           THE COURT:  Now, the question of whether a person

2    acted knowingly, willfully and with intent to defraud is a

3    question of fact for you to determine, like any other fact

4    question.  Direct proof of knowledge and fraudulent intent

5    almost never is available.  Nor is it required.  It would be a

6    rare case where it could be shown that a person wrote or stated

7    that as of a given time in the past he or she committed some

8    act with fraudulent intent.  The ultimate facts of knowledge

9    and criminal intent, though subjective, may be established by

10   circumstantial evidence, based upon a person's outward

11   manifestations, his or her words, his or her conduct, his or

12   her acts, and all the surrounding circumstances disclosed by

13   the evidence and the rational or logical inferences that may be

14   drawn from it.  You may also infer, but are not required to

15   infer, that people intend the natural and probable consequences

16   of their actions.  Accordingly, when the necessary result of a

17   scheme is to injure others, fraudulent intent may be inferred

18   from the scheme itself.  As I instructed you earlier,

19   circumstantial evidence, if believed, is of no less value than

20   direct evidence.

21          The third and final element that the government must

22   prove beyond a reasonable doubt is that the defendant you are

23   considering used, or caused to be used, interstate wires (for

24   example, phone calls, e-mail communications, or text messages)

25   in furtherance of the scheme to defraud the University of

IAM8GAT2                    Charge

Louisville, in the case of Count Two, and the University of

Kansas, in the case of Count Three.

           The wire communication must be an interstate wire --

that is, it must pass between two or more states.  The use of

the wire need not itself be a fraudulent representation.  It

must, however, further or assist in some way in carrying out

the scheme to defraud.

           It is not necessary for the defendant you are

considering to have been directly or personally involved in a

wire communication, as long as the communication was reasonably

foreseeable in the execution of the alleged scheme to defraud

in which the defendant is accused of participating.  In this

regard, it is sufficient to establish this element of the crime

if the evidence justifies a finding that the defendant caused

the wires to be used by others.  This does not mean that the

defendant must specifically have authorized others to make the

communication.  When one does an act with knowledge that the

use of the wires will follow in the ordinary course of business

or where such use of the wires reasonably can be foreseen, even

though not actually intended, then he causes the wires to be

used.

           Finally, if you find that a wire communication was

reasonably foreseeable and that the interstate wire

communication charged in the indictment took place, then this

element is satisfied even if it was not foreseeable that the

IAM8GAT2                         Charge

1    wire communication would cross state lines.

2              As to each scheme alleged in Count Two and Count

3    Three, if you find that the government has failed to prove any

4    of the three elements of either count beyond a reasonable doubt

5    as to a particular defendant, then you must find that defendant

6    not guilty on that count.  On the other hand, if you find that

7    the government has proved each element beyond a reasonable

8    doubt as to a particular defendant, then you should find that

9    defendant guilty on that count.

10             Now, as I instructed you earlier, the government's

11   second theory of liability on the substantive mail fraud

12   counts, Count Two and Count Three, is that the defendants are

13   guilty of the substantive crimes charged in those counts as

14   principals because they possessed the requisite criminal intent

15   and willfully caused someone else to engage in actions

16   necessary to commit the crimes.  So I am now going to take a

17   minute to discuss what it means for a defendant to be guilty as

18   a principal through willful causation in the context of this

19   case.

20             It is the law of the United States -- and I quote --

21   "that whoever willfully causes an act to be done which, if

22   directly performed by that person, would be an offense against

23   the United States, is punishable as a principal."

24             So what does the term "willfully caused" mean?  It

25   does not mean that the defendant you are considering must

IAM8GAT2                        Charge

physically have committed the crime or supervised or

participated in the actual criminal conduct charged in the

indictment.  Rather, anyone who causes the doing of an act

which if done by him directly would render him guilty of an

offense against the United States is guilty as a principal.

Accordingly, one who intentionally causes someone else to make

a material false statement in connection with depriving a

university of money or property, as I have defined that term

previously, is guilty as a principal if the government proves

that the person who causes the making of that false statement

acted knowingly, willfully, and with the specific intent to

defraud the university in question and satisfies the other

elements of wire fraud that I have described to you.  This is

so even if the individual that was caused to make the false

statement had no criminal intent.

          Now, the defendants in this case maintain that the

government has not proved beyond a reasonable doubt that the

defendants knew that the false representations that are alleged

to have been made to the universities pursuant to the alleged

schemes to defraud would in fact be made to the universities.

          In some circumstances, however, you may find that a

defendant acted with the necessary knowledge as to particular

facts on the basis that the defendant consciously avoided

learning those facts by deliberately closing his eyes to what

otherwise would have been clear.

1          Although, I told you before that acts done knowingly

2     must be a product of an individual's conscience intention, a

3     defendant's conscience intention, not the product of

4     carelessness or negligence, a person may not willfully blind

5     himself to what is obvious and disregard what is plainly before

6     him.  A person may not intentionally remain ignorant of facts

7     that are material and important to his conduct in order to

8     escape the consequences of criminal law.

9          We refer to this concept, this notion of blinding

10    yourself to what is staring you in the face as "conscience

11    avoidance."  When one consciously avoids learning a fact, the

12    law often treats that person as knowing the fact.  An argument

13    of conscious avoidance, however, is not a substitute for proof.

14    It is simply another fact you may consider in deciding what the

15    defendant knew.

16         I instruct you that with respect to the substantive

17    wire fraud crimes charged in Counts Two and Three of the

18    indictment, you may infer that the defendant you are

19    considering knew that a false certification would be signed and

20    submitted to a university if you find beyond a reasonable doubt

21    that the defendant you are considering deliberately and

22    consciously avoided learning or confirming that the false

23    certification would be signed and submitted.

24         In other words, if you find beyond a reasonable doubt

25    that the defendant you are considering was aware of a high

IAM8GAT2                         Charge

1   probability that a false certification would be made to the

2   university in question, and that the defendant you are

3   considering deliberately avoided learning or confirming that

4   fact, you may find that that defendant knew that the false

5   certification would be made.  However, if you do not so find,

6   then the defendant did not know that the false certification

7   would be made.

8           That concludes my instructions on the government's

9   burden of proof with respect to the first two of the three

10  theories of liability in respect of the two wire fraud counts

11  charged in the indictment.  If you all agree that the

12  government has proved a defendant guilty as a principal beyond

13  a reasonable doubt on a substantive count in which that

14  defendant is charged, you need not consider the third theory of

15  liability as to that count and that defendant.  But if you do

16  not convict a defendant as a principal on a substantive count

17  in which that defendant is charged, you then will consider

18  whether the government has proved that defendant guilty on that

19  count on the third theory, which is called aiding and abetting.

