# EXHIBIT B

North Carolina State University is a land-grant university and a constituent institution of The University of North Carolina

Department of Athletics

**NC STATE UNIVERSITY**

An Equal Opportunity/Affirmative Action Employer

Campus Box 8502
Raleigh, North Carolina 27695-8502
http://www.ncsu.edu/athletics

February 22, 2019

RE: North Carolina State University

Dear Judge Kaplan:

As the Director of Athletics at North Carolina State University ("NC State" or the "University"), I write in connection with the sentencing of James Gatto, Merl Code and Christian Dawkins (together, the "Defendants") in the matter of *United States v. James Gatto et al.*, 1:17-cr-686 (LAK), and respectfully request that Your Honor consider the following statement in connection with the sentencing of the above named Defendants. As background information, I have been employed in intercollegiate athletics as a women's basketball coach and later as a Director of Athletics for approximately 40 years, having served as a coach at the University of Kentucky, Oral Roberts University and the University of Florida and later as an Athletics Director at Saint Louis University, the University of Maryland and NC State since 2010.

NC State is a leading land grant and research university located in Raleigh, North Carolina. As an institution, we strongly believe in acting with integrity in all matters, including such high-profile enterprises as intercollegiate athletics, where effective education, awareness and deliberate caution must always be in place to best avoid violations of NCAA rules and regulations.

That said, this trial and the attendant publicity has unquestionably damaged the reputation of our University. We are committed to operating an athletics program that has, as part of its foundation, firmly embedded expectations for both integrity and excellence that includes the involvement of every coach, staff member and student-athlete associated with our programs. An allegation of an NCAA rules violation is antithetical to both our identity and deeply-rooted culture of compliance.

**NC State's Establishment and Commitment to Compliance**

The expectation of a compliant Athletics Department and a highly achieving one are not mutually exclusive goals or practices.

Upon arrival at NC State in 2010, the first area I targeted for improvements was our Compliance unit. We began this effort by building a suite of offices to house new compliance personnel and purposefully sought out and hired an experienced former NCAA Infractions Officer, Ms. Carrie Doyle, to lead that all-important unit. We then implemented a framework to best ensure a culture of compliance, by using the following guidelines when educating staff, coaches, boosters and student-athletes: **E**stablish the culture, **R**einforce the culture and **A**ct with integrity when the culture is threatened. We refer to this as the ERA document.

{N0030804.1}                                      -1-

Our employees understand that every individual associated with our Department is expected to follow the rules of the NCAA, the Atlantic Coast Conference and the University. This culture of compliance is foundational to our Department at NC State.

As part of our commitment to compliance, for high-profile sports and hires, we identify and vet head coaches and assistant coaches through the NCAA to ensure there are no known compliance issues before an offer of employment is completed.

Despite these commitments and the purposeful efforts of dedicated individuals to create and reinforce a culture of compliant athletics teams and programs, regrettably, *there is no detection technique to identify an individual who intentionally chooses to violate an NCAA rule and then hides the misconduct from both the University and the NCAA*. All of us who work in this space know that one of the foundational principles of both NCAA and university compliance with applicable rules is self-reporting possible violations. As revealed at trial, the Defendants' activities demonstrated clearly their intent to defraud universities and to then conceal that fraud from those at NC State who would properly respond to the threat to our culture.

**NC State's Harm**

As a direct result of the Defendants intention to defraud the University, NC State has incurred costs and attorneys' fees in responding to requests for documents and information, and as necessary to assist and respond to the U.S. Attorney's Office for the Southern District of New York ("SDNY"). It has been necessary for the University to retain counsel to assist the government in its work on this case, as well as counsel to address possible NCAA inquiries. Those fees and costs currently total $234,685, with future fees anticipated to be at least $500,000.

**NC State Has and Will Continue to Assist the Government**

NC State remains committed to cooperating with SDNY and the NCAA by responding to requests for information and documents, reaching out to former coaches and seeking information regarding the allegations, assisting the government in its preparation and making witnesses available for trial testimony. NC State is zealous in guarding its reputation and its ERA culture of compliance. The University has been and will continue to be transparent throughout the entirety of investigations and any subsequent criminal proceedings.

Thank you for taking the time to consider how the Defendants' conduct has impacted our University. If the Court has any questions, I remain at your disposal to respond to any and all inquiries.

Respectfully Submitted,

Deborah A. Yow
Director of Athletics