# EXHIBIT C



Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW  |  Washington, DC 20036  |  tel 202.663.8000  |  fax 202.663.8007

William M. Sullivan, Jr.
tel: +1.202.663.8027
wsullivan@pillsburylaw.com

February 22, 2019

Hon. Lewis A. Kaplan
Senior U.S. District Judge
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, #1940
New York, NY 10007-1312

        Re:     *United States v. James Gatto, et al. (Case No. 17-CR-686)*

Dear Judge Kaplan:

        I write on behalf of the University of Kansas, an educational institution
directly victimized by the intentional criminal conduct of defendant James Gatto and
his co-conspirators, and hereby submit this victim impact statement and request for
restitution.

        Mr. Gatto, an Adidas executive, was convicted on October 24, 2018 of
conspiracy to commit wire fraud and wire fraud in connection with a scheme to
defraud National Collegiate Athletic Association ("NCAA") Division I universities,
including the University of Kansas.  Mr. Gatto and his co-conspirators manifestly
abused their respective positions in the collegiate basketball community to enrich and
promote themselves, while causing significant direct and approximate harm to the
University of Kansas and other NCAA institutions.[1]

        The University of Kansas has suffered considerable financial harm, including
but not limited to losses for athletic scholarships and financial aid paid to student-
athletes as well as professional legal services expenses incurred by the University of
Kansas in connection with U.S. Government's criminal investigation and the NCAA's
inquiry into Mr. Gatto's and his co-conspirators' illegal actions.  The damage done by
Mr. Gatto's and his co-conspirators' greed cannot be overstated.  Their actions have

---

[1] The actions attributed to Mr. Gatto and his co-conspirators in this victim statement are based upon the
Superseding Indictment filed in this case, the trial transcript in this case, public media reports and the
judgment of conviction.

February 22, 2019
Page 2

impaired the University of Kansas's ability to continue to fully use those resources for both the benefit and welfare of its student-athletes, as well as for its ongoing mission of educational and community development and enrichment.

As a victim of Mr. Gatto's and his co-conspirators' crimes, the University of Kansas is entitled to recover restitution under the Mandatory Restitution to Victims Act, 18 U.S.C. § 3663A *et seq*. (the "MRVA"). Indeed, these funds should be used to compensate the victims of Mr. Gatto's and his co-conspirators' crimes, including the University of Kansas, so that actions can be taken to repair the damage that they have done to the collegiate basketball community, in general, and to the University of Kansas, in particular.

## I.      BACKGROUND

### a.   University of Kansas

As the flagship university in the State of Kansas, the University of Kansas has approximately 30,000 students and over 10,000 faculty and staff. As one of only 34 U.S. public institutions in the Association of American Universities, the University has a distinguished record of research innovation. Through 60 independent, multidisciplinary research centers, students and faculty collaborate on solutions that transform and improve our world. In addition, the University is one of 26 U.S. universities that have a National Cancer Institute-designated cancer center, a National Institutes of Aging-designated Alzheimer's disease center and that has been a National Institutes of Health Clinical and Translational Science Award.

The University of Kansas has five campuses across the State of Kansas, in both urban and rural areas. The University offers 44 nationally ranked graduate programs. It trains 7,000 firefighters and 11,000 members of law enforcement as well as teachers, engineers, and architects per year. Its pharmacists, nurses, and physicians work in rural settings throughout the State. Beyond these services, the University of Kansas is a powerful economic engine for the State of Kansas and the surrounding region. The University addresses workforce needs every year by conferring almost 7,000 degrees for its students. The University of Kansas is very proud of its role in the lives of all of its students.

### b.   Mr. Gatto's and His Co-Conspirators' Illicit Conduct

As Adidas's Director of Global Sports Marketing, Mr. Gatto was responsible for overseeing the sports apparel manufacturer's relationship with high school and college basketball programs in the United States. Mr. Gatto was also responsible for

February 22, 2019
Page 3

Adidas' efforts to sponsor and provide financial support for grass-roots Amateur
Athletic Union ("AAU") basketball programs.  Mr. Gatto was one of ten defendants
arrested on September 25, 2017.  In a Superseding Indictment filed on April 10, 2018,
Mr. Gatto was charged with three counts of conspiracy to commit wire fraud, as well
as wire fraud, all in connection with schemes to defraud NCAA educational
institutions.

