# WILLKIE FARR & GALLAGHER LLP

Michael S. Schachter
212 728 8102
mschachter@willkie.com

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

March 4, 2019

**BY ECF**

The Honorable Lewis A. Kaplan
United States District Court for the
Southern District of New York
Room 1940
500 Pearl Street
New York, NY 10007

Re:   *United States v. Gatto, et al.*, Case No. S2 17-cr-686 (LAK),
      *Letter Motion to Exclude Untimely Requests for Restitution of Legal Fees Paid by
      Kansas and NC State, And Brief Reply to One Inaccurate Assertion in the
      Government's Submission*

Dear Judge Kaplan:

We represent Defendant James Gatto in the above-captioned matter. Sentencing is currently scheduled for March 5, 2019 at 11:30 am. I write to respectfully request that the Court deny the untimely requests for restitution of legal fees set forth in letters submitted by North Carolina State University ("NC State") and the University of Kansas ("Kansas"), which are attached as Exs. B and C, respectively, to the Government's Sentencing Memorandum (Dkt. 288), and to reply to one inaccurate assertion contained in that Memorandum.

### A. The Restitution Requests for Legal Fees Should Be Denied.

Under the Mandatory Victims Restoration Act ("MRVA"), it is the Government's burden to prove, by a preponderance of the evidence, the amount of actual loss incurred by each victim. 18 U.S.C. § 3664(e). The MVRA sets forth the procedure

that the Government must follow. Under 18 U.S.C. § 3664(d)(1), *"not later than 60 days prior to the date initially set for sentencing*, the attorney for the Government…shall promptly provide the probation officer with a listing of the amounts subject to restitution." The purpose of this procedure is so that the Probation Office can investigate the claims for restitution and the defendant has an opportunity to object to any restitution amounts set forth in the Probation Office's Presentence Report ("PSR"). Neither the Government nor the Universities in this case submitted anything to the Probation Office with respect to legal fees ostensibly incurred as a result of Mr. Gatto's conduct.

Mr. Gatto received no information about restitution of legal fees until the Government filed its sentencing memorandum at approximately midnight on this past Tuesday, February 26, one week before the March 5 sentencing and after Mr. Gatto had submitted his sentencing memorandum on February 12. Mr. Gatto therefore had no opportunity to contest these restitution amounts. Nor are we even equipped to do so, since the "loss" amounts are not supported by a single invoice to support the reasonableness of the fees or to demonstrate how they relate to Mr. Gatto's conduct. Absent supporting billing records, the Court has no ability to assess the reasonableness of those fees, whether the fees are related to criminal conduct for which Mr. Gatto was convicted, or whether any portion of otherwise reasonable fees should be apportioned among various coconspirators. *See, e.g., United States v. Amato*, 540 F.3d 153, 162–63 (2d Cir. 2008) (legal fees request supported by over 200 pages of invoices and declaration by attorney describing cooperation with the government throughout the investigation and prosecution of the crimes), *abrogated on other grounds by Lagos v. United States*, 138 S. Ct. 1684 (2018); *United States v. Bahel*, 662 F.3d 610, 648 (2d Cir.

2011) (restitution supported by billing records from law firm that conducted investigation).

This is not an immaterial issue. In the Presentence Investigation Report, dated January 14, 2019, the Probation Department concluded that Mr. Gatto was responsible for paying a restitution amount of $147,406 to the Universities. In our sentencing memorandum, we explained that Probation's calculation was incorrect and the correct amount of restitution was actually $85,653. (Dkt. 282 at 38). Now, the Government asserts for the first time that Mr. Gatto should be required to pay restitution of *nearly $1.5 million*, just a handful of days before Mr. Gatto is scheduled to be sentenced. Mr. Gatto has lost his job, was never paid a particularly lucrative salary at Adidas to begin with, and his wife's sales associate job at Ann Taylor is currently the family's sole source of income. Mr. Gatto also has a mortgage and two children who will soon be attending college. The impact on the Gatto family of the imposition of restitution in this amount cannot be understated.

Trial ended almost five months ago and the Government and the Universities have known since October 22, 2018 that sentencing was scheduled for March 5. Neither the Government's submission nor the Universities' letters explain the delay or the failure to provide any documentation to support these new claims.