20          Now, I think this would be a good time to take a few

21  minutes' rest before we get into aiding and abetting.  So we

22  will take ten minutes and return.

23          (Jury exits courtroom)

24          (Recess)

25          THE COURT:  I am told that the jury is willing to stay

IAM8GAT2                          Charge

1    late tonight, although I have a limit on how late I can stay,

2    and they are prepared to stay every night this week.

3            (Jury present)

4            THE COURT:  Jurors and defendants are all present.

5            So we will continue.

6            I will now explain this third theory, this aiding and

7    abetting theory, in greater detail.

8            It is unlawful for a person to aid, abet, counsel,

9    command, induce, or procure someone else to commit an offense.

10   A person who does that is just as guilty of the offense as

11   someone who actually commits it.  Accordingly, if a defendant

12   is charged with a substantive count in the indictment, you may

13   find that defendant guilty on that count if you find that the

14   government has proved beyond a reasonable doubt that another

15   person actually committed the crime and that the defendant you

16   are considering aided, abetted, counseled, commanded, induced,

17   or procured the commission of that crime.

18           In order to convict a defendant as an aider and

19   abettor, the government must prove beyond a reasonable doubt

20   two elements.

21           First, it must prove that a person other than the

22   defendant whom you are considering, and other than a person the

23   defendant willfully caused to take actions necessary for the

24   commission of the crime, as I have described that concept to

25   you previously, committed the crime charged.  Obviously, no one

IAM8GAT2                    Charge

can be convicted of aiding or abetting the criminal acts of

someone else if no crime was committed by the other person in

the first place.  Accordingly, if the government has not proved

beyond a reasonable doubt that a person other than the

defendant committed the substantive crime charged in the

indictment, either count, then you need not consider the second

element under this theory of aiding and abetting.  But if you

do find that a crime was committed by someone other than the

defendant you considering, or someone he willfully caused to

take actions necessary for the commission of the crime, then

you must consider whether the defendant you are considering

aided or abetted the commission of that crime.

        Second, in order to convict on an aiding and abetting

theory, the government must prove that the defendant you are

considering willfully and knowingly associated himself in some

way with the crime, and that he willfully and knowingly engaged

in some affirmative conduct or some overt act for the specific

purpose of bringing about that crime.  Participation in a crime

is willful if done voluntarily and intentionally, and with the

specific intent to do something that the law forbids.

        The mere presence of a defendant you are considering

in a place where a crime is being committed, even coupled with

knowledge that a crime is being committed, is not enough to

make the defendant an aider and abettor.  Similarly, a

defendant's acquiescence in the criminal conduct of others,

IAM8GAT2                        Charge

1    even with guilty knowledge, is not enough to establish aiding

2    and abetting.  An aider and abettor must know that the crime is

3    being committed and act in a way that is intended to bring

4    about the success of the criminal venture.

5            To determine whether the defendant you are considering

6    aided and abetted the commission of the crime, ask yourself

7    these questions:

8            Did the defendant you are considering participate in

9    the crime charged as something that the defendant wished to

10   bring about?

11           Did he knowingly associate himself with the criminal

12   venture?

13           Did he seek by his actions to make the criminal

14   venture succeed?

15           If he did, then the defendant is an aider and abettor.

16   If, on the other hand, your answer to any of these questions is

17   no, then the defendant is not an aider and abettor.

18           Now, I understand that, depending on your view of the

19   evidence, there may be a subtle distinction with respect to

20   whether a defendant is guilty, if at all, as a principal or as

21   an aider and abettor.  The question is what is the difference

22   between a defendant willfully causing someone else to take

23   actions necessary for the commission of a crime as opposed to

24   aiding and abetting someone else to commit a crime.

25           If this question comes up in your deliberations, you

should think of it in terms of the difference between causing

someone to do something versus facilitating or helping someone

to do it.  If you are persuaded beyond a reasonable doubt that

the defendant you are considering willfully caused someone else

to take actions necessary for the commission of either of the

substantive wire frauds charged in the indictment, you should

convict him as a principal on that count.  If, on the other

hand, you are persuaded beyond a reasonable doubt that the

defendant you are considering, with the knowledge and intent

that I described, sought by his actions to facilitate or assist

that other person in committing the crime, then he is guilty as

an aider and abettor.  One important difference between

willfully causing and aiding and abetting another person to

commit a crime, as I instructed you earlier, is that with

respect to willful causation, the government need not prove

that the defendant you are considering acted through a guilty

person.  With respect to aiding and abetting, however, the

government must prove beyond a reasonable doubt that someone

else committed the crime charged with the requisite intent.

         If you find beyond a reasonable doubt that the

government has proved that another person actually committed

one or more of the substantive crimes charged in Count Two and

Count Three and that the defendant you are considering aided or

abetted that person in the commission of that offense, you

should find that defendant guilty of that substantive crime on

IAM8GAT2                    Charge

1  an aiding and abetting theory.  If, however, you do not so

2  find, you must find the defendant you are considering not

3  guilty of that substantive crime.

4        You may be happy to know that we are now done with the

5  two substantive counts of the indictment.

6        So I turn to Count One, the conspiracy charge.

7        As I told you, a conspiracy is a kind of a criminal

8  partnership -- a combination or agreement of two or more

9  persons to join together to accomplish some unlawful objective.

10        Count One charges that from at least in or about 2015,

11  up to and including in or about November 2017, Messrs. Gatto,

12  Code, and Dawkins conspired with others, including, but not

13  limited to, parents of certain student-athletes and certain

14  basketball coaches, to commit wire fraud against one or more

15  universities.

16        In order to sustain its burden of proof with respect

17  to the conspiracy charged in Count One, the government must

18  prove beyond a reasonable doubt each of two elements:

19        First, it must prove the existence of the conspiracy

20  charged in Count One.

21        Second, it must prove that the defendant you are

22  considering knowingly and willfully became a member of, and

23  joined in, the conspiracy.

24        Starting with the first element, a conspiracy is a

25  combination, an agreement or an understanding of two or more

IAM8GAT2                        Charge

people to accomplish by concerted action a criminal or unlawful

purpose.  Count One charges that the criminal or unlawful

purpose was to commit wire fraud.

          To establish a conspiracy, the government is not

required to show that two or more persons sat down around a

table and entered into a solemn pact stating that they had

formed a conspiracy to violate the law and setting forth the

details of the plans and the means by which the unlawful

project is to be carried out, or the part to be played by each

conspirator.  It is sufficient if two or more persons come to a

common understanding to violate the law.  Since conspiracy by

its very nature is characterized by secrecy, it is rare that a

conspiracy can be proved by direct evidence of that explicit

agreement.  You may infer the existence of a conspiracy from

the circumstances of this case and the conduct of the parties

involved.