      The Superseding Indictment charged that Mr. Gatto's and his co-conspirators
defrauded the University of Kansas and other universities by making and agreeing to
make payments to the families of high school student-athletes in order to build brand
loyalty, "thereby causing the universities to agree to provide athletic scholarships to
student-athletes who, in truth and in fact, were ineligible to compete as a result of the
payments."[2]  Mr. Gatto and his co-conspirators concealed these payments from the
University of Kansas in order for the criminal scheme to succeed and for the student-
athlete to receive athletic scholarships and financial aid from the University of
Kansas.[3]  Mr. Gatto was convicted after trial of all counts.

## II.    MR. GATTO'S AND HIS CO-CONSPIRATORS' CONDUCT HARMED THE UNIVERSITY OF KANSAS

      As noted by the U.S. Government, the Superseding Indictment specifically
provided that Mr. Gatto "alone **defrauded the University of Kansas**, by making and
agreeing to make approximately $90,000 in payments to the family of a student-
athlete in connection with that student-athlete's commitment to attend the University
of Kansas . . . ."[4]  Indeed, Mr. Gatto defrauded the University of Kansas by making
payments to the parent and guardian of two student-athletes, thereby impairing their
eligibility to play NCAA basketball for the University of Kansas.

      Mr. Gatto and his co-conspirators concealed the payments from the University
of Kansas and "intended to cause others to make false certifications to the University
of Kansas and the NCAA about the existence of the payments and the known
violations of NCAA rules."[5]  These criminal actions caused the University of Kansas
to agree to provide athletic scholarships and financial aid to two student-athletes even
though they were ineligible to participate in the NCAA basketball competition as a

---

[2] Superseding Indictment ¶ 50.

[3] *See* Superseding Indictment ¶¶ 3, 41 and 43.

[4] *See* April 10, 2018 Letter from the U.S. Attorney's Office for the Southern District of New York to
   Judge Lewis A. Kaplan accompanying the Superseding Indictment, Dkt. 136 (emphasis added).

[5] Superseding Indictment ¶ 43.

February 22, 2019
Page 4

result of the illicit payments.[6]  These actions also ultimately compelled the University of Kansas to make significant expenditures for professional legal services regarding the U.S. Government's and the NCAA's investigations.

### a.  Mr. Gatto and His Co-Conspirators Caused the University of Kansas to Provide Athletic Scholarships and Financial Aid Under False Pretenses

Mr. Gatto's and his co-conspirators' criminal conduct deprived the University of Kansas of significant financial resources in the form of athletic scholarships and financial aid that the University of Kansas granted to two student-athletes under false pretenses.  As a victim of Mr. Gatto's fraud, the University of Kansas's financial losses are recoverable as restitution from Mr. Gatto.  Mr. Gatto and his co-conspirators should be held responsible for the University of Kansas's loss of athletic scholarship and financial aid in the approximate amount of **$112,731.52**.

### b.  Mr. Gatto and His Co-Conspirators Caused the University of Kansas to Incur Significant Attorney Fees and Legal Costs

#### 1.  The University of Kansas Should be Awarded the Attorney Fees and Legal Costs it Incurred in Cooperating With the U.S. Government's Investigation and Prosecution

The University of Kansas has incurred significant professional services costs in connection with responding to the U.S. Government's subpoenas for documents related to its criminal investigation of Mr. Gatto and his co-conspirators.  Additionally, the University of Kansas has incurred significant expenses in connection with its provision of testimony at trial during the U.S. Government's prosecution of Mr. Gatto and his co-conspirators.  As a victim of Mr. Gatto's fraud, the University of Kansas's costs in connection therewith are recoverable as restitution from Mr. Gatto.  Indeed, the MRVA states that fraud victims like the University of Kansas are entitled to restitution from the defendant for "***expenses incurred during participation in the investigation or prosecution of the offense***."[7]

In particular, the University of Kansas's request for restitution of its attorney fees is comprised of two parts.  First, the University of Kansas complied with the U.S. Government's subpoenas for documents related to Mr. Gatto's and his co-

---

[6] *See* Superseding Indictment ¶ 55.

[7] *See* 18 U.S.C. § 3663A(b)(4) (emphasis added).

February 22, 2019
Page 5

conspirators' misconduct.  The University of Kansas's fees related to responding to the Government's subpoenas fall squarely within the MRVA, as the U.S. Government requested the University of Kansas's cooperation in its investigation of Mr. Gatto and his co-conspirators.  Accordingly, Mr. Gatto and his co-conspirators should be held responsible for the University of Kansas's attorney fees in connection with responding to the subpoenas in the approximate amount of **$289,886**.