Indeed, substantial portions of the requested restitution seem to be plainly prohibited by the Supreme Court's recent decision in *Lagos v. United States*, 138 S. Ct. 1684 (2018). Under the MVRA, defendants are required to "reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at

proceedings related to the offense." *See* 18 U.S.C. § 3663A. Just last year, the Supreme Court held that the MVRA's use of the words "investigation" and "offense" only provide for expenses incurred during a victim's participation in "*government* investigations and *criminal* proceedings" and do not apply to the costs of a "*private* investigation" or the costs of related civil proceedings. *Lagos,* 138 S. Ct. at 1688-90 (emphasis added).

On October 11, 2017, the NCAA sent out a memo from its Board of Directors requiring all Division I schools to examine their men's basketball programs for possible NCAA rules violations. Kansas now requests $346,393 of restitution "in connection with legal fees … it pa[id] to outside counsel to respond to the *NCAA's investigation.*" (*See* Dkt. 288-3.) Similarly, N.C. State requests $234,685 in attorney's fees in connection with services rendered by "counsel to assist the government in its work in this case, as well as counsel *to address possible NCAA inquiries.*" (*See* Dkt. 288-2.) To the extent that the Universities request restitution of legal fees they incurred in connection with the "NCAA's investigation" or "to address possible NCAA inquiries," those requests are plainly improper under *Lagos.*

Kansas further requests: (a) $308,472 in attorney's fees it incurred in investigating the charged conduct "as part of its cooperation with the Government;" (b) $78,942 in connection with witness preparation and trial testimony (including having one of its outside counsel attend select portions of the three week-long trial "to closely monitor the proceedings"); and (c) $289,886 in connection with responding to Government subpoenas. Kansas makes such requests on nothing more than its own counsel's say so and provides no documentation whatsoever. For example, with respect to (a), it is entirely unclear what Kansas's investigation entailed or how it was related to

"cooperation with the Government." *Cf. United States v. Battista*, 575 F.3d 226, 234 (2d Cir. 2009) (in a pre-*Lagos* decision, affirming restitution award for legal fees where, based upon an analysis of billing records and affidavits submitted by the victim, "[t]he district court meticulously parsed out the fees and costs submitted by the [victim] in determining which expenses were associated with each defendant and whether they were incurred while assisting the government in ascertaining the extent of the criminal conspiracy and in preparing for [defendant's] criminal proceedings."); *United States v. Gupta*, 925 F. Supp. 2d 581, 587 (S.D.N.Y. 2013), *aff'd*, 747 F.3d 111 (2d Cir. 2014) (in a pre-*Lagos* decision, victim request for legal fees supported with 542 pages of billing records including time entries which "specify the work performed with sufficient particularity to assess what was done, how it was done, and why it was done").

Moreover, *Lagos* has been understood in the courts to prevent recovery of the costs associated with sending a lawyer to watch trial proceedings. *See, e.g., United States v. Napout*, No. 15-CR-252 (PKC), 2018 WL 6106702 (E.D.N.Y. Nov. 20, 2018) (rejecting restitution request for "attorneys' fees for a[n] … attorney to attend the entirety of [d]efendants' trial"); *United States v. Chan*, 16-cr-10268, 2019 WL 419302 at *3 (D. Mass. Jan. 28, 2019) ("while many individual or corporate victims would relish having an attorney watch and report on all criminal proceedings, the mandatory restitution scheme supports no such fee shifting provision. The court finds such a luxury unworkable and unjust in a mandatory restitution scheme. Indeed, such a statutory construction would create a bizarre incentive where defendants could not afford to go to trial and would need to minimize the moments they appear in court or the documents they file on the public

docket, knowing that every six minutes of court time would be charged to them at sentencing at corporate rates.").