          The adage "actions speak louder than words" may be

applicable here.  Usually, the only evidence available with

respect to the existence of a conspiracy is that of

disconnected acts on the part of the alleged individual

co-conspirators.  When taken together and considered as a

whole, however, such acts may show a conspiracy or agreement as

conclusively as would direct proof.  In determining whether the

conspiracy charged in Count One actually existed, you may

consider all the evidence of the acts, conduct, and statements

IAM8GAT2                          Charge

1    of the alleged conspirators and the reasonable inferences to be

2    drawn from those matters.

3            As I instructed you earlier, the essence of the crime

4    of conspiracy is an agreement or an understanding to commit a

5    crime.  So it does not matter if the crime, the commission of

6    which was the objective of the conspiracy, ever was committed.

7    A conspiracy to commit a crime is an entirely separate and

8    distinct offense from the actual commission of the illegal act

9    that is the object of the conspiracy.  The success or failure

10   of a conspiracy is not material to the question of guilt or

11   innocence of an alleged conspirator.

12           There are no one-man conspiracies.  The crime of

13   conspiracy has not been committed unless one conspires with at

14   least one true co-conspirator.  It is not enough for the

15   government to show that the defendant you are considering

16   agreed only with an undercover agent or a government informant

17   to commit the underlying offense.  In a case like that, there

18   is no common understanding between two or more persons to

19   violate the law.

20           Now, the conspiracy charged in Count One allegedly had

21   one objective -- that is, it had a single illegal purpose,

22   according to the allegations of the indictment, that the

23   conspirators are alleged to have hoped to accomplish -- that

24   was to commit wire fraud against one or more universities.  I

25   explained the elements of wire fraud to you already in charging

IAM8GAT2                         Charge

1   you on Counts One and Three.  You will apply those instructions

2   when you consider whether the government has proved beyond a

3   reasonable doubt that the conspiracy charged in Count One

4   existed.  However, because Count One charges a conspiracy, the

5   government does not need to prove that anyone committed the

6   substantive crime of wire fraud.  It need not prove beyond a

7   reasonable doubt -- I misspoke.  It need prove beyond a

8   reasonable doubt only that there was an agreement to do so.

9           The indictment charges that the conspiracy charged in

10  Count One lasted from at least in or about 2015 through at

11  least in or about November 2017.  It is not necessary for the

12  government to prove that the conspiracy lasted throughout the

13  entire period alleged, but only that it existed for some time

14  within that time frame.

15          In sum, in order to find that the conspiracy charged

16  in Count One existed, the government must prove beyond a

17  reasonable doubt that there was a mutual understanding, either

18  spoken or unspoken, between two or more people to commit wire

19  fraud.

20          If you conclude that the government has proved beyond

21  a reasonable doubt that the conspiracy charged in Count One

22  existed, you next must determine whether the defendant you are

23  considering willfully joined and participated in the conspiracy

24  with knowledge of its unlawful purpose, and with an intent to

25  aid in the accomplishment of its unlawful objective -- that is,

IAM8GAT2                       Charge

1    the commission of wire fraud.  The government must prove beyond

2    a reasonable doubt by evidence of each defendant's own actions

3    and conduct that he unlawfully, willfully, knowingly, and with

4    specific intent to defraud entered into the conspiracy.

5           "Knowingly" and "willfully" have the same meanings

6    here, as I described earlier with respect to the second element

7    of substantive wire fraud.

8           A defendant's participation in the conspiracy must be

9    established by independent evidence of his own acts or

10   statements, as well as those of the other alleged conspirators,

11   and the reasonable inferences that may be drawn from it.

12          Now, science has not yet devised a manner of looking

13   into a person's mind and knowing what the person is thinking.

14   To make that determination, you may look to the evidence of

15   certain acts alleged to have taken place by or with the

16   defendant or in his presence.  As I instructed you earlier with

17   respect to determining a defendant's knowledge and intent, you

18   may consider circumstantial evidence based upon the defendant's

19   outward manifestations, his words, his conduct, his acts, and

20   all of the surrounding circumstances disclosed by the evidence

21   and the rational or logical inferences that may be drawn

22   therefrom.

23          To become a member of the conspiracy, the defendant

24   you are considering need not have known the identities of each

25   and every other member, nor need he have known of all of their

IAM8GAT2                          Charge

1    activities.  In fact, the defendant may know only one other

2    member of the conspiracy and still be a co-conspirator.

3         Moreover, the defendant you are considering need tot

4    not been fully informed as to all of the details, or the scope,

5    of the conspiracy in order to justify an inference of knowledge

6    on his part.  Proof of a financial interest in the outcome or

7    another motive is not essential, but if you find that a

8    defendant had such an interest or other motive, that's a factor

9    you may consider in determining whether the defendant was a

10   member of the conspiracy.  The presence or absence of motive

11   is, however, a circumstance that you may consider as bearing on

12   the intent of the defendant you are considering.

13        The duration and extent of a defendant's participation

14   has no bearing on the issue of a defendant's guilt.  Each

15   member of a conspiracy may perform separate and distinct acts

16   and may perform them at different times.  Some conspirators

17   play major roles, others play only minor parts in a conspiracy.

18   An equal role is not what the law requires.  In fact, even a

19   single act may be sufficient to draw a defendant within the

20   ambit of a conspiracy.  Moreover, the defendant need not have

21   joined the conspiracy at the outset.  He may have joined at any

22   time, and if he joined, still will be held responsible for the

23   acts done before or after he joined.

24        I want to caution you, however, that the mere

25   association by one person with another does not make that

IAM8GAT2                    Charge

1    person a member of the conspiracy even when coupled with

2    knowledge that a conspiracy is taking place.  Similarly, mere

3    presence at the scene of a crime, even coupled with knowledge

4    that a crime is taking place, is not sufficient to support a

5    conviction.  A person may know, or be friendly with, a criminal

6    without being a criminal himself.  Mere similarity of conduct

7    or the fact that they may have assembled together and discussed

8    common aims and interests does not necessarily establish

9    membership in a conspiracy.

10              I further instruct that mere knowledge of or

11   acquiescence without participation in an unlawful plan is also

12   not sufficient.  The fact that the acts of a defendant, without

13   knowledge, merely happen to further the purposes or objectives

14   of the conspiracy does not make the defendant a member.  What

15   is necessary is that the defendant you are considering must

16   have participated with knowledge of the unlawful purpose of the

17   conspiracy, in this case, to commit wire fraud.