Second, the University of Kansas was asked to prepare and produce a prosecution witness at the trial of Mr. Gatto and his co-conspirators.  The University of Kansas's fees related to this witness testimony fall squarely within the MRVA, as the U.S. Government requested that a University of Kansas witness testify at trial.  The University of Kansas also incurred reasonable attorney fees by having one of its outside counsel attend select portions of the three-week long trial to closely monitor the proceedings and the University of Kansas witness testimony.  Accordingly, Mr. Gatto and his co-conspirators should be held responsible for the University of Kansas's attorney fees in connection with its witness preparation and trial testimony in the approximate amount of **$78,942**.

> 2.  The University of Kansas Should be Awarded the Attorney Fees and Legal Costs it Incurred in Investigating Mr. Gatto's and His Co-Conspirators' Criminal Conduct

As part of its cooperation with the U.S. Government, the University of Kansas has incurred substantial costs investigating Mr. Gatto's and his co-conspirators' misconduct.  As a victim of Mr. Gatto's fraud, the University of Kansas's investigative costs in connection therewith are recoverable as restitution from Mr. Gatto and his co-conspirators.  Indeed, "expenses" referenced in the MRVA include attorney fees and legal costs incurred by the victim during an internal investigation of the defendant's fraud, where the internal investigation is conducted at the government's request or invitation alongside the government's own criminal investigation.[8]  Accordingly, Mr. Gatto and his co-conspirators should be held responsible for the University of Kansas's attorney fees in connection with its investigation of Mr. Gatto's and his co-conspirators' misconduct in the approximate amount of **$308,472**.

---

[8] *See Lagos v. United States*, 38 S. Ct. 1684 (2018); *United States v. Cuti*, 778 F.3d 83, 93 (2d Cir. 2015); *United States v. Maynard*, 743 F.3d 374, 381 (2d Cir. 2014); *United States v. Amato*, 540 F.3d 153, 159-60 (2d Cir. 2008).

February 22, 2019
Page 6

3.   <u>The University of Kansas Should be Awarded the Attorney Fees</u>
<u>and Legal Costs it Incurred in Participating in the NCAA's</u>
<u>Investigation</u>

The University of Kansas has also suffered significant losses in connection
with legal fees that it was compelled to pay to outside counsel to respond to the
NCAA's investigation of two student-athletes as a direct consequence of Mr. Gatto's
and his co-conspirators' criminal conduct.  As a victim of Mr. Gatto's fraud, the
University of Kansas's expenses in connection therewith are recoverable as restitution
from Mr. Gatto.  Accordingly, Mr. Gatto and his co-conspirators should be held
responsible for the University of Kansas's attorney fees in connection with the
NCAA's investigation in the approximate amount of **$346,393.**

\*       \*       \*

In conclusion, as a victim of Mr. Gatto's and his co-conspirators' criminal
conduct, the University of Kansas respectfully requests restitution for the financial
benefits that it conferred to two student-athletes under false pretenses, as well as the
legal fees that the University of Kansas incurred in cooperating during the U.S.
Government's investigation and prosecution of Mr. Gatto and his co-conspirators,
investigating Mr. Gatto's misconduct and participating in the NCAA's investigation
of two student-athletes due to Mr. Gatto's and his co-conspirators' criminal activities.
Accordingly, restitution in the total amount of approximately **$1,136,424.52** is
appropriate and should be awarded for:

a)   Athletic scholarship and financial aid that the University of Kansas paid to
two student-athletes under false pretenses in the approximate amount of
**$112,731.52**;

b)   The University of Kansas's costs to cooperate in the U.S. Government's
investigation and prosecution of Mr. Gatto and his co-conspirators in the
approximate amount of **$368,828**;

c)   The University of Kansas's costs incurred to investigate Mr. Gatto's and
his co-conspirators' misconduct in the approximate amount of **$308,472**;
and

d)   The University of Kansas's costs sustained to cooperate in the NCAA's
investigation of two student-athletes due to Mr. Gatto's and his co-
conspirators' criminal activities in the approximate amount of **$346,393.**

February 22, 2019
Page 7

Notably, these amounts do not even include the numerous hours spent by the
University of Kansas's in-house counsel and staff, or the significant internal expenses
that the University of Kansas incurred, to respond to the the Government's subpoenas,
prepare for and attend trial, and participate in the NCAA investigation.

Sincerely,

William M. Sullivan, Jr.
*Counsel for the University of Kansas*