There is reason to believe the Universities' restitution requests are overbroad. In this regard, *United States v. Napout* is instructive. In *Napout*, the Fédération Internationale de Football Association ("FIFA") requested restitution consisting of: (1) "attorneys' fees for reviewing documents in connection with the government's investigation of Defendants;" (2) "attorneys' fees for preparing investigative reports for American and Swiss authorities;" (3) "attorneys' fees for a[n] … attorney to attend the entirety of Defendants' trial;" (4) "fees for [] a forensic data consulting company that processed and hosted the millions of documents collected during FIFA's investigation;" (5) "attorneys' fees for preparing [a witness] to testify at Defendants' trial, as well as fees for her attorneys' presence during her testimony." 2018 WL 6106702 at *3. The court found that "FIFA's first four restitution arguments… are patently frivolous in light of the Supreme Court's decision in *Lagos*." As to (5), the court required the submission of detailed evidence in support of the restitution amount sought and ultimately found the requested attorney's fees were excessive. *Id.* at *4.

The bottom line is that "[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the *evidence.*" *See* 18 U.S.C. § 3664(e). Here, the Universities have not provided any *evidence* in support of their restitution requests. Accordingly, the Government has failed to meet its burden under 18 U.S.C. § 3664(e) and no restitution order for legal fees is appropriate.

### B. The Government's Assertion that the Universities Could Not Cancel the Athletic Scholarships if the Athletes Became Ineligible to Participate in Collegiate Athletics Is Inaccurate.

Although the Court did not invite reply briefing on the Government's sentencing memorandum, we wish to very briefly bring a factual inaccuracy in the Government's sentencing submission to the attention of the Court. In arguing that Defendants should be held responsible for the cost of a 4-year scholarship, even though Defendants believed the athletes would all be "one and done" players, the Government wrote:

> While there is no question that the defendants hoped some of these players might enter the NBA draft before graduation, the defendants' intent was to cause each University to issue an athletic scholarship, which in each instance relevant here, entailed a four-year commitment by the school. Indeed, as is presently the case with de Sousa, **each University was required, under the terms of its commitment, to continue to fund the scholarship potentially for multiple years if the student-athlete returned, and even if the player was not able to participate in collegiate athletics.** As such, the Probation Department appropriately calculated the intended loss resulting from the defendants' fraudulent scheme as the full value of the athletic scholarships extended under false pretenses as a direct result of the defendants' conduct.

(Dkt. 288 at 19.)

The Government's assertion is inaccurate. Kansas' Financial Aid Agreement with Silvio DeSousa states that "in accordance with NCAA Bylaw 15.3.5.1, the amount of this athletic aid may be immediately reduced or cancelled during the period of the award if [DeSousa] become[s] ineligible for intercollegiate competition." (*See* GX 1815.) Indeed, the Government itself elicited this fact during its direct testimony of the NCAA compliance representative from Kansas. (Tr. 872:12-873:5l; 889:25-890:16 (testifying that Kansas would have "cancelled immediately" Billy Preston's "financial

aid" if it had learned after Preston enrolled that his mother received $90,000.) Both Louisville and NC State's Financial Aid Agreements contain the same provision as the Kansas Agreement. (*See* GX 1607; GX 1908 (financial aid "may be reduced or cancelled if the recipient renders himself or herself ineligible for intercollegiate competition.").) All stem from the same NCAA rule, Bylaw 15.3.5.1, which states: "Institutional financial aid based in any degree on athletics ability may be reduced or cancelled during the period of the award or reduced or not renewed for the following academic year…if the recipient…renders himself or herself ineligible for intercollegiate competition." (*See* GX 1503 at 205.) Contrary to the Government's assertion, *see* Dkt. 288 at 19, the Universities were not required to continue to fund the scholarships "even if the player was not able to participate in collegiate athletics."

In any event, even if a scholarship was, in fact, a four-year commitment, that would not be relevant to the issue of whether the Defendants *intended* for the athletes to return to school for four years and cause a loss to the Universities equal to a four year scholarship—which they did not. (*See e.g.* Tr. 622:11-19, 820:17-21). For these reasons, the Court should find that any "intended loss," to the extent any exists, is limited to one year of scholarship funds.

Respectfully submitted,

*[signature]*

Michael S. Schachter

cc: (by email)
AUSA Edward Diskant
AUSA Noah Solowiejczyk
AUSA Aline Flodr
AUSA Eli Mark

- 9 -

Mark C. Moore
Merl F. Code
(*Counsel for Defendant Merl Code*)

Steven A. Haney
(*Counsel for Defendant Christian Dawkins*)