18              In sum, the government must prove beyond a reasonable

19   doubt that the defendant you are considering, with an

20   understanding of the unlawful nature of the conspiracy,

21   intentionally engaged advised, advised or assisted the

22   conspiracy in order knowingly and willfully to promote its

23   unlawful goal.  The defendant thereby becomes a conspirator.

24              A conspiracy, once formed, is presumed to continue

25   until either its objectives are accomplished or there is some

IAM8GAT2                      Charge

1  affirmative act of termination by its members.  So, too, once a

2  person is found to be a member of a conspiracy, that person is

3  presumed to continue being a member in the venture until the

4  venture is terminated, unless it is shown by some affirmative

5  proof that the person withdrew and disassociated himself from

6  it.

7         Certain evidence was admitted during trial concerning

8  acts and statements of others because such acts were committed

9  and such statements were made by a person who, the government

10 claims, was also a co-conspirator of the defendants.

11        The reason for allowing this evidence to be received

12 against the defendants has to do with the nature of the crime

13 of conspiracy.  A conspiracy is often referred to as a

14 partnership in crime.  Thus, as in other types of partnerships,

15 when people enter into a conspiracy to accomplish an unlawful

16 end, each and every member becomes an agent of the other

17 conspirators in carrying out the conspiracy.

18        In determining the factual issues before you, you may

19 consider against the defendants any acts or statements made by

20 any of the people that you find, under the standards I have

21 already described, to have been co-conspirators, even though

22 such acts or statements were not made in his presence, or were

23 made without his knowledge.

24        Now, in this case, the defendants contend that the

25 government's proof fails to show the existence of only one

IAM8GAT2                    Charge

1    overall conspiracy.  Rather, they claim, there was no

2    conspiracy at all or, alternatively, there was one or more

3    conspiracy separate and apart from the conspiracy charged in

4    Count One.  Whether there existed a single unlawful agreement,

5    or many such agreements, or indeed, no agreement at all, is a

6    question of fact for you to determine in accordance with my

7    instructions.  So let me talk to you for a moment about how to

8    approach that question.

9             In order to prove a single conspiracy, the government

10   must prove beyond a reasonable doubt that each alleged member

11   agreed to participate in what he knew to be a collective

12   venture directed toward a common goal.  By way of contrast,

13   multiple conspiracies exist when there are separate unlawful

14   agreements to achieve distinct purposes.  If the evidence shows

15   that more than one conspiracy existed, you may still find that

16   the conspiracy charged in Count One existed if it happens to be

17   one of those conspiracies.

18            You may find that the conspiracy charged in Count One

19   existed even if there were changes in personnel or activities

20   over time, so long as you find that at least two of the

21   conspirators continued to act for the duration of the

22   conspiracy for the purpose charged in Count One -- that is,

23   committing wire fraud.

24            If you are not convinced that the conspiracy charged

25   in Count One existed, you cannot find any defendant guilty on

IAM8GAT2                        Charge

Count One.  That is so even if you find that some conspiracy

other than the one charged in Count One existed.  Similarly,

even if you find that a particular defendant was a member of

another conspiracy, but not the one charged in Count One, then

you must acquit the defendant on Count One.

Therefore, what you must do is determine whether the

conspiracy charged in Count One existed.  If it did, then you

must determine the nature of the conspiracy and who were its

members.

In sum, for each defendant, if you find that the

government has met its burden on each of the two elements

described above, then you should find that defendant guilty on

Count One.  If you find that the government has not met its

burden with respect to either element as to the defendant you

are considering, then you must find that defendant not guilty.

Now, you are going to have, in all likelihood, a

redacted version of the indictment in the jury room.  In any

case, you have been told the substance of parts of it, and you

will note that the indictment alleges that certain acts

occurred on or about various dates.  It doesn't matter if the

evidence you heard at trial indicates that a particular act

occurred on a different date.  The law requires only a

substantial similarity between the dates alleged in the

indictment and the dates established by the evidence.

Now, those are the instructions on the law.  I am now

going to talk to you a little bit about the trial process,
about your evaluation of the evidence, and about the conduct of
your deliberation.

You folks are the sole and exclusive judges of the
facts.  I certainly do not mean to indicate any opinion as to
the facts or as to what your verdict ought to be.  The rulings
I have made during the trial, the questions I asked -- if in
fact I asked any -- and any comments I may have made to the
lawyers in managing the trial are not any indication of any
views I might have about what your decision ought to be or as
to whether or not the government has proved its case.

It is your duty to accept these instructions on the
law and to apply them to the facts as you determine the facts
to be, regardless of whether or not you agree with the
instructions.  You are to show no prejudice against an
attorney, or the attorney's client, because the attorney
objected to the admissibility of evidence, asked for a sidebar,
or asked me to rule on questions of law.  In addition, the fact
that I asked questions or made comments is not intended to
suggest that I believed or disbelieved witnesses or have any
view about how you should decide the case.  You are to
disregard any of that entirely.  You of course, however, may
consider the answers to any questions I asked.  Those are
evidence.  But any comments I may have made to counsel are to
be disregarded.

1           You are to find the facts in this case without

2     prejudice as to any party.  The fact that the case is brought

3     in the name of the United States does not entitle the

4     government to any greater consideration than that accorded to

5     the defendants.  By the same token, the government is entitled

6     to no less consideration.  All the parties stand absolutely

7     equal before the law.

8           Let me talk to you about evaluation of evidence.  As I

9     am sure I told you when you were selected, the evidence in this

10    case is the sworn testimony of the witnesses, the exhibits

11    received in evidence, and the stipulations among counsel.

12          The indictment is not evidence.  Not question,

13    argument, or objection by a lawyer is evidence.  You are not to

14    consider any statements that I struck or told you to disregard,

15    but it is up to you, and you alone, to decide the weight, if

16    any, to be given to the testimony you heard and the exhibits

17    you have seen.

18          There are two kinds of evidence you may use in

19    reaching your verdict.

20          One type of evidence is called direct evidence.

21    Direct evidence is when a witness testifies to something that

22    the witness knows because the witness perceived it with his or

23    her own senses.  It is something the witness saw or felt or

24    touched or heard, and if this were some other kind of case,

25    tasted, I suppose.  Direct evidence also may be in the form of

IAM8GAT2                         Charge

an exhibit.  If this little styrofoam cup were an exhibit in
this case, that would be direct evidence of what the
characteristics of the cup are.  You could look at it.  You
would have direct evidence that it is a white styrofoam cup.

          Circumstantial evidence is evidence that tends to
prove a disputed fact by proof of other facts.  It refers to
the process of inferring, on the basis of reason and experience
and common sense, from one established fact the existence or
nonexistence of some other fact, quite possibly a fact that you
can't observe directly.  Circumstantial evidence, whatever you
may have heard on television, whatever you may have seen in the
movies, is of no less value than direct evidence.  It is a
general rule that the law makes no distinction between direct
and circumstantial evidence.

          I have talked to you before about stipulations.  There
are two kinds.  There are stipulations of fact, which you are
obliged to accept.  There are stipulations as to what
particular witnesses would have said if they testified here.
As to those, you must accept that the witnesses would so have
testified.  Whether you credit that testimony or not, whether
you think it is important or material or believable or not,
that's up to you.

          You have had the opportunity to observe all of the
witnesses.  It is now going to be your job to decide, to the
extent it is important to your decision, how believable each

witness was in the testimony that was given.  You are the sole

judges of the credibility of the witnesses and of the

importance of their testimony.  In doing that, you will use

your common sense; you will apply all of the tests for

truthfulness and accuracy that you would apply with respect to

important matters in your own everyday lives.

          Your decision whether or not to believe a witness may

depend on how the witness impressed you.  Was the witness

candid, frank, forthright?  Or, did the witness seem as if the

witness was hiding something, being evasive or suspect in some

way?  How did the witness testify on direct compared with how

the witness testified on cross-examination?  Was the witness

consistent in his or her own testimony or did the witness

contradict himself or herself?  Did the witness seem to know

what he or she was talking about?  Did the witness strike you

as someone who was trying to report his or her knowledge

accurately?

          If you find that a witness deliberately or willfully

lied to you about an important matter, you may either disregard

everything the witness said or you may accept whatever part of

it you choose to believe.  In other words, if you find that a

witness lied under oath about a material fact, you may treat

the testimony as a slice of toast that's been partially burned.

You can either throw the whole piece of toast out, or you can

scrape off the burned part and eat the rest.  It is up to you.

IAM8GAT2                          Charge

Ultimately, the determination of whether and to what extent you accept the testimony of a witness is entirely up to you.

You should, in evaluating credibility of witnesses, consider whether the witness stands to benefit in some way from the outcome of the case.  An interest in the outcome can create a motive to testify falsely.  It can sway a witness to testify in a way that the witness perceives as likely to advance the witness's own interests.  Keep in mind, though, that it does not automatically follow that testimony from an interested witness is to be disbelieved.  It is for you to decide, based on your own perceptions and your own common sense, to what extent, if at all, a witness's interest has affected the testimony.

You have heard some testimony from a couple of law enforcement officers, two I believe.  The fact that a witness may be, or may formerly have been, employed by the government in law enforcement doesn't mean that his or her testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.  At the same time, in considering the credibility of such a witness, you are entitled to consider whether the testimony may be colored by a personal or a professional interest in the outcome.

It is your decision, after reviewing all the evidence, whether to accept the testimony of those witnesses, and if so, to give the testimony whatever weight you think it deserves.

IAM8GAT2                      Charge

1          You have heard testimony from certain government

2     witnesses who testified that they were actually involved in

3     planning and carrying out the crimes charged in the indictment.

4     There has been a fair amount said about these cooperating or

5     accomplice witnesses in the summations of counsel and whether

6     or not you should believe them.

7          Experience will probably tell you that the government

8     frequently must rely on the testimony of witnesses who

9     participated in the criminal activity about which they testify

10    in a trial.  For those reasons, the law allows the use of the

11    testimony of cooperating or accomplice witnesses.  In fact, in

12    federal courts, the law is that the testimony of a cooperating

13    or accomplice witness in itself may be enough for conviction if

14    the jury believes that it proves the defendant guilty beyond a

15    reasonable doubt.

16         So the testimony of accomplice witnesses is entirely

17    appropriate for your consideration.  The government argues, as

18    it is entitled to do, that if such testimony couldn't be used,

19    there would be many cases in which there was real guilt and

20    conviction could not be had; it simply would be unattainable.

21         However, the testimony of accomplice witnesses should

22    be scrutinized with special care and caution because such

23    witnesses may believe that it is in their interest to give

24    testimony favorable to the government.  The fact that a witness

25    is an accomplice can be considered by you as bearing on

IAM8GAT2                        Charge

credibility.  As I said, however, it doesn't follow that simply

because a person has admitted to participating in one or more

crimes the person is incapable of giving a truthful account of

what happened.

         Like the testimony of any other witness, accomplice

witness testimony should be given the weight you think it

deserves, in light of the facts and circumstances in front of

you, taking into account the witness's demeanor, candor, the

strength and accuracy of recollection, their background, and

the extent to which the testimony is corroborated or not

corroborated by other evidence.  You may consider whether an

accomplice witness, like anybody else, has an interest in the

outcome in deciding whether it has affected that witness's

testimony.

         You have heard testimony about various agreements

between the government and accomplice witnesses.  I must

caution you it is of no concern of yours why the government

made such agreements.  Your sole concern is whether a witness

has given truthful testimony in this courtroom before you.

         In evaluating the testimony of accomplice witnesses,

you should ask yourselves whether these witnesses would benefit

more by lying or by telling the truth.  Was their testimony

made up in any way because they believed or hoped that they

would somehow receive favorable treatment by testifying

falsely?  Or did they believe that their interests would be

IAM8GAT2                          Charge

1   best served by testifying truthfully?  If you believe that a

2   witness was motivated by hopes personal gain, was the

3   motivation one that would cause him to lie, or was it one that

4   would cause him to tell the truth?  Did that motivation color

5   the witness's testimony?

6          If you find that the testimony was false, you should

7   of course reject it.  If, however, after a cautious and careful

8   examination of an accomplice witness's testimony and demeanor,

9   you are satisfied that the witness told the truth, you should

10  accept it as credible and act upon it accordingly.

11         As with any witness, let me emphasize that the issue

12  of credibility does not have to be decided on an all-or-nothing

13  basis.  Even if you find that a witness testified falsely in

14  some part, you still may accept their testimony in other parts,

15  or you may disregard all of it.  That's up to you.

16         You have heard testimony from one or more government

17  witnesses who pled guilty to charges arising out of the same

18  facts at issue in this case.  I instruct you that you are to

19  draw no conclusions or inferences of any kind about the guilt

20  of the defendants on trial here from the fact that one or more

21  prosecution witnesses pled guilty to similar charges.  The

22  decision of those witnesses to plead guilty was a personal

23  decision those witnesses made about their own guilt.  It may

24  not used by you in any way as evidence against or unfavorable

25  to the defendants on trial here.

IAM8GAT2                        Charge

1           You have heard evidence during the trial that some

2      witnesses have discussed the facts of the case and their

3      testimony with lawyers before the witnesses appeared in court.

4           Although you may consider that fact when you evaluate

5      a witness's credibility, I should tell you that there is

6      nothing unusual or improper about a witness meeting with

7      lawyers before testifying so that the witness can be aware of

8      the subjects he or she will be questioned about, focus on those

9      subjects, and have the opportunity to review relevant exhibits

10     before being questioned about them.  Such consultation helps

11     conserve your time and the Court's time.  In fact, it would be

12     unusual for a lawyer to call a witness without such

13     consultation.

14          Again, the weight you give to the fact or the nature

15     of the witness's preparation for his or her testimony and what

16     inferences you draw from such preparation are matters

17     completely within your discretion.

18          There are several persons whose names you have heard

19     during the course of this trial but who did not appear here to

20     testify.  I instruct you that both sides had an equal

21     opportunity, or lack of opportunity, to call any of those

22     witnesses.  Therefore, you should not draw any inferences or

23     reach any conclusions as to what they would have testified to

24     had they been called.  Their absence should not affect your

25     judgment in any way.

IAM8GAT2                        Charge

1          You should, however, remember my instruction that the

2     law does not impose on a defendant in a criminal case the

3     burden or duty of calling any witnesses or producing any

4     evidence.

5               (Continued on next page)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Iamdgat3                          Charge

1              THE COURT:  You've heard reference in the testimony,

2       and in the arguments of defense counsel, to the fact that

3       certain investigative or other techniques were not used by the

4       government.  There is no legal requirement that the government

5       prove its case through any particular means.  While you are to

6       consider carefully the evidence adduced by the government, you

7       need not speculate as to why it used the techniques it did or

8       why it did not use other techniques.  The choice of law

9       enforcement techniques is not your concern.

10             You have heard testimony about evidence that was

11      seized in connection with searches conducted by law

12      enforcement, for example, email evidence obtained pursuant to

13      court-approved search warrants.  You've heard also of recorded

14      calls and conversations that were offered into evidence during

15      the trial.  I instruct you that all of the evidence in this

16      case, including evidence obtained pursuant to searches and the

17      recorded meetings and conversations played during the trial,

18      properly was admitted in this case and properly is considered

19      by you.  Whether you approve or disapprove of the recordings of

20      calls or conversations, or the uses of searches to obtain

21      evidence, should not enter into your deliberations because I

22      now instruct you that the government's use of that evidence is

23      entirely lawful.

24             You must, therefore, regardless of any personal

25      opinions, give that evidence full consideration along with all

Iamdgat3                    Charge

1    the other evidence in the case in determining whether the

2    government has proved each defendant's guilt beyond a

3    reasonable doubt.

4          The defendants you now understand did not testify in

5    this case.  Under our Constitution, a defendant never is

6    required to testify or to present any evidence because it is

7    always the government's burden to prove a defendant guilty

8    beyond a reason doubt.  A defendant never is required to prove

9    that he is innocent.  You may not attach any significance to

10   the fact that the defendants did not testify.  You may not draw

11   any adverse inference against a defendant because that

12   defendant didn't take the witness stand.  You may not consider

13   this in any way in your deliberations.

14         Some of the people who may have been involved in the

15   events leading to this case are not on trial here.  You may not

16   draw any inference, favorable or unfavorable, towards the

17   government or the defendants, from the fact that any person

18   other than the defendants is not on trial here.  You may not

19   speculate as to the reasons why that is so.  Those matters are

20   wholly outside the jury's concern.  You may not consider them

21   in any way in reaching your verdict as to these defendants.

22   Your job is limited to considering the charges contained in the

23   indictment and the three defendants before you.

24         The question of possible punishment of the defendants

25   is of no concern to you and it should not, in any way, enter

Iamdgat3                    Charge

into or influence your deliberations.  The job of imposing

sentence, should there be a conviction, rests entirely upon the

Court.  Under your oath as jurors, you cannot properly allow

consideration of any punishment that may be imposed, in the

event of a conviction, to allow that -- you may not allow that

to influence your verdict in any way.

Now, you are going to retire to decide this case in

just a couple of minutes.  It is your duty as jurors to consult

with one another and to deliberate with a view to coming to an

agreement.  Each of you must decide the case for yourself, but

you should do so only after considering the case with your

fellow jurors, and you should not hesitate to change an opinion

if you are convinced that it is erroneous.  Your verdict,

whether guilty or not guilty, must be unanimous, but you are

not bound to surrender your honest convictions concerning the

effect or the weight of the evidence merely for the purpose of

returning a verdict or solely because of the opinion of other

jurors.  Discuss and weigh your respective opinions

dispassionately, without regard to sympathy, without regard to

prejudice or favor for either party, and come to the conclusion

which in your good conscience appears from the evidence to be

in accordance with the truth.

A word about your notes.

Any notes you may have taken during the trial are for

your personal use only.  Each of you may consult your own notes

during deliberations, but any notes you may have taken are not
to be relied upon during deliberations as a substitute for the
collective memory of all of you.  Your notes should be used as
memory aids but should not be given precedence over your
independent recollection of the evidence.  If you didn't take
notes, you should rely on your own independent recollection of
the proceedings, and you should not be influenced by the notes
of other jurors.  I emphasize that the notes are not entitled
to any greater weight than the recollection or impression of
each juror as to what the testimony and the evidence was.

          As I mentioned at the start, you will be receiving
copies of my written instructions in the jury room shortly
after you retire.  You will find that they contain what I think
will strike most or probably all of you as hieroglyphics.
There are legal citations after every paragraph or so.  You are
to pay them no mind.  The chances are you won't understand what
they refer to anyway because they are in lawyer code.  They are
worst than doctors' prescriptions.  But they are my audit trail
about where various legal principles come from.  They are for
the convenience of myself and counsel.  You are to disregard
all of them.

          You are also certainly well aware by now that many of
the exhibits have redactions, that is, parts that are blacked
out, and the copy of the indictment that you are likely to
receive also has parts that are blacked out.  You are just to

Iamdgat3                        Charge

disregard the redactions altogether.  That was done for the

sake of fairness and efficiency.  You are not to speculate

about what was blacked or why.  Just deal with what you have in

front of you that is legible.

You are not to discuss the case unless all twelve

jurors are present.  Ten or eleven of you are what I trust by

now are a group of congenial friends, but you are not a jury

unless all 12 of you are there.

When you retire, you should select one of the twelve

of you as foreperson.  That person will preside over

deliberations and speak for you here in open court.  If it

becomes necessary to send in a note, the foreperson will write

the note and send it in in a sealed envelope.  When you have

come to the verdict, should you do so, and I trust you will,

the foreperson will notify the officer that there is a

verdict -- not what the verdict is.  You will just say, "We

have a verdict."

I will be submitting to you, along with the written

instructions, a verdict form on which to record the verdict.

When you have reached a unanimous verdict, you will record your

answers on one copy of the verdict form.  Please do not add

anything that is not called for by the verdict form.  You will

see the verdict form has a place to check "guilty" or "not

guilty" as to each defendant on each count on which that

defendant is named.  Just put whatever the checkmarks are that

Iamdgat3                    Charge

you find unanimously to be appropriate.  No commentary.

Please, no commentary.  And then each of you will sign at the

bottom, and the foreperson will tell the officer that there is

a verdict.  Don't give the verdict form to the officer.  Put it

in an envelope.  The foreperson will bring it into court.  You

will hold on to it until I ask for it.

        You should each be in agreement with the verdict.

When the verdict is announced in open court, once it is

announced in open court and officially recorded, it ordinarily

cannot be changed or revoked.

        A couple of other practical details here.

        If during your deliberations you want me to discuss

any further any of the instructions on the law that I have

given you, the foreperson should compose a note, put it in a

sealed envelope, give it to the officer, and the officer will

pass it on to me.

        Now, when you get the written instructions in the jury

room, you will find that every page and line is numbered.  And

if the question relates to a particular part or parts of the

charge, it would be very helpful if the foreperson's note

indicates the page and line numbers that the question relates

to.  The process that happens when a note comes in is that I

show the note to the lawyers.  The lawyers have an opportunity

to suggest to me what they think the right answer is.  If

everybody agrees, it is no problem.  If everybody doesn't

Iamdgat3                    Charge

1   agree, I ultimately decide what the right answer is.  And the

2   point of being specific about your questions is that the more

3   precise your questions are, the more likely it is we can give

4   you the answer you want and do it quickly.  The more ambiguous

5   it is, the longer we will discuss what you really mean and in

6   all likelihood have some discussion about what the right answer

7   is.

8           During the course of the deliberations, we will send

9   the exhibits that are in evidence into the jury room.  Now, we

10  have not yet discussed how we will deal with the tapes should

11  you want a tape played, played out loud.  If you need a tape

12  played out loud, you will let us know in a note unless we make

13  other arrangements before then.

14          If you need to have testimony read back to you, the

15  foreperson -- ah, I'm told the parties have apparently worked

16  out what we do with the tapes.  Is that right?  Everybody is

17  agreed on this or no?

18              MR. DISKANT:  Yes, your Honor.

19              THE COURT:  A clean laptop, that's all agreed?  Yes?

20              MR. DISKANT:  Yes.

21              MR. MOORE:  Yes.

22              MR. HANEY:  Yes, your Honor.

23              MS. DONNELLY:  Yes.

24              THE COURT:  So, we have a procedure for the tapes.

25  You will have the tapes -- I think they are CDs -- I'm sure

Iamdgat3                        Charge

1    they are CDs, and you will have a clean laptop by which I mean

2    a laptop with nothing else on it.  And so if you want to listen

3    to a particular exhibit, you will have the CD, you will have

4    the laptop, just play it to your heart's content.  You also

5    have the T exhibits.  Right?  So, you will have the transcripts

6    as well.

7          OK.  With respect to readbacks, if you need to have

8    any of the testimony read back to you, the procedure is to send

9    in a note telling us as precisely as you can what exactly you

10   want to hear.  Now, that could be with any level of

11   specificity -- which witness, direct or cross, what subject.

12   Just be as specific as you can, because we then have to figure

13   out what you really want.  You don't want to have a vague note

14   and wind up listening to two hours of testimony for one

15   paragraph, so it is in everybody's interest to be specific, but

16   whatever you need we will get for you.  It sometimes takes some

17   time to organize a read back.  Just bear that in mind because

18   there are sidebars that have to be edited out and stuff like

19   that, just practical considerations.

20         I will respond to questions, in respect, just as fast

21   as I can.

22         The lawyers will be -- I normally have them wait in

23   the courtrooms or right around the courtroom so that we can

24   respond to notes instantly.  The exception to that will be

25   between 12:45 and 2, we will not respond to notes.  And if we

Iamdgat3                    Charge

1    are here during a dinner hour, we will not respond to notes

2    during a dinner hour, but we'll keep those short, should that

3    occur.

4            Now, one last thing about notes.  If you communicate

5    with the Court before there is a verdict, whether in the

6    courtroom or by a note, you are never to indicate how the vote

7    stands, if there is a division, unless I specifically ask you

8    to tell me that, and I haven't done it yet in 24 years.  So, no

9    vote.

10           I remind you folks that you took an oath to render

11   judgment fairly and impartially, without prejudice or sympathy,

12   and without fear, based solely on the evidence in this case and

13   the applicable law.  It would be improper for you to consider,

14   in reaching your decision as to whether the government has

15   sustained its burden of proof, any personal feelings you may

16   have about the race, religion, national origin, gender, or age

17   of a defendant.  If you let prejudice or sympathy interfere

18   with your clear thinking, there is a risk that you will not

19   arrive at a just verdict.  All parties to this case are

20   entitled to a fair trial.  You must make a fair and impartial

21   decision so that you'll come to a just verdict.

22           If you have a reasonable doubt as to a defendant's

23   guilt, you should not hesitate for any reason to return a

24   verdict of not guilty.  On the other hand, if you should find

25   that the government has met its burden of proving a defendant's

guilt beyond a reasonable doubt, you should not hesitate,

because of sympathy or any other reason, to find that defendant

guilty.

          Now, does any counsel have any objection to the charge

as delivered that I haven't ruled on previously?  If so, come

to the sidebar.

          (Pause)

          No indication.

          OK.  I'm told that there are two audio exhibits that

are not yet on CDs.  They will just come into the jury room

later.

          OK.  Now we have to address the question the

alternates asked on Thursday afternoon.  If the twelve jurors

try the case to a verdict, the alternates will be released and

you will not deliberate with the jurors.  And you will be able

to go home, or about your affairs, in just a few minutes, but

you are still alternates on this jury.  You are subject to

recall in the event, for example, that something happened to

one of the jurors, or more than one of the jurors, God forbid.

You will be recalled in order.  It is essential that you not

read or be exposed to any conversation or publication or

anything else about this case until you know that the jury has

returned a verdict or has been discharged.  Andy will make sure

he has your contact information.  And while the chances are

that you will not be recalled, there are no guarantees and

Iamdgat3                    Charge

1   jurors have been recalled in the recent past because of some

2   juror becoming ill or some other problem.

3          So you need to adhere to my instruction, but we may

4   not see you again, and, therefore, on behalf of the defendants,

5   their lawyers, the government, and myself, we thank you for

6   your very attentive consideration of this case and for the time

7   investment you have put into it.  It's obviously very important

8   in every case and this one is not an exception.  So, you may

9   now, the six of you, go into the jury room with Andy.  Leave

10  your notes with him and collect your other effects.

11         And I ask you, Alternate No. 1, you are still an

12  alternate, but I'm going to ask you to remain for one minute

13  while the other five jurors go inside.

14         So if Alternates No. 2 through 6 would now go into the

15  jury room.  And if everyone else will remain seated, I will see

16  Mr. Peterson and lead counsel in the robing room.

17         And the courtroom remains locked.

18         OK.  Mr. Peterson, counsel, lead counsel, in the

19  robing room, Vinny.

20             (Continued on next page)

21

22

23

24

25

Iamdgat3                     Charge

1          (In the robing room)

2          THE COURT:  Have a seat.

3          OK.  Counsel are all present.  Mr. Peterson is

4     present.

5          Mr. Peterson, previously you said you hadn't heard the

6     instructions yet.

7          JUROR:  Mm-hmm.

8          THE COURT:  So you've now heard the instructions.  Are

9     you able to fairly and impartially judge this case based solely

10    on the instructions and the evidence you have heard?

11         JUROR:  Yes.

12         THE COURT:  Counsel, any other inquiry?

13         MR. HANEY:  No, your Honor.

14         MR. SCHACHTER:  No, your Honor.

15         THE COURT:  OK, you remain an alternate.

16         MR. DISKANT:  And, to be clear, that would include

17    putting out of his mind anything that would not impact --

18         JUROR:  Yes.

19         THE COURT:  Are you able to put out of your mind

20    anything else you have read?

21         JUROR:  Mm-hmm.

22         THE COURT:  I need a word.

23         JUROR:  Yes.

24         THE COURT:  OK.  Thank you, Mr. Peterson.  You may

25    rejoin the other alternates.

Iamdgat3                    Charge

1          (Juror not present)

2          MR. MOORE:  Your Honor, could I quickly raise one

3    issue?  And I thought about raising it, but I hate raising this

4    in front of the jury.  On page 47 of your charge where you

5    address the issue of uncalled witnesses equally available, that

6    is generally true with the exception of agents, like the

7    undercovers.  Those undercovers were not available to us.  Your

8    Honor ruled against us in our motion in limine with regards to

9    their testimony, and the government has the ability to control

10   them through the Touhy regulations and the like.  So I just

11   raise that point for the record.

12         MR. DISKANT:  Your Honor, I disagree with that.  Had

13   Mr. Moore sought to call one of the agents, he did in fact

14   submit the required certification under Touhy.  We forwarded it

15   to the FBI.  There was never a time when any party sought to

16   call any of these witness.

17         MR. MOORE:  Well, I never received a response from the

18   FBI to my request under Touhy.  My understanding of the way --

19         THE COURT:  And, Mr. Moore, if you had said to me,

20   "Judge, they haven't responded and I want them," you'd have had

21   them.

22         MR. MOORE:  OK.  All right.  Yes, sir.

23         THE COURT:  And this ship sailed last week, anyway.

24         MR. MOORE:  I understand.

25         THE COURT:  OK.

Iamdgat3                         Charge

1           MR. MOORE:  I thought about it while I was sitting

2     there.

3           THE COURT:  I understand.  That is what good lawyers

4     do.

5           OK.  Let's go.

6           MR. MOORE:  Good lawyers think about it early.  Better

7     lawyers think about it early.

8                (Continued on next page)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Iamdgat3                      Charge

1            (In open court)

2            THE COURT:  OK.  As soon as we get the officer in, we

3    are ready to go.

4            (Pause)

5            All right.  The deputy will swear the officer.

6            (The court security officer was sworn)

7            THE COURT:  Ladies and gentlemen, you will now retire

8    to deliberate upon your verdict.

9            THE CLERK:  Will the jury please come this way.

10           (Time noted at 12 noon, the jury began deliberations)

11           THE COURT:  OK.  Anything further?

12           MR. DISKANT:  Your Honor, is it sufficient if one

13   attorney for each side generally remains in the courtroom, or

14   do you need all of them?

15           THE COURT:  I don't need all of you as long as whoever

16   remains is fully authorized to act.

17           MR. DISKANT:  Very good.

18           THE COURT:  OK.  All right.  Thank you.

19           Before you go, we will mark as Court Exhibit next in

20   order one of the copies of the charge that will go in.  If

21   there is no objection, Andy will just take the charge in, take

22   the verdict form in.

23           And then I was given a note that there are two audio

24   exhibits that the government does not yet have on CDs.  If

25   everybody agrees, we will show the CDs to the defense and we

Iamdgat3                    Charge

1    will send them in through Andy without any further

2    on-the-record proceedings.

3              Is that acceptable, Mr. Schachter?

4              MR. SCHACHTER:  Yes, your Honor.

5              THE COURT:  Mr. Moore?

6              MR. MOORE:  Yes, sir, your Honor.

7              THE COURT:  Mr. Haney?

8              MR. HANEY:  Yes, your Honor.

9              THE COURT:  Mr. Diskant?

10             MR. DISKANT:  Yes, your Honor.

11             And on that note, we have a proposed redacted version

12   of the indictment.  We just want to give defense counsel an

13   opportunity to see it, but provided that they are amenable to

14   it, is it the court's view that that will be sent back well?

15             THE COURT:  It is.

16             OK, Mr. Schachter?

17             MR. SCHACHTER:  Yes, your Honor.

18             THE COURT:  Mr. Moore?

19             MR. MOORE:  Yes, your Honor.

20             THE COURT:  Mr. Haney?

21             MR. HANEY:  Yes, your Honor.

22             THE COURT:  Thank you.

23             (Recess pending jury verdict)

24             (Continued on next page)

25

Iamdgat4

1              (Time noted at 4:59 p.m.; jury not present)

2              THE COURT:  Good afternoon, everyone.  Bring in the

3      jury.

4              (Jury present)

5              THE CLERK:  Please be seated, everyone.

6              THE COURT:  OK, members of the jury.  I always see a

7      jury the first thing in the morning and the last thing at

8      night.  So, you are done for today.  We'll see you back at

9      11:15 tomorrow.

10              I should note that the defendants all are present.

11              Thank you very much and have a pleasant evening.

12              Do not discuss the case with anybody.  Do not read

13      anything about it.

14              OK.  Thanks, folks.

15              THE CLERK:  All rise.

16              (Jury not present)

17              THE COURT:  OK.  Anything else we need to do?

18              MR. MOORE:  No, your Honor.

19              MR. HANEY:  No, your Honor.

20              THE COURT:  OK.  Have a good evening.

21              (Adjourned to 11:15 a.m., October 23, 2018)

22

23

24

25